Shahrokh Saadat-Nejad
Mail: 3713 Mount Ashmun Place
San Diego, California 92111
Email: pacificlawcenters@yahoo.com
Telephone: (646)225-8213
Defendant

**NUNC PRO TUNC**
APR 23 2007

FILED

07 APR 25 AM 8:02

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: ppU          DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

SOLOMON WARD SEIDENWURM
AND SMITH,
PACIFIC LAW CENTER

     Plaintiffs,

vs.

SHAHROKH SAADAT-NEJAD

    Defendant.

CASE No.O7-CV-00460 LAB(POR)

RESPONSE TO PLAINTIFFS
FALSIFIED AND
MANUFACTURED
DOCUMENTS, INTENTIONAL
DECEPTIONS, KNOWINGLY
MISLEADING COURT,
BLACKMAIL(S)

Date:      April 26, 2007
Department:  9
Time:      12:00pm

Hon. Judge Larry Alan Burns

1.   On March 13, 2007 SOLOMON WARD SEIDENWURM & SMITH,

and PACIFIC LAW CENTER filed this civil complaint against me. On page

Numbered 4, line numbered 17, and item numbered 24 of the complaint the

Plaintiffs wrote:

**On February 27, 2007, Solomon Ward successfully obtained a temporary restraining order against Saadat-Nejad that restrains him from:**

**"Until further order of this Court Shahrokh Saadatnejad shall immediately cease using the website pacificlawcenters.com or any similar website.**

**Until further order of this Court, Shahrokh Saadatnejad shall not use the trade name Pacific Law Center in any published communication...."**

2.    On March 9, 2007 I had appeared with out having been served with the

civil complaint, for the first time in court regarding the civil action filed

against me on January 12, 2007 in The Superior Court of the State Of

California, County Of San Diego by Pacific Law Center, Civil Case

No.GIC878352.

3.    Attached to this document is EXHIBIT 00-1, which is a copy of a Court

Reporter's Transcript of Court Proceedings of March 9, 2007 The Superior

Court of The State Of California, County Of San Diego Civil Case

No.GIC878352.

On page numbered 19 all the way to end of page numbered 20 you can

see that the Plaintiffs were told in plain English that the only Court order is

that I am not to use the website pacificlawcenters.com and that was all.

4.    On March 29, 2007 I verbally complained to Judge Larry Alan Burns which was after I had filed a declaration that the plaintiffs are Knowingly and intentionally misleading the United States District Court with a court order signed by Judge Richard E.L. Strauss on February 27, 2007. The plaintiffs said that they were not aware of the full intentions of the court order until March 14, 2007.

EXHIBIT 00-1 page 19 and page 20 proves that the plaintiffs intentionally lied to the court on March 29, 2007 and it proves that the plaintiffs knowingly presented a falsified court order as evidence to The United States District Court.

There are other false statements and falsified evidences manufactured by the plaintiffs on this civil complaint and on the State complaint filed by the plaintiffs.

5.    The plaintiffs have filed in this court a "supplemental memorandum in support of pacific law center and solomon ward's motion for preliminary injunction" filed by Edward J. Mcintyre of Solomon Ward Seidenwurm & Smith, dated April 16, 2007.

If you count up to page 10 by hand you will see a manufactured falsified document created by the plaintiffs in order to get the defendant in trouble with the court in a manner so the defendant would get thrown in jail and or

3

prison. On top of that page you will see:

**(http://72.14.253.104/search?q=cache:tethCG_0jMsJ:www.100freelawye rs.com/solomonwardconstructionlaw.html+%22solomon+ward+sucks% 22&h1=en&ct=clnk&cd=1&gl=us)**

This web address is a address of a google.com search result after clicking on a button tittled cached. What the plaintiffs have done is typed in a google.com search box "SOLOMON WARD SUCKS" and then the plaintiffs clicked on the search button.

On the google.com search result out of 70,100 results the plaintiffs found 100freelawyers.com/solomonwardconstructionlaw.com and the plaintiffs clicked on the cached button on google.com and it gave them what was on the page the last time google.com web crawlers visited 100freelawyers.com. Google.com web crawlers are very smart. The web crawlers keeps a memory of what was on the website the last time it visited. The plaintiffs did not click on the web site rather they clicked on the cached button on google.com in an attempt to mislead the court and to put the defendant in jail and or prison.

6.    As I am writing this it is April 22, 2007 around 8:00pm and I just did a google.com search for "SOLOMON WARD SUCKS" and the address for the result is:

4

http://www.google.com/search?hl=en&q=**solomon+ward+sucks**&btnG=Search

and as you can see the words Solomon+ward+sucks in the address. Now if I click on a google.com cached button on any of the 70,100 results then the address bar will change which in this case I have clicked the google.com cached button under the domain name of legalstatute.com and the address bar is:

http://**72.14.253.104**/search?q=cache:MB1pUKxDckcJ:www.legalstatute.com/+**solomon+ward+sucks**&hl=en&ct=clnk&cd=1&gl=us

and as you can see that the address has the exact same identical numbers as the address the plaintiffs have filed and you can see the words Solomon+ward+sucks in the address.

7.    The plaintiffs cut the address of their google.com cached result and pasted it on their document that they have filed in order to mislead and confuse the court so they the plaintiffs can get the defendant thrown in jail and or prison. The address on the plaintiffs fake document has been pasted on the top center of their false document. If you count up to page 16 on the plaintiffs "supplemental memorandum in support of pacific law center and solomon ward's motion for preliminary injunction" filed by Edward J.

Mcintyre of Solomon Ward Seidenwurm & Smith, dated April 16, 2007 you

will see that on the bottom right side of the page it has a date and time stamp

of "**4/14/2007 3:45 PM**" and if you go to the very last page which is page 62

you will see a date and time stamp of "**4/14/2007 3:28**" which means that it

took the plaintiffs 17 minutes to print 46 pages.

From page 16 to 62 all but 2 blank pages have date and time

stamp on the bottom Right of each page from the last page time stamped

3:28pm to page 16 time stamped 3:45pm all in order.

From page 16 to page 62 you can see on the top right hand of all pages

but 2 blank pages addresses of each page that was allegedly printed out by

the plaintiffs.

Pages 10 to 15 which has the google.com cached search address:

**(http://72.14.253.104/search?q=cache:tethCG_0jMsJ:www.100freelawye
rs.com/solomonwardconstructionlaw.html+%22solomon+ward+sucks%
22&h1=en&ct=clnk&cd=1&gl=us)**

on top center of the page has no date and time stamp on the bottom right of

the page and there is no web address on the top right of the papers like on

pages 16 to 62 because pages 10 to 15 were manufactured by the plaintiffs to

mislead the court and to get the defendant thrown in jail and or prison.

8.    On March 27, 2007 The Internet Corporation for Assigned Names and

Numbers (ICANN) notified me that there are 2 cases pending against me.

One is from Pacific Law Center Case No. FA0703000944798 and the other

is from Solomon Ward Seidenwurm and Smith Case No. FA0703000944660

which means that I have had no access to the domain names

pacificlawcenters.com, pacific-law-center.com, solomonwardlawfirm.com

and solomonwardsandiego.com since March 27, 2007. All four domain

names have been kept away from me. What ever was on the web sites since

March 27, 2007 stays there until the case is resolved. No one has access to

the domain names including me.

If you count up to page 22 on the "supplemental memorandum in

support of pacific law center and solomon ward's motion for preliminary

injunction" filed by Edward J. Mcintyre of Solomon Ward Seidenwurm &

Smith, dated April 16, 2007 you will see that pacific-law-center.com is

parked free courtesy of godaddy.com which means that I had

parked pacific-law-center.com before the domain name was taken out of my

account.

The plaintiffs are well aware of the situation because the plaintiffs have

created it with the intention of misleading the court giving the impression

that the defendant is using the domain name pacific-law-center.com which

the defendant has zero access to since March 27, 2007.

The plaintiffs have not told the court of the domain names being taken

away from the defendant because the plaintiffs planed on committing

another deception tactic in order to get the defendant thrown in jail and or prison.

9.      On April 11, 2007 I went to a settlement conference regarding this matter. The settlement conference is being used by the plaintiffs as tools for other deception tactics and blackmail(s) by the plaintiffs. Their new tactic so far has been to record phone conversations with me speaking about subjects that were spoken at the settlement conference, basically MONEY. Plaintiffs are now trying to blackmail me that they have me on tape asking for money and that they will introduce it at trial.

It was the plaintiffs that asked for a settlement conference in court on April 2, 2007. The plaintiffs want me to stop posting pictures of Israel Zionist Terrorists using chemical weapons as well as posting warnings on the internet to stay away from the plaintiffs because they the plaintiffs are at minimum HUSTLERS, THIEVES, CON-ARTISTS and supporters of Israel Zionist Terrorists.

10.      Granting a Preliminary Injunction against me without a Jury Trial would be in violation of my freedom of speech and right to defense. To stop me from using the words pacific, law, center, solomon, ward is nothing short of a person covering up corruption in the Justice System as a whole which includes being held hostage in a United States Jail and exposing corruption

8

at its worst in the United States Court procedures.

