EDWARD J. MCINTYRE [SBN 80402]
emcintyre@swsslaw.com
SOLOMON WARD SEIDENWURM & SMITH, LLP
401 B Street, Suite 1200
San Diego, California 92101
Telephone: (619) 231-0303
Facsimile: (619) 231-4755

Attorneys for Pacific Law Center and Solomon
Ward Seidenwurm & Smith, LLP

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFIC LAW CENTER, a Professional Law Corporation; and SOLOMON WARD SEIDENWURM & SMITH, LLP, <br><br> Plaintiffs, <br><br> v. <br><br> SHAHROKH SAADAT-NEJAD, an individual, <br><br> Defendant. | CASE NO. 07-CV-00460 JLS (POR) <br><br> **SOLOMON WARD'S REPLY IN SUPPORT OF ITS MOTION FOR PERMANENT INJUNCTION** <br><br> Date: March 28, 2008 <br> Time: 10:30 a.m. <br> Ctrm: 6, Third Floor <br><br> Hon. Janis L. Sammartino |

P:00418596:57122.003                                              07-CV-00460 JLS (POR)
SOLOMON WARD'S REPLY IN SUPPORT OF ITS MOTION FOR PERMANENT INJUNCTION

Dockets.Justia.com

# I
# INTRODUCTION

Saadat-Nejad's opposition notwithstanding, Solomon Ward will address—briefly—the issues actually before the Court.

# II
# PROCEDURAL POSTURE OF THE CASE

**The Injunctions and Contempt Finding.**

After Solomon Ward commenced this action,[1] on March 29, 2007, this Court (the Honorable Larry Alan Burns) entered a temporary restraining order with extensive findings on the record. On April 26, 2007, this Court entered a preliminary injunction that repeated verbatim the Court's prior retraining order. Again, the Court's extensive findings are on the record. Then, on July 14, 2007, this Court entered a civil contempt order and incarcerated Mr. Saadat-Nejad for almost two weeks.

**Only One Issue Remains.**

The only remaining issue—at least for Solomon Ward—is the entry of a permanent injunction and final judgment. Although the Lanham Act may entitle Solomon Ward to money damages and attorney's fees, Solomon Ward foregoes imposing any further burden on this Court and will waive any such rights upon the entry of a judgment of permanent injunction.

In that respect, Solomon Ward hopes that this Court's earlier contempt finding and the resulting incarceration are strong evidence and sufficient warning that this Court—if pressed by disobedience of its orders—will use its powers to ensure that parties obey its orders now and into the future.

# III
# SAADAT-NEJAD'S FIRST AMENDMENT RIGHTS

This case does **not** involve the First Amendment. Solomon Ward's counsel has long

---

[1] Initially Solomon Ward represented Pacific Law Center in a Superior Court action. As a result, Saadat-Nejad attacked Solomon Ward, giving rise to this action. A Pacific Law Center attorney now represents his firm; Edward McIntyre continues to represent Solomon Ward.

represented print and broadcast journalists and their newspapers and radio and television stations in First Amendment cases. He has fought long and hard to protect, preserve and advance First Amendment rights.[2] Accordingly, he is well aware of that precious right; he is also well aware of its limits.

Mr. Saadat-Nejad is no more entitled to cry, "First Amendment," when his conduct violates the anti-cybersquatting provisions of the Lanham Act than the publisher of false and misleading security documents can claim First Amendment protection in the face of charges he violated federal securities law,[3] or than co-conspirators whispering in the dark about fixing prices in the relevant markets can claim such protection to avoid prosecution for violation of federal anti-trust law.[4] The First Amendment does not protect the plagiarist from copyright infringement; the First Amendment does not protect trademark as service mark infringers.

This Court (Judge Burns) engaged in extended colloquies on the record—more than 100 pages of transcript—patiently and repeatedly explaining to Saadat-Nejad both when the Court entered its temporary restraining order and again when it entered its preliminary injunction, how he could exercise to their maximum his First Amendment rights. The Court also explained to him, however, that in doing so he could not violate Solomon Ward's rights as protected in this instance by the Lanham Act.