I have been posting my views of court orders signed against me on the World Wide Web and the plaintiffs think they can continue to violate my freedom of speech because of it and because a Mr. Herbert J. Solomon of Solomon Ward Seidenwurm & Smith has a reputation of access to Judges, and they have proven that they Solomon Ward Attorneys at Law do have Judges in their back pockets by having Judge(s) sign court orders behind closed doors, off court calendar, no court reporter present and the defendant having not been served with the civil complaint.

11. Three Law Firms [SOLOMON WARD SEIDENWURM & SMITH ATTORNEYS AT LAW CALIFORNIA - PHILLIPS & ASSOCIATES LAW FIRM ARIZONA - PACIFIC LAW CENTER CALIFORNIA] with a total of ninety seven Attorneys according to their websites as of April ninth, two thousand seven and with over five hundred years of combined experience are taking multiple legal actions against USHOSTAGE.com and the owner of USHOSTAGE.com which includes The United States District Court.

Attorneys Herbert J. Solomon, Michael D. Breslauer, Adam R. Rosenthal, Jeffrey H. Silberman of "Solomon Ward Seidenwurm & Smith Attorneys at Law in San Diego, California" are or were at minimum

9

Presidents and or Board Members of Barbaric Israel Zionist Terrorist

Organizations Hillel - Brandeis Zionist Alliance, and United Jewish

Federation - (Congregation Beth Israel)

Mr. Herbert J. Solomon of Solomon Ward Seidenwurm & Smith and his

Israel Zionist Terrorist partners do not represent the United States

Government to be granted such corruption(s).

**12.** On September 18, 2006 Pacific Law Center refused to acknowledge

that they were fired on September 8, 2006 and went to court for criminal

case No.CD200499 and criminal case No.M897962 and waived my rights to

appear in court for both criminal cases. Pacific Law Center got a

continuance for both criminal cases, and Pacific Law Center remained as

legal counsel on record for both cases against my will.

I have heard the audio tape of the court hearings of September 18, 2006

for criminal case No.CD200499 and criminal case No.M897962. I have had

three meetings after September 19, 2006 and before February 27, 2007 with

Pacific Law Center and Pacific Law Center have acknowledged that they did

know that they were fired before September 18, 2006.

On March 16, 2007 I had another meeting with Pacific Law Center and

Solomon Ward Seidenwurm and Smith at 401 B Street in San Diego and the

meeting was recorded. I went to the meeting with a baseball, a baseball

glove and a baseball bat. It was a physiological move from me which allowed the plaintiffs to speak more honestly and it worked like a charm.

At the March 16, 2007 meeting Pacific Law Center again acknowledged that they knew that they have violated my civil rights on September 18, 2006 for profit. They admit that it cost minimum $500 to fire them – just to fire them – nothing else – If a person (client) refuses to see Pacific Law Center while the person (client) are in jail, then Pacific Law Center will waive the rights of the person (client) to appear in court until the person (client) do see them, or else the person stays in jail and court dates just keep on getting continued. This is called holding a person hostage in the United States of America and the San Diego County District Attorney Office and City of San Diego Attorney Office and Judges refuse do anything about it.

**It is all on tape.**

On July 25, 2006 The United States Government at minimum took away my passport and $9800 cash away from me. The United States Government denied it for 8 months. On March 28, 2007 the United States Government admitted that the have my passport and money, and now they deny it again.

Bull Crap after Bull Crap from the United States Government.

I declare under penalty of perjury under the laws of the State of California that the facts in this document are true and correct of my own personal knowledge.

Date: APRIL 23, 2007

Shahrokh Saadat-Nejad
Defendant

# EXHIBIT
# 00-1

1

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN DIEGO

DEPARTMENT 75                    HON. RICHARD E.L. STRAUSS, JUDGE

PACIFIC LAW CENTER,                )
A PROFESSIONAL CORPORATION,        )
                                   )
         PLAINTIFF,                )
                                   )
    VS.                            )   CASE NO. GIC 878352
                                   )
SHAROKH SAADATNEJAD,               )
INDIVIDUALLY AND DOING BUSINESS AS )
PACIFICLAWCENTERS.COM AND          )
USHOSTAGE.COM; AND DOES 1 THROUGH 50, )
INCLUSIVE,                         )
                                   )
         DEFENDANTS.               )
_____)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

MARCH 9, 2006

APPEARANCES:

        FOR THE PLAINTIFF:     EDWARD J. MCINTYRE, ESQ.
                               SOLOMON, WARD, SEIDENWURM & SMITH
                               401 B STREET, SUITE 1200
                               SAN DIEGO, CALIFORNIA 92101

        FOR THE DEFENDANTS:    IN PRO PER

REPORTED BY:                   JAMES PARTRIDGE, CSR NO. 6226
                               OFFICIAL REPORTER
                               330 WEST BROADWAY
                               SAN DIEGO, CALIFORNIA 92101

1        <u>SAN DIEGO, CALIFORNIA, FRIDAY, MARCH 9, 2007, 2:53 P.M.</u>

2                          --oOo--

3              THE COURT:  GOOD AFTERNOON.

4              MR. MCINTYRE:  GOOD AFTERNOON, YOUR HONOR.

5              MR. SAADAT-NEJAD:  GOOD AFTERNOON.

6              THE COURT:  ALL RIGHT.  LET'S HAVE EVERYBODY'S

7      APPEARARANCE FOR THE RECORD, PLEASE.

8              MR. MCINTYRE:  THANK YOU, YOUR HONOR.  GOOD AFTERNOON.

9      EDWARD MCINTYRE, PRIVILEGED TO REPRESENT PACIFIC LAW CENTER.

10             MR. SAADAT-NEJAD:  GOODAFTERNOON.  SHAHROKH SAADAT-NEJAD.

11     I AM THE DEFENDANT FOR THIS CASE.  I KNOW THAT IN THE ENGLISH

12     LANGUAGE THERE IS NO (PRONUNCIATION) SOUND, SO A LOT OF PEOPLE

13     JUST CALL ME SHAHROKH.

14             THE COURT:  THANK YOU.

15             MR. MCINTYRE FILED A SUPPLEMENTAL MEMORANDUM IN

16     SUPPORT OF THE MOTION FOR PRELIMINARY INJUNCTION, THEN ALSO A

17     SUPPLEMENTAL DECLARATION.  I CAN CALL YOU SHAHROKH?

18             MR. SAADAT-NEJAD:  YES, YOUR HONOR.

19             THE COURT:  SHAHROKH FILED A DECLARATION FOR CASE

20     DISMISSAL.  I'VE READ ALL THOSE THINGS.

21             MR. MCINTYRE:  THANK YOU, YOUR HONOR.

22             THE COURT:  HERE IS THE QUANDARY THAT I HAVE,

23     MR. MCINTYRE.  I'M NOT SURE THAT IT'S SUFFICIENT THAT A SIMILAR

24     NAME IS THE ONLY THING HERE.  I'M NOT SURE THAT AMOUNTS TO THE

25     TRADEMARK, TRADE NAME OR SERVICEMARK IN PRINCIPLE.  I WAS

26     LOOKING AT THE CASE OF <u>BROOKFIELD COMMUNICATIONS V. WEST COAST</u>

27     <u>ENTERTAINMENT CORPORATION</u>.  I DON'T KNOW IF YOU'RE FAMILIAR WITH

28     THIS ONE OR NOT.  IT'S JUST ONE THAT WE HAPPENED TO FIND.  IT'S

1  1  A NINTH CIRCUIT COURT OF APPEALS CASE DATED MARCH 10TH, 1999.