Noteworthy, the ACLU intervened in this case at the second contempt hearing. Although a steadfast advocate of First Amendment rights from its founding, the ACLU did **not** intervene because it believed that Saadat-Nejad's First Amendment rights were at stake; rather, it argued that Saadat-Nejad had been entitled to court-appointed counsel at his contempt hearing.[5]

---

[2] In California alone, that practice has been in the former San Diego Municipal Court (where preliminary hearings were once held) through California's appellate courts to the California Supreme Court and the United States Supreme Court in *Press Enterprise I and Press Enterprise II*.
[3] 15 USC § 77, *et seq.*
[4] 15 USC § 1, *et seq.*
[5] Judge Burns addressed that precise contention on the record and no further action on that issue has occurred.

# IV
# THE SUPERIOR COURT ACTION

Solomon Ward is not even a party in the Superior Court action. Nothing before this Court at this time involves the Superior Court action.

# V
# PERMANENT INJUNCTION

Solomon Ward has met the Ninth Circuit's standard for the entry of a permanent injunction

**Ninth Circuit Standard.**

Under the Ninth Circuit standard, this Court should grant the injunctive relief sought because Solomon Ward has demonstrated: (1) success on the merits of its cybersquatting and Lanham Act claims; (2) actual irreparable injury; (3) a balance of hardships favoring it; and (4) advancement of the public interest.[6] In addition, Solomon Ward has demonstrated a combination of success on the merits and actual irreparable harm and that serious questions are raised and the balance of hardships tips sharply in its favor.[7]

Saadat-Nejad has no right to misappropriate domain names already registered to Solomon Ward or to misappropriate domain names so confusingly similar to the names it uses.[8]

# VI
# THE ANTI-CYBERSQUATTING AND CONSUMER PROTECTION ACT PROVIDES FOR PERMANENT INJUNCTIVE RELIEF

**Cybersquatting Factors.**

Saadat-Nejad has no trademark or other intellectual property rights in Solomon Ward's domain names; indeed, the Solomon Ward domain name also consists of the legal names of two Solomon Ward founding partners, Herbert J. Solomon and William O. Ward.

Saadat-Nejad has no prior use of either domain name in connection with any *bona*

---

[6] *Earth Island v. United States Forest Service*, 442 F.3d 1147, 1158-59 (9th Cir. 2006), quoting *Earth Island Institute v. United States Forrest Service*, 351 F.3d 1291, 1297-98 (9th Cir. 2003).
[7] *Id.* at 1159.
[8] He is attempting to hold the other plaintiff, Pacific Law Center, hostage for at least a half a million dollars.

*fide* offering of goods or services. Nor does Saadat-Nejad have a *bona fide* non-commercial or fair use of any mark in a site accessible under the domain name. Saadat-Nejad has made clear his intent to divert clients from Solomon Ward's on-line locations to sites accessible under the domain names that he has registered with the intent to tarnish or disparage Solomon Ward.

He has created a likelihood of confusion about the source, sponsorship, affiliation or endorsement of his sites. Saadat-Nejad has demanded half a million dollars—through a lawyer purportedly representing him—to stop using the pacificlawcenters.com domain name and other Pacific Law Center domain names.

The Solomon Ward marks are distinctive and famous in that they are widely recognized by the general consuming public in San Diego, in California and across the United States as a designation of the services of Solomon Ward. Saadat-Nejad's registration of multiple domain names which he knows are identical or confusingly similar to the marks of Solomon Ward—marks that are distinctive and famous.

In short, Solomon Ward has established **eight** of the nine factors that 15 U.S.C. § 1125(d)(1)(B) and 15 U.S.C. § 1125(c)(1) suggests a court might consider in determining whether there is actionable cybersquatting. Indeed, the only factor that Solomon Ward has not addressed directly is whether Saadat-Nejad provided material and misleading false contact information when he applied for the registration of the domain names. He has, however, a pattern of prior conduct, first in his attack on Pacific Law Center and, subsequently, his attack on Solomon Ward.

**This Court's Prior Findings.**

As this Court has twice found, Solomon Ward has made a very strong showing of each of those elements. It has also demonstrated irreparable harm. Accordingly, it is entitled to permanent injunctive relief.