2  I'LL GIVE YOU THE CITE IF YOU'D LIKE.  IT'S 174 FED.3D 1036.

3  NOW, THERE IS A LOT OF DISCUSSION IN HEAR ABOUT

4  LANHAM ACT, TRADEMARKS AND ALL OF THAT.  THEY TALK ABOUT

5  ESTABLISHING PROTECTION BASED ON USE OF REGISTRY AND ALL THAT.

6  I UNDERSTAND.  I DON'T THINK THAT'S AN ISSUE IN THE CASE HERE.

7  WHAT'S IN ISSUE -- BECAUSE YOU'RE CORRECT THAT FIRST AMENDMENT

8  RIGHTS CAN BE, IN A LIMITED WAY, REDUCED OR INFRINGED UPON

9  PURSUANT TO A STATUTORY SCHEME THAT WAS PUT IN PLACE TO UPHOLD

10  AN IMPORTANT PUBLIC PURPOSE.  AND THAT INCLUDES ISSUING

11  INJUNCTIONS FOR ALL THE VARIOUS THINGS THAT YOU HAVE SET OUT IN

12  YOUR BRIEF, INCLUDING TRADEMARK INFRINGEMENT.  BUT TRADEMARK

13  INFRINGEMENT IS BASED UPON A NUMBER OF FACTORS, AND THEY TALK

14  ABOUT EIGHT FACTORS TO SEE IF THE TRADEMARK EXISTS -- TRADEMARK,

15  SERVICEMARK, TRADE NAME, ALL THE SAME IN THAT REGARD -- IN TERMS

16  OF PROTECTABILITY.

17  MR. MCINTYRE:  I THINK THAT'S FAIR, YOUR HONOR.

18  THE COURT:  OKAY.  I'M NOT SAYING THIS IS THE ONLY CASE

19  ON THIS BY ANY MEANS.  AND I HAVEN'T DONE A WHOLE LOT OF

20  RESEARCH ON IT.  BUT THIS ONE GOES INTO A LOT OF DETAIL ABOUT

21  THESE EIGHT FACTORS.  IT MUST ALSO BE SHOWN THAT THE PUBLIC IS

22  LIKELY TO BE SOMEHOW CONFUSED ABOUT THE SOURCE OR SPONSORSHIP

23  OF, IN THIS CASE, A WEB SITE WITH A VERY SIMILAR NAME, AND

24  SOMEHOW TO ASSOCIATE THE SITE WITH, IN THIS CASE, THE DEFENDANT.

25  THEN THEY SAY -- I'M READING FROM -- I'M NOT SURE

26  WHAT PAGE THIS IS.  IN ANY EVENT, IT'S FROM THAT OPINION.  IT

27  SAYS, "THE CORE ELEMENT OF TRADEMARK INFRINGEMENT IS THE

28  LIKELIHOOD OF CONFUSION, THAT IS, WHETHER THE SIMILARITY OF

1 1 MARKS IS LIKELY TO CONFUSE CUSTOMERS ABOUT THE SOURCE OF THE

2 PRODUCTS" OR SERVICES. THEY TALK ABOUT AN EIGHT-FACTOR TEST IN

3 HERE. IT SAYS, "THE SIMILARITY OF THE MARKS WILL ALWAYS BE AN

4 IMPORTANT FACTOR." BY THE WAY, THERE'S OTHER DISCUSSION ABOUT

5 DOMAIN NAMES BEING COVERED.

6 MR. MCINTYRE: THEY ARE.

7 THE COURT: SO MARK OR DOMAIN IS THE SAME. "THE

8 SIMILARITY OF MARKS WILL ALWAYS BE AN IMPORTANT FACTOR. WHERE

9 THE TWO MARKS ARE ENTIRELY DISSIMILAR, THERE IS NO LIKELIHOOD OF

10 CONFUSION. 'PEPSI' DOES NOT INFRINGE COCA-COLA'S 'COKE.'

11 NOTHING FURTHER NEED BE SAID. EVEN WHEN THERE IS PRECISE

12 IDENTITY OF A COMPLAINANT'S AND AN ALLEGED INFRINGER'S MARK,

13 THERE MAY BE NO CONSUMER CONFUSION - AND THUS NO TRADEMARK

14 INFRINGEMENT - IF THE ALLEGED INFRINGER IS IN A DIFFERENT

15 GEOGRAPHIC AREA OR IN A WHOLLY DIFFERENT INDUSTRY."

16 THEN TALKING ABOUT THAT FURTHER THEY SAY, "THE

17 SIMILARITY OF MARKS ALONE, AS WE HAVE EXPLAINED, DOES NOT

18 NECESSARILY LEAD TO CONSUMER CONFUSION. ACCORDINGLY, WE MUST

19 PROCEED TO CONSIDER THE RELATEDNESS OF THE PRODUCTS AND SERVICES

20 OFFERED. RELATED GOODS ARE GENERALLY MORE LIKELY THAN UNRELATED

21 GOODS TO CONFUSE THE PUBLIC AS TO THE PRODUCERS OF THE GOODS."

22 SKIPPING A LITTLE FURTHER DOWN, THEY SAY, "IF, ON

23 THE OTHER HAND, BROOKFIELD AND AND WEST COAST DID NOT COMPETE TO

24 ANY EXTENT WHATSOEVER, THE LIKELIHOOD OF CONFUSION WOULD

25 PROBABLY BE REMOTE." THEN THEY GIVE AN EXAMPLE OF WHERE THE

26 COURT FOUND NO LIKELIHOOD OF CONFUSION WITHIN THE USE OF

27 "EPIX.COM" TO ADVERTISE THE ROCKY HORROR PICTURE SHOW AND THE

28 "EPIX," SPELLED THE SAME WAY, TRADEMARK REGISTERED FOR USE FOR

2   1   COMPUTER CIRCUIT BOARDS. TWO TOTALLY DIFFERENT MARKETS,

2   DIFFERENT INDUSTRIES. THEN THEY SAY, "AT THE LEAST, BROOKFIELD

3   WOULD BEAR THE HEAVY BURDEN OF DEMONSTRATING (THROUGH OTHER

4   RELEVANT FACTORS) THAT CONSUMERS WERE LIKELY TO BE CONFUSED AS

5   TO SOURCE OR AFFILIATION IN SUCH A CIRCUMSTANCE." A LITTLE

6   LATER ON THEY SAY, "INSTEAD, THE FOCUS IS ON WHETHER THE

7   CONSUMING PUBLIC IS LIKELY SOMEHOW TO ASSOCIATE WEST COAST'S

8   PRODUCTS WITH BROOKFIELD."

9   IT KIND OF GOES ON TO -- AND THERE'S MUCH MORE IN

10   HERE. THEY TALK ABOUT THE UNDERLYING IMPORTANT PUBLIC PURPOSE

11   BEHIND THE TRADEMARK, TRADE NAME, SERVICEMARK PROTECTION ACTS --

12   WHICH CAN LEAD TO INJUNCTIONS -- IS THE CONFUSION OF THE PUBLIC

13   BETWEEN COMPETITORS. AS WE TALKED ABOUT BEFORE, IN OTHER WORDS,

14   IF IN THIS CASE SHAHROKH WAS A LAWYER TRYING TO COMPETE WITH

15   PACIFIC LAW CENTER, AND USED THE SAME NAME, THEN YOU COULD SAY

16   THE PUBLIC IS CONFUSED ABOUT WHO IS OFFERING THE SERVICE, AND

17   THE PROTECTION OF THE TRADEMARK WOULD REQUIRE THE ISSUANCE OF

18   THE INJUNCTION.

19   BUT MY PROBLEM HERE -- AND I DON'T NEED TO MAKE A

20   DECISION NECESSARILY ON IT TODAY, IF YOU WANT TO GIVE ME SOME

21   MORE AUTHORITY ON THIS -- IS THAT SINCE HE IS NOT A COMPETITOR

22   AT ALL, AND HE IS NOT IN THE BUSINESS -- AND THIS CASE TALKS

23   ABOUT COMPETITORS IN THE SAME BUSINESS AND THAT SORT OF THING --

24   HOW DO WE GET -- I GUESS THE BASIC QUESTION IS: IS THE MERE

25   FACT THAT A VERY SIMILAR -- AND IT IS SIMILAR -- DOMAIN NAME,

26   ALMOST IDENTICAL, IS BEING USED BY A TOTALLY NON-COMPETITOR, IS

27   THAT ENOUGH TO BRING ABOUT TRADEMARK INFRINGEMENT THAT WOULD

28   LEAD TO AN INJUNCTION? THAT'S THE BOTTOM-LINE QUESTION.

1       MR. MCINTYRE:  THANK YOU, YOUR HONOR.  LET ME ADDRESS IT.

2  BECAUSE I'VE SPENT TWO YEARS SHY OF THIRTY YEARS REPRESENTING

3  JOURNALISTS AND THEIR MEDIA UP AND DOWN CALIFORNIA IN THE U.S.

4  AND CALIFORNIA SUPREME COURT.  WE HAVE TO CONCEDE THE FIRST

5  AMENDMENT HAS LIMITS, AND I DO BELIEVE WE'VE RUN UP AGAINST ONE

6  OF THOSE.  LET ME TALK ABOUT TRADEMARK.

7       THE COURT IS QUITE CORRECT.  THE PURPOSE OF A MARK,

8  BE IT A TRADEMARK, SERVICEMARK, EVEN, ARGUABLY, A TRADE NAME, IS

9  TO POINT THIRD PARTIES TO, ARGUABLY, THE SOURCE OF SOMETHING, A

10  PRODUCT, A SERVICE, TAKING THEM GENERICALLY.  THAT'S THE

11  FUNDAMENTAL PURPOSE.  THE CONCERN IN TRADEMARK LAW IS CONFUSION

12  OF THE PUBLIC.  IT'S NOT THERE TO PROTECT A COMPETITOR.  IT'S

13  THERE, FRANKLY, TO PROTECT THE PUBLIC AGAINST CONFUSION.