**No Commercial Use Requirement.**

Solomon Ward does not have to show any commercial interference with its law

1 practice to prevail under the Anti-Cybersquatting Act. In a case almost directly in point,[9] the
2 Ninth Circuit has held that the Anti-Cybersquatting Act does not contain a commercial use
3 requirement.[10]

4     The Christensen law firm sued Chameleon because, Chameleon had shifted the
5 registration of the Christenson law firm's domain names to itself to gain leverage in a
6 payment dispute. The district court held:

> An individual may be held liable under the ACPA for cybersquatting if the person (1) registers, traffics in, or uses a domain name identical or confusingly similar to a distinctive mark, and (2) has a bad faith intent to profit from use of the mark as a domain name.[11]

10     The district court also found, as a matter of law, that the transfer of the domain names
11 constituted "registration" of those domain names under the ACPA.

12     Bosley Medical provided surgical hair transplants and owns, among others, the
13 registered trademark Bosley Medical. Kramer, a dissatisfied former patient, purchased the
14 domain name bosleymedical.com. Then, five days later, Kramer delivered a two page letter
15 that read:

> Let me know if you want to discuss this. Once it is spread over the internet it will have a snowball effect and be too late to stop. M. Kramer [phone number]. P.S. I always follow through on my promises.

18     Reversing the district court's grant of summary judgment in Kramer's favor, the Ninth
19 Circuit held that 15 U.S.C. § 1125(d) does not require plaintiff to show that the defendant
20 has engaged in **any** commercial use. Rather, all that the trademark owner asserting an anti-
21 cybersquatting claim must establish is (1) a valid trademark entitled to protection; (2) that its
22 mark is distinct and famous; (3) the defendant's domain name is identical or confusingly
23 similar to, or in the case of famous marks, dilutive of, the owner's mark; and (4) the

---

[9] *Bosley Medical Institute, Inc. v. Kremer*, 403 F.3d 672, 608-81 (9th Cir. 2005); *The Christensen Firm v. Chameleon Data Corp.*, 2006 US. Dist. LEXIS 79710 (W.D. Wash. 2006). See also *Daimler Chrysler v. The Net Inc.*, 388 F.3d 201 (6th Cir. 2004); *Ford Motor Company v. Catalanatte*, 342 F.3d 543 (6th Cir. 2003).
[10] *Id.* at 680-681.
[11] *The Christensen Firm, supra*, 2006 U.S. Dist. LEXIS *8.

defendant used, registered or trafficked in the domain name; (5) with a bad faith intent to profit.[12]  Solomon Ward has done that and more.  It is entitled to a permanent injunction.

## VII
## CONCLUSION

Saadat-Nejad singled out and attacked Solomon Ward for one reason.  It did that which ennobles the legal profession; it represented a client's rights in a court of law.  The record in this case is filled with his vile, anti-Semitic rants.  When he misappropriated Solomon Ward's domain name, however, and infringed its service mark, he violated federal law as well as Solomon Ward's rights.  Upon the entry of a judgment of permanent injunction, Solomon Ward will walk away from any claim of damages or for its attorneys fees and costs and, as far as Solomon Ward is concerned, this case is at an end.

DATED: March 21, 2008        Respectfully submitted,

SOLOMON WARD SEIDENWURM & SMITH, LLP


By:   /s/ Edward J. McIntyre
      EDWARD J. MCINTYRE
      Attorneys for Pacific Law Center and Solomon Ward

---

[12]  *Bosley Medical Institute*, *supra*, 403 F.3d at 681.

# CERTIFICATE OF SERVICE

I caused the **SOLOMON WARD'S REPLY IN SUPPORT OF ITS MOTION FOR PERMANENT INJUNCTION** to be served in the following manner:

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

**Electronic Mail Notice List**

ROBERT F. CLARKE, ESQ. (SBN 79881)
PACIFIC LAW CENTER
4225 Executive Square, Suite 1550
La Jolla, CA 92037
Telephone: (888) 789-0123
Facsimile: (800) 718-1825
Attorneys for Pacific Law Center

The following party who is not on the list to receive e-mail notices for this case. He therefore requires manual noticing, via Federal Express:

Shahrokh Saadat-Nejad
3713 Mt. Ashmun Place
San Diego, CA 92111
**VIA FEDERAL EXPRESS**

/s/ Edward J. McIntyre
EDWARD J. MCINTYRE