14       THE COURT:  BUT IT'S NOT JUST ANY CONFUSION.

15       MR. MCINTYRE:  WELL, IT'S --

16       THE COURT:  IT'S CONSUMER CONFUSION --

17       MR. MCINTYRE:  IT'S CONSUMER CONFUSION.

18       THE COURT:  -- AS TO WHO IS OFFERING THE GOODS OR

19  SERVICES.

20       MR. MCINTYRE:  THAT'S RIGHT.  I AGREE WITH YOU.  THERE

21  ARE TWO WAYS TO -- AND WE HAVE, AT BEST, A COMMON LAW MARK.  WE

22  HAVE ESTABLISHED, I THINK, THROUGH MR. SLATTERY'S DECLARATION

23  THAT THERE IS A SECONDARY MEANING ESTABLISHED THROUGH, AMONGST

24  OTHER THINGS, HEAVY ADVERTISING, SUCH AS THE PUBLICLY RECOGNIZED

25  PACIFIC LAW CENTER, ESPECIALLY IF ONE WATCHES LATE NIGHT TV, THE

26  FIRM THAT IS MY CLIENT.

27       THERE WERE TWO WAYS, IF I WERE TRYING THIS AS A

28  PURE LANHAM ACT CASE, EITHER IN THE COURT, WHICH HAS

2

1 JURISDICTION, OR ACROSS THE STREET, TO SHOW CONFUSION. I CAN

2 SHOW LIKELIHOOD OF CONFUSION BY DOING AN EXPENSIVE SURVEY, OR I

3 CAN SHOW ACTUAL CONFUSION AMONG CONSUMERS. WHAT WE HAVE, I

4 BELIEVE -- I'LL REFER THE COURT TO IT, BUT IN PARAGRAPHS 10

5 THROUGH 12 OF MR. SLATTERY'S ORIGINAL DECLARATION WE HAVE

6 INSTANCES OF ACTUAL CONFUSION WHERE CLIENTS OF PACIFIC LAW

7 CENTER HAVE BEEN MISDIRECTED TO "PACIFICLAWCENTERS.COM," HAVE

8 COMPLAINED ABOUT IT, OR HAVE EVEN SAID THEY WILL NOT GO TO

3

9 PACIFIC LAW CENTER, THE LAW FIRM, AS A RESULT OF THAT

10 MISDIRECTION.

11 THE COURT: THE MISDIRECTION, OR WHAT THEY READ ON THE

12 WEB SITE?

13 MR. MCINTYRE: WELL, YOU START WITH THE MISDIRECTION.

14 LET ME MAKE CLEAR -- AND I TRIED TO MAKE THIS VERY CLEAR WHEN I

15 HAD THE OPPORTUNITY TO TALK TO MR. SADATNEJAD YESTERDAY BY

16 TELEPHONE EXTENSIVELY, AND VERY, VERY BRIEFLY THIS MORNING.

17 MR. SAADAT-NEJAD HAS A FIRST AMENDMENT RIGHT TO COMPLAIN IN THE

18 PUBLIC FORUM ABOUT THINGS THAT HE DOES NOT LIKE. AND I WILL

19 FIGHT TO THE DEATH FOR HIS RIGHT TO SAY THE SUBSTANCE OF IT.

20 WHAT WE ARE TALKING ABOUT IS THE MANNER IN WHICH HE IS SAYING

21 IT, NAMELY, BY USING A PROTECTED MARK. IT IS THE MISDIRECTION

22 OF PEOPLE TO HIS WEB SITE, AT LEAST THE PACIFICLAWCENTERS.COM

23 WEB SITE, THAT IS THE NARROW ISSUE BEFORE THE COURT.

24 NOW, AS HE SAID IN HIS DECLARATION, HE HAS TWO

25 OTHER WEB SITES -- I'LL SPELL THEM FOR THE REPORTER; IT'S

26 "PHAWKU" AND "PHAWKU2," P-H-A-W-K-U AND THEN THE SAME WITH A "2"

27 AFTER IT -- WHICH HE'S USED, ON WHICH HE HAS PUBLICLY EXPRESSED

28 HIMSELF ON ANY NUMBER OF ISSUES, INCLUDING METHAMPHETAMINE,

3  1    INCLUDING CHILD PORNOGRAPHY, INCLUDING CHILD BONDAGE, AND MANY,

   2    MANY OTHERS. HE HAS THE RIGHT TO DO SO. HE IS UPSET ABOUT THE

   3    FBI AND THE EXTENT OF ITS POWER. AFTER WE ALL READ OUR

   4    NEWSPAPERS THIS MORNING, MAYBE WE ALL SHOULD BE A LITTLE BIT

   5    UPSET. HE HAS THE PERFECT RIGHT TO DO SO.

   6            WHAT HE DOES NOT HAVE THE RIGHT TO DO, AND IT IS

   7    THE ONLY THING WE'VE SOUGHT SO FAR, IS TO USE SUCH A CONFUSINGLY

   8    SIMILAR -- AND THAT'S THE TRADEMARK TERM -- SUCH A CONFUSINGLY

   9    SIMILAR WEB SITE THAT, BUT FOR ONE LETTER, DIRECTS PEOPLE TO HIM

   10   AND TO HIS WEB SITE. THAT'S THE ABUSE THAT WE SEEK TO ENJOIN.

   11          THE COURT: BUT IT HAS TO CONFUSE THE CONSUMER, IT SEEMS

   12   TO ME; THAT THE CONSUMER WOULD THINK THAT THEY ARE GETTING A

   13   SERVICE OR PRODUCT FROM HIM; HE IS MISDIRECTING THEM FROM YOUR

   14   CLIENT TO HIM AND HE'S OFFERING THOSE SERVICES.

   15          MR. MCINTYRE: AND AFTER THEY GET THERE THEY FIND THAT

   16   OUT. TO USE THE ANALOGY THAT YOUR HONOR USED, I THINK, IN

   17   READING FROM THE BROOKFIELD CASE, IF PEPSI WANTED TO ADVERTISE

   18   COKE SPELLED WITH A "K", K-A-W-K, AND I AS THE CONSUMER THOUGHT

   19   IT WAS COKE, UNDER SOME WILD STRETCH OF MY IMAGINATION, AND I

   20   TOOK A SIP, I MIGHT KNOW THE DIFFERENCE. THE CONSUMER'S

   21   CONFUSION DOESN'T HAVE TO GO ALL THE WAY DOWN TO THE END WHERE

   22   THEY GO OFF AND THEY BUY COKE AND THINK IT'S PEPIS, OR PEPSI AND

   23   THINK IT'S COKE, WHEN THEY BUY THIS COMPUTER CHIP AND THEY THINK

   24   IT'S THE OTHER ONE. IT IS THE LIKELIHOOD OF MISDIRECTING THE

   25   CONSUMER. WHEN THE CONSUMER GETS TO THE WEB SITE, I CAN SEE THE

   26   CONSUMER, IF THEY DIG THROUGH, AFTER A WHILE -- ALTHOUGH THERE

   27   ARE REFERENCES TO OTHER LAW FIRMS ON THERE. MARY -- WHAT'S

   28   HER --

3   1          THE COURT: PREVOST.

2          MR. MCINTYRE: MARY PREVOST'S LAW FIRM IS ALSO TOUTED ON

3   HIS WEB SITE. THERE IS ALSO ACTUALLY THE MISDIRECTION TO OTHER

4   LAW FIRMS.

5          MR. SAADAT-NEJAD: EXCUSE ME. SHOW, PLEASE, THAT THERE

6   IS A LINK ON THERE TO HER.

7          MR. MCINTYRE: I BELIEVE IN THE EXHIBITS, IT APPEARS --

8          THE COURT: ONE AT A TIME.

9          MR. SAADAT-NEJAD: SORRY.

10          MR. MCINTYRE: ALL RIGHT.

11          THE COURT: SO THERE IS A LINK ON HIS WEB SITE THAT LINKS

12   INTO HER?

13          MR. MCINTYRE: I DON'T THINK THERE IS A LINK, YOUR HONOR.

14          THE COURT: OKAY. WELL, HOW DOES -- SEE, THAT MAKES A

15   DIFFERENCE IN MY MIND.

16          MR. MCINTYRE: I UNDERSTAND THAT. I'M GOING TO -- I

17   DON'T WANT TO HAVE TO WASTE THE COURT'S TIME STUMBLING THROUGH

18   ALL OF THE ATTACHMENTS TO THE SLATTERY DECLARATIONS.

19          THE COURT: WELL, IF SOMEHOW THERE IS ANOTHER COMPETING

20   ATTORNEY THAT COMES INTO THE PICTURE, THAT'S MAYBE A DIFFERENT

21   THING.

22          MR. SAADAT-NEJAD: YOUR HONOR, MAY I SPEAK?

23          THE COURT: YES.

24          MR. SAADAT-NEJAD: YOUR HONOR, PACIFICLAWCENTERS.COM HAS

25   A TOTAL OF FIVE PAGES. WHAT THE PLAINTIFF HAS PROVIDED THE

26   COURT IS ONLY ONE PAGE. THEY HAVE SKIPPED FOUR OTHER PAGES, AND

27   ALL FOUR PAGES DO CONTAIN THE WORDS "PACIFIC LAW CENTER." THERE

28   IS A PSYCHOLOGICAL REASON THAT THEY DID THIS. I ASK THAT

3    1    THEY -- I WILL PROVIDE IT.   I WILL PROVIDE THE OTHER FOUR PAGES.

     2    USHOSTAGE.COM HAS BEEN SUED ON THIS COMPLAINT.   USHOSTAGE.COM

4    3    HAS A TOTAL OF 33 PAGES ON ITS WEB SITE RIGHT NOW, AND THERE IS

     4    NOT A SINGLE COPY IN ANY OF HIS --

     5         THE COURT:  I'M NOT SURE I UNDERSTAND THE RELEVANCE OF

     6    WHAT YOU'RE SAYING.

     7         MR. SAADAT-NEJAD:  THEY ARE SUING USHOSTAGE.COM, AND THEY

     8    HAVEN'T GIVEN ME A LEGITIMATE REASON WHY.

     9         THE COURT:  WELL, I DON'T KNOW ABOUT THAT.   THAT'S NOT

    10    BEFORE ME RIGHT NOW.

    11         MR. MCINTYRE:  IT'S NOT, YOUR HONOR.   IF YOU GO TO THE

    12    ATTACHMENTS TO MR. SLATTERY'S DECLARATION, IT'S AN ATTACHMENT

    13    FROM PACIFIC LAW CENTER LA JOLLA -- THIS COMES RIGHT OUT OF

    14    MR. SAADAT-NEJAD'S WEB SITE.   IF YOU GO TO PAGE 7 OF 10 --

    15         THE COURT:  WAIT A MINUTE.   LET ME FIND IT.

    16         MR. MCINTYRE:  I'M SORRY.   THE SLATTERY DECLARATION DATED

    17    FEBRUARY 26TH, YOUR HONOR.

    18         THE COURT:  ALL RIGHT.

    19         MR. MCINTYRE:  THERE IS AN ATTACHMENT TO IT.

    20         THE COURT:  I HAVE AN EXHIBIT 1 AND EXHIBIT 2 FOLLOWING

    21    THAT.

    22         MR. MCINTYRE:  THIS WOULD BE EXHIBIT 1, I GUESS, YOUR

    23    HONOR.   IT IS.   IT'S EXHIBIT 1.   I BEG YOUR PARDON.

    24         THE COURT:  ALL RIGHT.

    25         MR. MCINTYRE:  I'M LOOKING AT THE FOOTER ALL THE WAY DOWN

    26    AT THE LOWER RIGHT-HAND SIDE.

    27         THE COURT:  RIGHT.

    28         MR. MCINTYRE:  IF THE COURT GOES TO PAGE 7 OF 10.   THIS

1   IS SIMPLY AN EXAMPLE, BUT IT IS ONE I COULD POINT THE COURT TO

2   VERY QUICKLY.

3          THE COURT:  ALL RIGHT, 7 OF 10.

4          MR. MCINTYRE:  IF YOU LOOK AT WHAT WOULD BE THE SECOND

5   FULL PARAGRAPH.  "QUINN & ASSOCIATES, SAN DIEGO IMMIGRATION

6   ATTORNEY AND U.S. NATURALIZATION LAWYER...LOCATED IN SAN DIEGO,

7   CALIFORNIA IS DEVOTED EXCLUSIVELY TO U."  GEEZ, EVEN A TELEPHONE

8   NUMBER THERE.  THAT'S ONE OF THE REFERENCES ON THE SAADAT-NEJAD

9   PACIFICLAWCENTERS WEB SITE TO ANOTHER LAW FIRM.  I BELIEVE

10  ALSO -- I BELIEVE THERE ARE OTHERS.  THAT'S ONE I COULD POINT

11  THE COURT TO VERY QUICKLY.

12         THE COURT:  OKAY.  WELL, THAT MAKES A DIFFERENCE.

13         MR. MCINTYRE:  THERE'S ANOTHER ONE AT PAGE 5 OF 10 -- I

14  BEG YOUR PARDON.  THAT LOOKS LIKE THAT'S THE REFERENCE TO --

15  THAT'S REFERENCE, I THINK, TO -- IT'S A LITTLE CONFUSING.  IT'S

16  A REFERENCE BACK TO PACIFIC LAW CENTER.

17             THAT'S ONE OF THEM.  WE PUT MORE PAGES BEFORE THE

18  COURT WITH MR. SLATTERY'S SECOND DECLARATION.  I DON'T WANT TO

19  WASTE THE COURTS TIME PLOWING THROUGH ALL OF THOSE.  BUT I

20  RESPECTFULLY SUGGEST THAT THE COURT MAY WELL FIND OTHER

21  REFERENCES.

22         THE COURT:  THAT'S A DIFFERENT ANALYSIS, THEN, IN MY

23  MIND.

24         MR. MCINTYRE:  FROM A TRADEMARK STANDPOINT, I MEAN, WHAT

25  WE'VE ESTABLISHED, AT LEAST PRELIMINARILY -- WE HAVEN'T BEEN AT

26  THIS VERY LONG.  BUT IF YOU LOOK AT PARAGRAPHS 10 THROUGH 12 OF

27  THE SLATTERY DECLARATION, WHICH SHOWS ACTUAL CONFUSION -- WHICH,

28  FRANKLY, BECAUSE I TRY TRADEMARK CASES, IT'S IDEAL IF YOU CAN

4   1   SHOW THE ACTUAL CONFUSION; YOU DON'T NEED A BIG SURVEY.  HE'S

2   POINTING TO, AMONG OTHERS, QUINN & ASSOCIATES.  AND I DO BELIEVE

3   THERE ARE OTHER REFERENCES TO LAW FIRMS IN THE SITE.  IN FACT,

4.   MR. SLATTERY, WHO HAS LOOKED AT THE SITE, WHO IS A MEMBER OF THE

5   BAR, CAN ANSWER THAT QUESTION.

6        WHAT WE ARE ASKING IS NOT TO SHUT DOWN HIS SPEECH,

7   BUT TO SHUT DOWN HIS USE OF AN ESTABLISHED MARK BY CLEARLY A

8   VERY DELIBERATE ATTEMPT TO GET AS CLOSE AS HE COULD, ONE LETTER

9   OFF, TO THE PACIFIC LAW CENTER SITE, WHICH IS A LEGITIMATE

10   TRADEMARK.  I'LL BE HAPPY AGAIN TO ADDRESS ANY OF THE QUESTIONS

11   THE COURT WANTS.  IF THE COURT WANTS FURTHER BRIEFING ON THE

12   TRADEMARK ISSUE --

13        THE COURT:  IT'S THE CONFUSION THAT --

14        MR. MCINTYRE:  THE CONFUSION --

15        THE COURT:  IT'S WHAT KIND OF CONFUSION HAS TO COME OUT

16   OF THIS FOR A COURT TO BE JUSTIFIED IN ISSUING AN INJUNCTION.

17        MR. MCINTYRE:  I FULLY UNDERSTAND, YOUR HONOR.

18   ESPECIALLY ONE THAT ALSO, AS THE COURT WAS CONCERNED ABOUT THE

19   LAST TIME WE WERE HERE, IS FRAUGHT A BIT WITH FIRST AMENDMENT

20   IMPLICATIONS.  HOPEFULLY, WE'VE ADDRESSED THOSE.

21        THERE ARE JUST TWO THINGS I DO WANT TO ADDRESS FOR

22   THE COURT AND WITH MR. SAADAT-NEJAD HERE.  HE WAS KIND ENOUGH TO

23   CALL US YESTERDAY, AND PERHAPS HE WILL -- THE COURT MAY WANT TO

24   INQUIRE OF HIM.  THERE WAS CONCERN ABOUT GETTING SUBSTITUTE

25   SERVICE AT HIS FATHER'S RESIDENCE.  HE ASKED THAT WE NOT ATTEMPT

26   THAT AGAIN.  WE HAVE AN AGREEMENT WITH MR. SAADAT-NEJAD.  HE HAS

27   GIVEN US HIS CELL PHONE NUMBER, AND IF THERE IS INDEED A FURTHER

28   NEED TO SERVE HIM, ALL WE HAVE TO DO IS CALL HIM ON THE CELL AND

4

1   HE WILL COME TO OUR OFFICE AND PICK UP THE PAPERS.  BECAUSE HE

2   DOESN'T WANT TO BE SERVED AT ANY ADDRESS.  I WOULD LIKE TO GET

3   THAT ON THE RECORD.  IT'S LITTLE UNUSUAL.

4           THE COURT:  IS THAT YOUR AGREEMENT, SIR?

5           MR. SAADAT-NEJAD:  PARTLY.  YESTERDAY, I THINK IT WAS, I

6   TOLD -- WHAT IS YOUR NAME?

7           THE COURT:  MR. MCINTYRE.

8           MR. MCINTYRE:  MR. MCINTYRE.

9           MR. SAADAT-NEJAD:  MR. MCINTYRE THAT THEY CAN CALL ME AND

10  I WILL COME TO THEIR OFFICE.  THERE IS NO REASON TO MAKE ME LOOK

11  LIKE I'M RUNNING.  I AM NOT RUNNING.  PACIFIC LAW CENTER HAS HAD

12  MY PHONE NUMBER.  THEY HAVE MY E-MAIL ADDRESS.  MY E-MAIL

13  ADDRESS IS ON --

14          THE COURT:  BUT THE LAW DOESN'T PROVIDE FOR --

15          MR. SAADAT-NEJAD:  YES, I UNDERSTAND THAT.  THEY REALLY

16  MAKE NO ATTEMPT OF CONTACTING ME, EVEN THOUGH THEY COULD HAVE.

17  THEY REALLY HAVE MADE NO ATTEMPTS.  THEY WENT TO MY FATHER'S

18  HOUSE.

19          THE COURT:  OKAY.  THE ARRANGEMENT THAT MR. MCINTYRE

20  OUTLINED HERE, THAT IF THEY NEED TO SERVE YOU WITH SOMETHING,

21  THAT THEY WILL CALL YOU AND THEN YOU WILL COME AND PICK UP

22  WHATEVER THE DOCUMENT IS --

23          MR. SAADAT-NEJAD:  I WOULD LIKE TO CHANGE THAT, AFTER

24  THIS MORNING'S MEETING.  THAT WAY I DON'T GET ACCUSED OF ANY

25  WRONGDOINGS.

26          THE COURT:  WHEN YOU SAY CHANGE, YOU MEAN YOU AGREE?

27          MR. SAADAT-NEJAD:  NO, I DO NOT AGREE.

28          THE COURT:  YOU DON'T WANT TO DO THAT?

1      MR. SAADAT-NEJAD:  NO.  THIS IS WHAT I AM PROPOSING.

2  THEY CAN MAIL IT TO MY FATHER'S HOUSE, BUT THEY MUST MAIL TWO

3  COPIES OF EACH DOCUMENT IN TWO SEPARATE ENVELOPES.  ONE I WOULD

4  OPEN, AND ONE WOULD STAY SEALED.  I DO NOT TRUST THE PLAINTIFFS

5  ONE BIT.

6      THE COURT:  IS THAT AGREEABLE WITH YOU, MR. MCINTYRE?

7      MR. MCINTYRE:  IT'S PERFECTLY FINE, YOUR HONOR.  MY

8  CONCERN WOULD BE IF WE RUN INTO A SITUATION WHERE THE COURT'S

9  EITHER DIRECTIVE OR THE RULES WOULD REQUIRE VERY QUICK SERVICE.

10  BUT WE CAN, I THINK, FED-EX TO HIS FATHER'S HOUSE.  THAT'S FINE.

11  I JUST WANT TO MAKE SURE THAT WE CAN ADEQUATELY, AS NEED BE

12  THROUGH THE COURSE OF THIS, SERVE MR. SAADAT-NEJAD TIMELY SO HE

13  HAS ACCESS TO ALL THE PAPERS, THAT'S ALL.  THAT'S PERFECTLY

14  FINE.

15      MR. SAADAT-NEJAD:  WITH TRACKING NUMBER ON THE PACKAGES?

16      MR. MCINTYRE:  WE ROUTINELY DO THAT SO WE HAVE A TRACKING

17  NUMBER.

18      MR. SAADAT-NEJAD:  ALL RIGHT.  THAT'S --

19      MR. MCINTYRE:  WE HAVE TRACKING NUMBERS WITH EVERY FED-EX

20  WE DO.

21      THE COURT:  BY AGREEMENT, THAT'S THE WAY IT WILL OCCUR,

22  UNLESS WE SEE THERE IS A PROBLEM.

23      MR. MCINTYRE:  THANK YOU, YOUR HONOR.

24      THE COURT:  AS TO THE ISSUE I'M TALKING ABOUT, I'D LIKE

25  TO KNOW SOMETHING FURTHER ABOUT CONFUSION.  BECAUSE IT'S NOT

26  JUST ANYBODY'S CONFUSION.  I DON'T KNOW THAT WHAT'S IN

27  MR. SLATTERY'S DECLARATION IS THE KIND OF CONFUSION THAT'S

28  ENJOINABLE UNDER TRADEMARK.

1    MR. MCINTYRE:  I'LL BE HAPPY TO ADDRESS IT, YOUR HONOR.

2  I REALLY WILL.

3         THE COURT:  I THINK WE NEED TO DO THAT.

4         MR. SAADAT-NEJAD:  DO I HAVE ALL THE TIME?

5         THE COURT:  DO YOU UNDERSTAND WHAT I'M TALKING ABOUT?

6         MR. SAADAT-NEJAD:  ACTUALLY, CAN YOU REPEAT THAT AGAIN?

7         THE COURT:  TRADEMARK, TRADE NAME, SERVICEMARK, ANY OF

8  THOSE THINGS, CAME ABOUT BECAUSE OF THE IMPORTANT PUBLIC PURPOSE

9  OF MAKING SURE CONSUMERS ARE NOT CONFUSED ABOUT WHO IS OFFERING

10  CERTAIN GOODS AND SERVICES.  FOR INSTANCE, IF YOU WERE A CAR

11  MANUFACTURER, YOU COULDN'T CALL YOURSELF GENERAL MOTORS AND TRY

12  TO SELL YOUR CARS UNDER THE NAME GENERAL MOTORS, BECAUSE THAT'S

13  A WELL-KNOWN, ALREADY ESTABLISHED TRADEMARK.

14         ON THE OTHER HAND, MY QUESTION TO MR. MCINTYRE IS

15  HOW MUCH CONFUSION AND WHAT TYPE OF CONFUSION DOES IT TAKE WHEN,

16  IN YOUR CIRCUMSTANCE, YOU'RE NOT OFFERING A SERVICE SIMILAR, OR

17  ANY SERVICE AT ALL COMPARED TO PACIFIC LAW CENTER, ALTHOUGH YOU

18  HAVE CREATED A DOMAIN NAME THAT'S ALMOST IDENTICALLY THE SAME.

19  AND THERE ARE CASES ON THIS.  DOMAIN NAMES ARE PROTECTABLE.  THE

20  QUESTION IS WHAT KIND OF CONFUSION COMING OUT OF YOUR USE OF

21  YOUR DOMAIN NAME WOULD HAVE TO EXIST FOR ME TO ISSUE AN

22  INJUNCTION.  THAT'S WHAT I WANT TO KNOW ABOUT.

23         MR. SAADAT-NEJAD:  SIR, IF I MAY.  ON THE PAGE OF 100%

24  PERCENT FREE WARNING, THAT IS THE PAGE THAT FOCUSES ON PACIFIC

25  LAW CENTER, THE SECOND PAGE OF PACIFICLAWCENTERS.COM, AND THE

26  VISITOR, WHOEVER VISITS THAT PAGE IS ENCOURAGED TO GO TO

27  PACIFICLAWCENTER.COM AND PHILLIPSLAW.COM, WHICH IS OWNED BY THE

28  PHILLIPS & ASSOCIATES LAW FIRM IN ARIZONA.  IT HAS BEEN ON THERE

1    FOR SEVERAL WEEKS.

2                    AS FAR AS ANY LITERATURE IN THERE THAT ADVERTISES,

3    FOR EXAMPLE, OTHER ATTORNEYS, I FEEL THAT I DO HAVE THE RIGHT TO

4    ADVERTISE MY SPACE.   IN THIS CASE IT DOES NOT ADVERTISE.   I

5    STILL QUESTION THE AUTHENTICITY OF THESE PAPERS THAT THEY HAVE

6    NOW FILED.   I HAVE SAVED ALL OF THE HTML CODES ON THE WEB SITE,

7    E-MAILED THEM TO MYSELF SO IT'S DATED, AND THEN I BROUGHT DOWN

8    EVERYTHING.   I HOPE TO BRING THE HTML CODES TO --

9            THE COURT:  THE ISSUE HERE IS NOT YOUR ABILITY TO

10   CRITICIZE PACIFIC LAW CENTER.  AS MR. MCINTYRE SAID, YOU'RE

11   ENTITLED TO DO THAT.

12           MR. SAADAT-NEJAD:  OKAY.

13           THE COURT:  SUBJECT TO OTHER RULES THAT MAY APPLY,

14   DEFAMATION AND OTHER THINGS.   YOU RUN THE RISK OF BEING

15   RESPONSIBLE FOR THE THINGS THAT YOU SAY.

16           MR. SAADAT-NEJAD:  YES.

17           THE COURT:  BUT THAT'S NOT WHAT THEY ARE TALKING ABOUT.

18   THAT'S DIFFERENT THAN THIS.   THE QUESTION IS WHETHER YOU CAN USE

19   A DOMAIN NAME ALMOST IDENTICALLY SIMILAR; THAT IT WOULD BE

20   CONFUSING TO THE PUBLIC, AND THEREFORE IT WOULD BE IN VIOLATION

21   OF TRADEMARK, TRADE NAME, SERVICEMARK OR NAME RULES, WHICH COULD

22   BE ENJOINABLE.   I WANT TO KNOW ABOUT THE NATURE AND TYPE AND

23   EXTENT OF CONFUSION THAT WOULD ALLOW ME, OR NOT ALLOW ME, TO

24   ISSUE AN INJUNCTION.   THAT DOESN'T MEAN -- IF I ISSUE AN

25   INJUNCTION ULTIMATELY, THAT MEANS YOU WOULDN'T BE ABLE TO USE

26   THAT DOMAIN NAME.   YOU COULD USE SOME OTHER DOMAIN NAME, AND YOU

27   COULD STILL CRITICIZE THEM, IF YOU WANT TO, AND YOU STILL STAND

28   RESPONSIBLE FOR WHATEVER COMES OUT OF IT.

6

1    MR. SAADAT-NEJAD:  CAN I DRIVE DOWN TO TIJUANA, WRITE

2   WHATEVER I WANT ON PACIFICLAWCENTERS.COM, AND THEN COME BACK TO

3   THE UNITED STATES?

4    THE COURT:  I VERY MUCH DOUBT IT.  I DON'T KNOW THE

5   ANSWER TO THAT.

6    MR. SAADAT-NEJAD:  WHERE DOES IT STOP?  WHERE DOES IT

7   STOP?  WHAT COUNTRY CAN I GO TO AND USE PACIFICLAWCENTERS.COM?

8    THE COURT:  I'M NOT SURE THAT YOU CAN.  I DON'T KNOW THE

9   ANSWER TO THAT.  I'M NOT GIVING YOU AN OPINION.  THAT'S A WHOLE

10   DIFFERENT ISSUE.  BUT IT'S LIKE YOU COULDN'T GO TO MEXICO AND

11   CALL YOURSELF GENERAL MOTORS.  GENERAL MOTORS WOULD BE AFTER YOU

12   UP HERE AS SOON AS YOU GOT BACK.

13    MR. SAADAT-NEJAD:  YOU MEAN GENERALMOTORS.COM AS A DOMAIN

14   NAME?

15    THE COURT:  GENERALMOTORS.COM, TO USE THE EXAMPLE WE

16   TALKED ABOUT BEFORE.

17    I DO HAVE ONE QUESTION.  YOU INDICATED -- SOMEBODY

18   INDICATED THAT MAYBE MARY PREVOST IS GOING TO BE ASSISTING YOU.

19   ARE YOU GOING TO HAVE AN ATTORNEY IN THIS MATTER?

20    MR. SAADAT-NEJAD:  AS FAR AS RIGHT NOW GOES, NO, YOUR

21   HONOR.

22    THE COURT:  OKAY.  WELL, THESE ARE COMPLICATED AREAS.

23    MR. SAADAT-NEJAD:  YES.

24    THE COURT:  IT WOULD BE VERY HELPFUL IF YOU HAD AN

25   ATTORNEY.

26    MR. SAADAT-NEJAD:  I WILL CONTACT CIVIL RIGHTS

27   ORGANIZATIONS, WRITE THEM LETTERS, AND SEE IF ANYONE WILL

28   RESPOND.

6  1      THE COURT:  IT WOULD BE HELPFUL.

2      MR. SAADAT-NEJAD:  OKAY.  BUT THIS WILL BE VERY TIME

3  CONSUMING.  I WOULD LIKE TO GET A CONTINUANCE ON THIS CASE, IF

4  YOU ARE NOT GOING TO DISMISS THE CASE.

5      THE COURT:  WELL, I'M GOING TO ASK MR. MCINTYRE AND YOU

6  TO GIVE ME SOME MORE INFORMATION ABOUT, IN THIS CIRCUMSTANCE,

7  WHAT'S ENJOINABLE AND WHAT'S NOT.  I DON'T KNOW HOW MUCH TIME

8  YOU NEED.

9      MR. SAADAT-NEJAD:  I WOULD LIKE TO MENTION THERE ARE

10  SEARCH ENGINES BESIDES GOOGLE.  I HAVE PUNCHED INTO THE SEARCH

11  BOX THE WORDS "PACIFIC LAW CENTER," ALL SEPARATE, JUST AS THE

12  PLAINTIFF HAS, AND WHEN YOU PUNCH IN "PACIFIC LAW CENTER" SOME

13  SEARCH ENGINES WILL BRING UP ADVERTISEMENTS, SPONSORED

14  ADVERTISEMENTS, AND THERE ARE SPONSORS THAT ARE ATTORNEYS THAT

15  DO COME UP WHEN YOU PUNCH IN "PACIFIC LAW CENTER" ON THE SEARCH

16  ENGINE THAT IS NOT PACIFIC LAW CENTER.  ALL THEY SAY, FOR

17  EXAMPLE, "WE ARE THE BEST ATTORNEY IN THE WORLD."

18      THE COURT:  ALL I'M CONCERNED WITH IS YOUR DOMAIN NAME

19  AND WHAT COMES UP WHEN THAT'S USED.  ALL THAT'S BEFORE ME NOW IS

20  SUBSTANTIALLY SIMILAR DOMAIN NAMES.  NOW, THERE ARE OTHER

21  FACTORS WHEN YOU'RE USING THE INTERNET.  WE HAVEN'T TALKED ABOUT

22  ANY OF THOSE THINGS.  THAT'S NOT WHAT'S BEING ASKED OF ME AT

23  THIS STAGE.

24      MR. MCINTYRE:  WHEN WOULD YOU LIKE THE ADDITIONAL

25  BRIEFING, YOUR HONOR?

26      THE COURT:  AT YOUR PLEASURE.

27      MR. MCINTYRE:  WELL, I WILL SAY THIS FOR

28  MR. SAADAT-NEJAD.  APPARENTLY, ONCE HE BECAME AWARE OF THE

6   1   COURT'S TEMPORARY RESTRAINING ORDER, HE HAS BLACKED OUT HIS

2   PACIFICLAWCENTERS SITE.  YOUR HONOR MAY HAVE ALREADY TRIED IT.

3   IF ONE --

4           THE COURT:  NO.

5           THE COURT:  IF ONE GOES AND TRIES TO LOG ON, ALL YOU GET

6   IS A BLACK PAGE.  I COMMEND HIM FOR THAT.  THAT WAS THE COURT'S

7   ORDER.

8           THE COURT:  OKAY.

9           MR. MCINTYRE:  BECAUSE OF THAT, I WOULD LIKE TO DO IT

10   PROMPTLY.  WOULD WEDNESDAY WORK FOR THE COURT?  I HAVE A BRIEF

11   DUE IN L.A. ON MONDAY.

12           THE COURT:  I'M IN TRIAL ALL NEXT WEEK.

7   13           MR. MCINTYRE:  WELL, AT LEAST TO GET IT TO THE COURT, SO

14   THE COURT HAS WHATEVER SUPPLEMENTAL PAPERS.

15           THE COURT:  IF YOU WANT TO HAVE THIS HEARD FURTHER A WEEK

16   FROM TODAY.

17           MR. MCINTYRE:  THAT WOULD BE FINE.  BY WEDNESDAY?

18           THE COURT:  DOES THAT GIVEN YOU ENOUGH TIME, SIR?

19           MR. SAADAT-NEJAD:  I HAVE A PENDING CRIMINAL CASE, TWO OF

20   THEM, AS I PUT IN THE DECLARATION.  I'VE PRETTY MUCH LOST FAITH

21   IN THE CRIMINAL ATTORNEY.  PACIFIC LAW CENTER HAS MADE CONTACT

22   WITH HIM.  I WOULD LIKE TO GET THIS IN APRIL.  HOPEFULLY, I CAN

23   GET THE CRIMINAL CASE RESOLVED BY THEN.  IF NOT --

24           THE COURT:  WELL, AS LONG AS YOU HAVE YOUR DOMAIN BLACKED

25   OUT.

26               DOES THAT WORK FOR YOU?

27           MR. MCINTYRE:  IT WORKS FINE, YOUR HONOR.  I UNDERSTAND.

28   LIBERTY IS MORE IMPORTANT THAN ALMOST ANYTHING ELSE.  TO THE

7   1   EXTENT MR. SAADAT-NEJAD HAS PENDING CRIMINAL MATTERS, IF THE

2   COURT WILL JUST CONTINUE, WITH HIS ACQUIESCENCE, THE TRO IN

3   PLACE. DID YOU WANT TO PICK --

4        THE COURT: WELL, WE WOULD DO IT ON A FRIDAY, SIR.

5        MR. SAADAT-NEJAD: ON A FRIDAY?

6        THE COURT: WHEN IN APRIL?

7        MR. SAADAT-NEJAD: MY NEXT COURT DATE WILL BE MARCH 28TH.

8   I'M SURE THAT IT WILL GET CONTINUED. I WOULD RECOMMEND APRIL

9   20TH.

10        MR. MCINTYRE: THAT'S PERFECTLY FINE WITH ME, YOUR HONOR.

11   THANK YOU.

12        THE COURT: LET'S DO APRIL 20 AT -- WE ALWAYS HAVE

13   MOTIONS IN THE AFTERNOONS. I'M GOING TO SAY THREE O'CLOCK

14   AGAIN, SO YOU DON'T HAVE TO WAIT AROUND.

15        MR. MCINTYRE: THANK YOU. THAT'S VERY GRACIOUS, YOUR

16   HONOR.

17        THE COURT: THIS IS CONDITIONED UPON YOU NOT HAVING THAT

18   WEB SITE --

19        MR. SAADAT-NEJAD: I CANNOT HAVE ANYTHING ON THERE? I

20   CAN'T EVEN HAVE A PICTURE OF A CAT? NOTHING?

21        THE COURT: NOT UNDER THAT NAME.

22        MR. SAADAT-NEJAD: OKAY. NOW, WHAT ABOUT USING THE NAME

23   PACIFIC LAW CENTER IN PUBLIC FORUMS?

24        THE COURT: THEY ARE NOT ASKING THAT YOU BE STOPPED FROM

25   DOING THAT.

26        MR. SAADAT-NEJAD: I UNDERSTAND THAT THEY ARE TRYING TO

27   STOP ME FROM USING EVEN THE WORDS "PACIFIC LAW CENTER." I

28   BELIEVE THE COURT ORDER SETS OUT THE SAME THING.

7  1        THE COURT:  IT'S THE DOMAIN NAME THAT YOU'RE CONCERNED

2    WITH, AS I UNDERSTAND IT.

3        MR. MCINTYRE:  IN THIS INSTANCE IT'S THE DOMAIN NAME.

4    THAT'S THE MARK.

5        THE COURT:  AS YOU SAID, IF HE WANTED TO STAND OUTSIDE

6    YOUR CLIENT'S OFFICE AND SAY PACIFIC LAW CENTER IS NO GOOD, HE

7    CAN DO THAT.

8        MR. MCINTYRE:  HE CAN CARRY HIS PICKET SIGN AND SAY, DO

9    NOT HIRE PACIFIC LAW CENTER.  THAT IS OBVIOUSLY WITHIN AN AREA

10    OF PROTECTED SPEECH.  IT IS THE USE OF THE MARK AS A DOMAIN NAME

11    IN ANY OTHER FASHION HE WOULD USE THE MARK.  IT'S NOT THE

12    SPEECH.  IT'S THE MARK.

13        THE COURT:  I CAN'T ENJOIN HIM FROM USING THE NAME IN

14    CONVERSATION IN E-MAIL ON THE INTERNET.  IF HE WANTS TO TALK

15    ABOUT PACIFIC LAW CENTER, HE IS ENTITLED TO DO THAT.  HE CAN'T

16    HAVE A DOMAIN NAME, HOWEVER, THAT SAYS "PACIFIC LAW CENTER" OR

17    "PACIFIC LAW CENTERS" IN THIS CASE.  BUT IF HE CALLED IT THE

18    DONALD DUCK WEB SITE, AND IT'S ALL ABOUT -- AND HE SAYS, I WANT

19    YOU TO KNOW I DON'T LIKE PACIFIC LAW CENTER, HE CAN DO THAT.

20        MR. MCINTYRE:  I'M NOT ARGUING THAT POINT, YOUR HONOR.

21        THE COURT:  OKAY.

22        MR. MCINTYRE:  YOU'RE RIGHT, HE CAN'T.

23        MR. SAADAT-NEJAD:  YEAH, I -- JUST FOR THE RECORD, I AM

24    NOT AFTER THE NAME THAT THEY CLAIM THAT THEY OWN, PACIFIC LAW

25    CENTER.  I HIGHLY RECOMMEND THEY DO A BASIC REGISTRATION OF

26    OWNING THAT NAME.

27        THE COURT:  THEY HAVE USED IT FOR A LONG TIME.  IT'S

28    WIDELY KNOWN IN THE PUBLIC.  THERE'S OTHER WAYS THAT SOMETHING

BECOMES PROTECTABLE, AND ONE OF THEM IS WIDESPREAD USE. TO MY

SATISFACTION, THEY'VE ESTABLISHED THAT. IT DOESN'T HAVE TO BE

REGISTERED TO BE PROTECTED.

MR. SAADAT-NEJAD: WELL, DON'T THEY BECOME A PUBLIC

FIGURE FROM THIS?

THE COURT: WELL, THAT'S ANOTHER ISSUE. I'M NOT MAKING

ANY COMMENT THERE.

MR. SAADAT-NEJAD: THAT ISSUE WILL COME UP ON APRIL 20TH.

THE COURT: OKAY.

MR. SAADAT-NEJAD: THEY ARE A PUBLIC FIGURE.

THE COURT: WELL, WE ARE GOING TO CONTINUE THIS TO THAT

DATE. SINCE IT'S THAT FAR OUT, MR. MCINTYRE, IF YOU COULD LET

ME HAVE YOUR SUPPLEMENTAL POINTS AND AUTHORITIES AND ALL MAYBE

TEN DAYS AHEAD.

MR. MCINTYRE: I WAS GOING TO SUGGEST BY THE SIXTH, YOUR

HONOR, TWO WEEKS BEFORE THE HEARING. DOES THAT WORK FOR YOU?

MR. SAADAT-NEJAD WILL THEN HAVE A CHANCE TO RESPOND.

THE COURT: THAT'S RIGHT. THANK YOU.

MR. SAADAT-NEJAD: THANK YOU, YOUR HONOR.

MR. MCINTYRE: THANK YOU FOR TAKING THE TIME THIS

AFTERNOON, YOUR HONOR. APPRECIATE IT.

THE COURT: ALL RIGHT.

SIR, ONCE YOU RECEIVE MR. MCINTYRE'S -- HE'S GOING

TO HAVE EVERYTHING OUT ON APRIL THE 6TH, AND WE ARE GOING TO

MEET ON THE 20TH. I WOULD LIKE TO HAVE ANYTHING THAT YOU WOULD

HAVE IN RESPONSE -- COULD I HAVE THAT BY THE 13TH OF APRIL?

THAT WOULD GIVE YOU A WEEK.

MR. SAADAT-NEJAD: IF WORST COMES TO WORST, I CAN GET A

8  1   CONTINUANCE ON THE 20TH?

2        THE COURT:  WELL, WE ARE NOT INCLINED TO DO THAT.

3        MR. SAADAT-NEJAD:  I AM CURRENTLY OUT ON BAIL.  I MAY

4   EVEN GET REMANDED.  THEY ARE INFLUENCING MY CRIMINAL CASE, AND

5   THEY HAVE GIVEN SO MANY INDICATIONS THAT WE CAN HAVE THE

6   DISTRICT ATTORNEY FILE MORE CHARGES TO PUT ME BEHIND BARS IN

7   JAIL.

8        THE COURT:  I DON'T KNOW WHAT'S GOING TO HAPPEN TO YOU IN

9   THAT REGARD.  LET'S SAY ANY RESPONSE THAT YOU WISH TO GIVE ME --

10  HE IS GOING TO GET IT OUT TO YOU ON APRIL 6TH.  I WOULD LIKE TO

11  HAVE YOUR RESPONSE BY APRIL 16TH.  THAT'S A MONDAY.  THAT'S TEN

12  DAYS LATER.  IT TAKES ME TIME TO READ ALL OF THIS.

13       MR. SAADAT-NEJAD:  I FULLY UNDERSTAND.  BUT WHAT IF I AM

14  INCARCERATED?

15       THE COURT:  I DON'T KNOW.  WE WILL HAVE TO ADDRESS THAT

16  WHEN WE GET THERE.  HOPEFULLY THAT WON'T HAPPEN.  IF YOU ARE, WE

17  WILL SEE WHAT WE ARE GOING TO DO ABOUT IT.

18       MR. SAADAT-NEJAD:  FROM JAIL?  I MEAN --

19       THE COURT:  I CAN'T ANSWER THAT, SIR.  I DON'T KNOW.  WE

20  WILL SEE WHAT HAPPENS.

21       MR. MCINTYRE:  AS THE COURT SAID, HOPEFULLY THAT WON'T

22  OCCUR.

23       THE COURT:  WELL, HOPE NOT.  THANK YOU VERY MUCH.

24       MR. SAADAT-NEJAD:  THANK YOU.

25       MR. MCINTYRE:  THANK YOU AGAIN, YOUR HONOR.  APPRECIATE

26  YOUR TIME.

27       THE COURT:  ALL RIGHT.

28          (PROCEEDINGS ADJOURNED.)

1  STATE OF CALIFORNIA)
                       : SS.
2  COUNTY OF SAN DIEGO)

3

4

5          I, JAMES PARTRIDGE, CSR NO. 6226, AN OFFICIAL

6  REPORTER FOR THE SUPERIOR COURT OF THE STATE OF CALIFORNIA, IN

7  AND FOR THE COUNTY OF SAN DIEGO, DO HEREBY CERTIFY THAT I

8  REPORTED IN MACHINE SHORTHAND THE PROCEEDINGS HAD IN THE ABOVE

9  ENTITLED MATTER, AND THAT THE FOREGOING TRANSCRIPT, CONSISTING

10  OF PAGES NUMBERED 1 TO 22, INCLUSIVE, IS A FULL, TRUE AND

11  CORRECT TRANSCRIPT OF SAID PROCEEDINGS.

12          DATED AT SAN DIEGO, CALIFORNIA, THIS 23RD DAY OF

13  MARCH 2007.

14

15

16

17

18

19  _____

20

21          JAMES PARTRIDGE, CSR NO. 6226

22

23

24

25

26

27

28