1  EDWARD J. MCINTYRE [SBN 80402]
   emcintyre@swsslaw.com
2  SOLOMON WARD SEIDENWURM & SMITH, LLP
   401 B Street, Suite 1200
3  San Diego, California 92101
   Telephone: (619) 231-0303
4  Facsimile: (619) 231-4755

5  Attorneys for SOLOMON WARD SEIDENWURM
   & SMITH, LLP

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFIC LAW CENTER, A Professional Corporation and SOLOMON WARD SEIDENWURM & SMITH, LLP., <br><br> Plaintiff, <br><br> v. <br><br> SHAHROKH SAADAT-NEJAD, <br><br> Defendant. | CASE NO. 07-CV-00460 JLS (POR) <br><br> Hon. Janis L. Sammartino <br><br><br> **SOLOMON WARD'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW** |

# TABLE OF CONTENTS

PAGE(S)

CONTENTIONS OF FACT ...................................................................................................1

    Solomon Ward. ..........................................................................................................1

    Saadat-Nejad Retained and then Fired Pacific Law Center. ......................................1

    Saadat-Nejad Misappropriates Pacific Law Center's Domain Name. ........................1

    Superior Court Action. ................................................................................................2

    Saadat-Nejad Misappropriates Solomon Ward's Domain Names. .............................2

    This Action. .................................................................................................................3

    The Temporary Restraining Order. .............................................................................4

        The Order. ..........................................................................................................4

        The Findings. .....................................................................................................4

    The Preliminary Injunction. ........................................................................................6

ISSUES OF LAW ...................................................................................................................6

    The Anti-Cybersquating and Consumer Protection Act Gives This Court the Power
        Permanently to Enjoin SAADAT-NEJAD's Misappropriation of
        SOLOMON WARD'S Service Marks, Trade Names and Domain Names. ..............6

    Cybersquatting Factors. ..............................................................................................6

    Legal Standard for Permanent Injunction. .................................................................7

    No Commercial Use Requirement. .............................................................................8

    This Court's Prior Findings. ........................................................................................9

    The Anti-Cybersquatting Act Provides For Permanent Injunctive Relief. ................9

    SAADAT-NEJAD'S Conduct Violates Other Lanham Act Provisions. ..................10

        Trade Name Infringement. ...............................................................................10

    Trade Name Infringement/Dilution. .........................................................................10

    Trademark Infringement. ..........................................................................................11

    False Designation of Origin. ....................................................................................11

SAADAT-NEJAD'S Conduct Also Violates California Law. ...................................................12

    California Unfair Trade Practice Act. ................................................................12

    Unauthorized Use of Name. ................................................................................12

Relief Requested. ....................................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*American-Arab Anti-Discrimination Committee v. Reno*
    70 F.3d 1045 (9th Cir. 1995)..................................................................7

*Amoco Prod. Co. v. Village of Gambell*
    480 U.S. 531 (1987)..................................................................8

*Bellagio v. Denhammer, et al.*
    2001 U.S. LEXIS 24764 (D. Nev. 2001)..................................................................9

*Bosley Medical Institute, Inc. v. Kremer*
    403 F.3d 672 (9th Cir. 2005)..................................................................8, 9

*Daimler Chrysler v. The Net Inc., et al.*
    388 F.3d 2001 (6th Cir. 2004)..................................................................9

*Daimler Chrysler v. The Net Inc.*
    388 F.3d 201 (6th Cir. 2004)..................................................................8

*E.&J. Gallo Winery v. Spider Webs, Ltd., et al.*
    286 F.3d 270 (5th Cir. 2002)..................................................................9

*eBay Inc. v. MercExchange, L.L.C.*
    547 U.S. 388 (2006)..................................................................7

*Flow Control Industries, Inc. v. Amhi, Inc.*
    278 F.Supp.2d 1193 (W.D. Wash. 2003)..................................................................9

*Ford Motor Company v. Catalanatte*
    342 F.3d 543 (6th Cir. 2003)..................................................................8

*Hodgers-Durgin v. De La Vina*
    199 F.3d 1037 (9th Cir. 1999)..................................................................8

*Mattel, Inc. v. Internet Dimensions, Inc.*
    55 USPQ2d 1620 (S.D. NY 2000)..................................................................6

*Phillip Morris USA, Inc. v. Marlborough Express, Tobacco Traders and Trust, et al.*
    2005 U.S. Dist. LEXIS 4359 (E.D. NY 2005)..................................................................9

*Qwest Communications International v. Sonny Corporation*
    2006 U.S. Dist. LEXIS 87007 (W.D. Wash. 2006)..................................................................9

*Seattle Laptop Incorporated v. A-1 Best Computer, Inc.*
   2006 U.S. Dist. LEXIS 13013 (W.D. Wash. 2006) .......................................................... 9

*Sporty's Farm, LLC v. Sportman's Market, Inc.*
   202 F.3d 489 (2d Cir. 2000) ........................................................................................... 6

*Walsh v. City and County of Honolulu*
   460 F. Supp. 2d 1207 ..................................................................................................... 8


**FEDERAL STATUTES**

15 U.S.C. § 1125(a) .............................................................................................................. 11, 12

15 U.S.C. § 1125(c)(1) ................................................................................................................ 7

15 U.S.C. § 1125(d) (1)(B) ......................................................................................................... 7

Title 15 of the United States Code, § 1125(d) ........................................................................ 6, 9


**CALIFORNIA STATUES**

California Business & Professions Code §§ 17200, *et seq.* ..................................................... 12

California Civil Code § 3344 .................................................................................................... 12

| | |
|---|---|
| 1 | SOLOMON WARD respectfully submits that the trial of this case involves the following |
| 2 | facts and issues of law. |
| 3 | **CONTENTIONS OF FACT** |
| 4 | Most, if not all, of the issues of fact are not in dispute or are indisputable. |
| 5 | **Solomon Ward.** |
| 6 | Solomon Ward Seidenwurm & Smith, LLP is a professional law corporation in San Diego, |
| 7 | that is, and has been for more than 30 years, known and practicing law throughout California and |
| 8 | across the country. |
| 9 | Solomon Ward uses and has used the exclusive service marks and trade names "Solomon |
| 10 | Ward Seidenwurm & Smith" and "Solomon Ward" in its professional business. |
| 11 | Solomon Ward has registered the internet domain names "swsslaw.com" and |
| 12 | "solomonward.com" and has operated internet sites at swsslaw.com to make the public aware of |
| 13 | its professional practice. |
| 14 | Solomon Ward has over many years built up valuable goodwill in its service marks and |
| 15 | trade names and both the legal profession and the general public has come to associate those |
| 16 | names exclusively with Solomon Ward's professional practice in San Diego, throughout |
| 17 | California and across the nation. |
| 18 | **Saadat-Nejad Retained and then Fired Pacific Law Center.** |
| 19 | On August 31, 2006, Saadat-Nejad retained Pacific Law Center to defend him against |
| 20 | criminal charges pending in San Diego and for which he was then incarcerated. |
| 21 | Shortly thereafter, Saadat-Nejad became dissatisfied with Pacific Law Center's |
| 22 | representation and terminated its representation of him. |
| 23 | **Saadat-Nejad Misappropriates Pacific Law Center's Domain Name.** |
| 24 | On September 20, 2006, Saadat-Nejad registered and obtained ownership of the internet |
| 25 | domain name "pacificlawcenters.com," which is confusingly similar to the internet domain names |
| 26 | registered to Pacific Law Center and sites it uses. |
| 27 | He maintained registration of the internet domain name of, and operated the internet site at, |
| 28 | "pacificlawcenters.com." |

Saadat-Nejad, through a lawyer purporting to represent him, told Pacific Law Center that, unless it paid him $500,000, he would continue to use its domain name. Saadat-Nejad reiterated that threat at a meeting at Solomon Ward's office.

**Superior Court Action.**

On January 12, 2007, Pacific Law Center filed an action in superior court against Saadat-Nejad, Case No. GIC 878352.

On February 23, 2007, Pacific Law Center retained Solomon Ward to represent it in that lawsuit.

On February 27, 2007, Solomon Ward successfully obtained a restraining order against Saadat-Nejad.

**Saadat-Nejad Misappropriates Solomon Ward's Domain Names.**

On March 10 or 11, 2007, Saadat-Nejad obtained the domain name "solomonwardlawfirm.com."

Saadat-Nejad maintained registration of that internet domain name and operated the internet site at solomonwardlawfirm.com.

Saadat-Nejad's intent was (1) to intercept Solomon Ward's actual and potential clients and the general public who use internet search engines' "keyword" search features that would otherwise lead them to Solomon Ward's internet sites; and (2) to intercept clients who have added "law firm" to Solomon Ward's true internet site name in an attempt to find Solomon Ward; and (3) once clients enter Saadat-Nejad internet site, to expose them to its content, which he designed specifically to disparage and harm the goodwill of Solomon Ward, attempting to dissuade actual and potential clients from doing business with Solomon Ward and enticing them to communicate by email with Saadat-Nejad and to visit another internet site that Saadat-Nejad owns and operates under the internet domain name "ushostage.com."

Saadat-Nejad also registered and used solomonwardsandiego.com.

Saadat-Nejad has made clear that he intended to continue his vendetta against Solomon Ward because it represented Pacific Law Center initially in the state action and later in this action.

///

1    Solomon Ward has had inquiries questioning its association with the pirate site that Saadat-Nejad has used.

Solomon Ward has already suffered irreparable harm as a result of Saadat-Nejad's conduct and it will continue to suffer irreparable harm unless this Court stops him.

There is no way accurately to determine the whole of the harm that Saadat-Nejad has done to Solomon Ward and its reputation and the reputation of its attorneys.

Money damages are inadequate to repair that harm and, in that respect, Solomon Ward has already suffered and continues to suffer irreparable harm and will do so until this Court stops Saadat-Nejad.

This Court's record is already filled with evidence of Saadat-Nejad's misappropriation of Solomon Ward's service marks, trade names and domain names. Accordingly, Solomon Ward respectfully request this Court to take judicial notice of its own files and direct the Court specifically to the exhibits already in the record.[1]

**This Action.**

Solomon Ward sued Saadat-Nejad based on, *inter alia*, the Anti-Cybersquatting provisions of the Lanham Act.[2]

This Court granted Solomon Ward's motion for a temporary restraining order and, thereafter, issued a preliminary injunction.

At each hearing, the Court conducted a patient and extended colloquy with Saadat-Nejad informing him what he could and could not do.

///

///

///

---

[1] Those Exhibits and authenticating declarations are at McIntyre Declaration, with Exhibits (Docket No. 3); Slattery Declaration, with Exhibits (Docket No. 3); Phillips Declaration, with Exhibits (Docket No. 18); Supplemental Memorandum, with Exhibits (Docket No. 18); McIntyre Declaration (Docket No. 36); McIntyre Declaration (Docket No. 39); Exhibits in Notice of Lodgment, and specifically Exhibits 5 through 11 (Docket No. 39); McIntyre Declaration (Docket No. 48).

As a result, Saadat-Nejad attacked Judge Burns personally, accusing him, among other lies, of being in Solomon Ward's pocket.[3]

The temporary restraining order, however, did not stop Saadat-Nejad; neither did the preliminary injunction.

Nor did this Court's colloquies that warned Saadat-Nejad not to "get chalk on his shoes," or he would go to jail.[4] Accordingly, the Court found Saadat-Nejad in contempt and incarcerated him for almost two weeks.[5]

Solomon Ward now seeks to have this Court's preliminary injunction made permanent.

### The Temporary Restraining Order.

#### The Order.

On March 29, 2007, this Court entered a temporary restraining order that states:

Shahrokh Saadat-Nejad, and anyone acting in concert with him, is hereby enjoined and restrained from:

1. Registering, and trafficking in, any internet website or domain name that contains the words Pacific, Law and Center, with or without other words or symbols, in any respect whatsoever;

2. Registering, and trafficking in, any internet website or domain name that contains the words Solomon and Ward, with or without other words or symbols, in any respect whatsoever;

3. Registering and trafficking in, the service mark or trade name Pacific Law Center in any respect whatsoever.

4. Registering and trafficking in the service mark or trade name Solomon Ward or Solomon Ward Seidenwurm & Smith in any respect whatsoever.

#### The Findings.

In entering that order, the Court made the following findings of fact and law:

The standard for issuing a temporary restraining order is identical to the standard

---

[2] Before imposing on this Court, however, Pacific Law Center and Solomon Ward attempted to see if resolution was possible. They met with Saadat-Nejad for four hours on Friday, March 15; he showed up at Solomon Ward's offices with a baseball bat and tape recorder.

[3] See, for example, Transcript of April 26, 2007 hearing, Exhibit 4, and specifically p. 4:35 (Docket No. 39); see also Exhibits 5.2 and 9.6 (Docket No. 39). By way of further example, he claimed in his response to the preliminary injunction motion (Docket No. 24) that Solomon Ward has "judges in their back pockets," the same accusation that he leveled against Judge Burns.

[4] Transcript of April 26 hearing, 4:22-23 (Docket No. 39).

[5] Contempt order, entered July 14, 2006 (Docket No. 43); July 12, 2007 minute order (Docket No. 12).

for issuing a preliminary injunction. A party seeking injunctive relief under Rule 55 must show ... [a strong likelihood] of probable success on the merits and the possibility of irreparable harm or alternatively if serious questions are raised and the balance of hardships tips sharply in the moving party's favor. These formulations represent two points on a sliding scale, which the required degree of irreparable harm increases as the probability of success decreases. Even if the court is uncertain of the moving party's likelihood of success on the merits, a TRO may still issue if the moving party convinces the court that the balance of hardships tips in its favor.

Here I find that the plaintiffs have shown **both** a combination of probable success on the merits and the possibility of irreparable harm and that serious questions are raised and the balance of hardships tips sharply in the moving party's favor. The TRO in this case is supported by declarations of Mr. McIntyre and Thomas Slate (phonetic), a supervising lawyer at pacific law center. Their declarations substantiate that Mr. **Saadat-Nejad intentionally obtained and used confusing websites to discredit and disparage the two law firms** and to make what they allege are false and inflammatory accusations about the law firms and their lawyers. As a result, there has been harm to their reputation and businesses.

The declarations also substantiate that each law firm has established a secondary meaning to their service marks and trademark names associated with their professional practices. Mr. Saadat-Nejad, in the court's opinion, having viewed both his evidence and that submitted by the plaintiffs, does not appear to have any legitimate trademark or common law or registered right to use any name even remotely similar to Pacific Law Center or Solomon Ward and specifically no right to use pacificlawcenters.com and pacific/law/centers.com or solomonwardlawfirm.com or solomonwardsandiego.com.

I find in agreement with the plaintiffs that there's a great likelihood of harm if this conduct persists to their reputation. As I said, I've found that they've established, both law firms, a secondary meaning to these marks and the names associated with their professional practices.

The court has examined the underlying law in this case, the 1999 Anti-Cybersquatting and Consumer Protection Act, codified at Title 15 of the United States Code, Section 1125(d). The purpose of that section is to protect consumers and American businesses and to promote growth of online commerce, provide clarity for trademark owners by prohibiting bad faith and abusive registration of distinctive marks as internet domain names with the intent to profit from the goodwill associated with those marks.

In addition, the 9th Circuit has held that the not [Anti-Cybersquatting Act] contain a commercial use [requirement] they probably can in this case.

Show actual commercial interference with their law practices from Mr. Saadat-Nejad's Anti-Cybersquatting Act does not contain a commercial use requirement so that although they probably can in this case, the plaintiffs don't need to show actual commercial interference with their law practices from Mr. Saadat-Nejad's domain name misappropriation in order to prevail.[6]

---

[6] Transcript of March 29, 2007 hearing, pp. 2:15-2:18 (Docket No. 39). [Emphasis added.]

## The Preliminary Injunction.

On April 26, 2007, this Court entered a preliminary injunction that repeated verbatim the Court's prior temporary restraining order.

In entering that preliminary injunction, the Court found:

> The Court incorporates the transcript of proceedings at the temporary restraining order. I understand that it has not yet been prepared, but I incorporate that into my finding and analysis today. The legal standards discussed at that hearing and in the order that followed it apply here as well.
>
> The Court confirms its findings from the earlier hearing. I find that a preliminary injunction should issue. I find both a combination of probable success on the merits on the part of the plaintiffs and the possibility of irreparable harm of the kind that would issue has not ceased subject to a court order. The balance of hardships tips sharply in favor of the moving party.[7]

## ISSUES OF LAW

### The Anti-Cybersquating and Consumer Protection Act Gives This Court the Power Permanently to Enjoin SAADAT-NEJAD's Misappropriation of SOLOMON WARD'S Service Marks, Trade Names and Domain Names.

Congress passed the 1999 Anti-Cybersquatting and Consumer Protection Act—15 U.S.C. § 1125(d)—to protect consumers and American business, to promote growth of online commerce, and to provide clarity for trademark owners by prohibiting bad faith and abuse of registration of distinctive marks as Internet domain names with the intent to profit from goodwill associated with those marks.[8]

### Cybersquatting Factors.

Saadat-Nejad has no trademark or other intellectual property rights in Solomon Ward's domain names; indeed, the Solomon Ward domain name also consists of the legal names of two Solomon Ward founding partners, Herbert J. Solomon and William O. Ward.

Saadat-Nejad has no prior use of either domain name in connection with any *bona fide* offering of goods or services. Nor does Saadat-Nejad have a *bona fide* non-commercial or fair use

---

[7] Transcript of April 26, 2007 hearing, 4:12-13 (Docket No. 39).
[8] *Mattel, Inc. v. Internet Dimensions, Inc.*, 55 USPQ2d 1620 (S.D. NY 2000). *Sporty's Farm, LLC v. Sportman's Market, Inc.*, 202 F.3d 489, 493 (2d Cir. 2000) (cybersquatting defined as "prevent[ing] use of the domain name by the mark owners, who might infrequently have been willing to pay 'ransom' in order to get 'their names' back.").

of any mark in a site accessible under the domain name. Saadat-Nejad has made clear his intent to divert clients from Solomon Ward's on-line locations to sites accessible under the domain names that he has registered with the intent to tarnish or disparage Solomon Ward.

He has created a likelihood of confusion about the source, sponsorship, affiliation or endorsement of his sites. Saadat-Nejad has demanded half a million dollars—through a lawyer purportedly representing him—to stop using the pacificlawcenters.com domain name and other Pacific Law Center domain names.

The Solomon Ward marks are distinctive and famous in that they are widely recognized by the general consuming public in San Diego, in California and across the United States as a designation of the services of Solomon Ward. Saadat-Nejad's registration of multiple domain names which he knows are identical or confusingly similar to the marks of Solomon Ward— marks that are distinctive and famous.

Solomon Ward has established **eight** of the nine factors that 15 U.S.C. § 1125(d) (1)(B) and 15 U.S.C. § 1125(c)(1) suggests a court might consider in determining whether there is actionable cybersquatting. Indeed, the only factor that Solomon Ward has not addressed is whether Saadat-Nejad provided material and misleading false contact information when he applied for the registration of the domain names. He has, however, a pattern of prior conduct, first in his attack on Pacific Law Center and, subsequently, his attack on Solomon Ward.

**Legal Standard for Permanent Injunction.**

The Supreme Court has identified the requirements for granting permanent injunctive relief:

> According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.[9]

---

[9] *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). *See also American-Arab Anti-Discrimination Committee v. Reno*, 70 F.3d 1045, 1066-67 (9th Cir. 1995) ("The requirements for the issuance of a permanent

-7-  07-CV-00460 LAB (POR)
SOLOMON WARD'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1         The standards for permanent injunction and preliminary injunction are essentially the same with the exception that in order for a permanent injunction to issue, plaintiff must ultimately show actual success on the merits, instead of probably success on the merits.[10]

        Saadat-Nejad has no right to misappropriate domain names already registered to Solomon Ward or to misappropriate domain names so confusingly similar to the names it uses.

**No Commercial Use Requirement.**

        Solomon Ward does not have has to show any commercial interference with its law practices to prevail under the Anti-Cybersquatting Act.

        In a case almost directly in point,[11] the Ninth Circuit has held that the Anti-Cybersquatting Act does not contain a commercial use requirement.[12] The Christensen law firm sued Chameleon because, Chameleon had shifted the registration of the Christenson law firm's domain names to itself to gain leverage in a payment dispute. The district court held:

> An individual may be held liable under the ACPA for cybersquatting if the person (1) registers, traffics in, or uses a domain name identical or confusingly similar to a distinctive mark, and (2) has a bad faith intent to profit from use of the mark as a domain name.[13]

        The court noted that many of the decisions under ACPA refer to "an extortionate offer to sell" as the hallmark of a bad faith intent to profit and found that Chameleon's "extortionate offer" to transfer the domain names back to resolve the fee dispute created a fact issue concerning its bad faith intent to profit. That intent may be shown by an offer to transfer a domain name to obtain a benefit in commercial dispute negotiation.

        The district court also found, as a matter of law, that the transfer of the domain names constituted "registration" of those domain names under the ACPA.

---

injunction are the likelihood of substantial and immediate irreparable injury and the inadequacy of remedies at law.") See *Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1042 (9th Cir. 1999).

[10] *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987) (emphasis added); see also *Walsh v. City and County of Honolulu*, 460 F. Supp. 2d 1207. 1211 (D. Hawaii 2006).

[11] *Bosley Medical Institute, Inc. v. Kremer*, 403 F.3d 672, 608-81 (9th Cir. 2005); *The Christensen Firm v. Chameleon Data Corp.*, 2006 US. Dist. LEXIS 79710 (W.D. Wash. 2006). See also *Daimler Chrysler v. The Net Inc.*, 388 F.3d 201 (6th Cir. 2004); *Ford Motor Company v. Catalanatte*, 342 F.3d 543 (6th Cir. 2003).

[12] *Id.* at 680-681.

[13] *The Christensen Firm, supra*, 2006 U.S. Dist. LEXIS *8.

Bosley Medical provided surgical hair transplants and owns, among others, the registered trademark Bosley Medical. Kramer, a dissatisfied former patient, purchased the domain name bosleymedical.com. Then, five days later, Kramer delivered a two page letter that read:

> Let me know if you want to discuss this. Once it is spread over the internet it will have a snowball effect and be too late to stop. M. Kramer [phone number]. P.S. I always follow through on my promises.

Reversing the district court's grant of summary judgment in Kramer's favor the Ninth Circuit held that 15 U.S.C. § 1125(d) does not require plaintiff to show that the defendant has engaged in **any** commercial use. Rather, all that the trademark owner asserting an anti-cybersquatting claim must establish is (1) a valid trademark entitled to protection; (2) that its mark is distinct and famous; (3) the defendant's domain name is identical or confusingly similar to, or in the case of famous marks, dilutive of, the owner's mark; and (4) the defendant used, registered or trafficked in the domain name; (5) with a bad faith intent to profit.[14]

**This Court's Prior Findings.**

As this Court has already twice found, Solomon Ward has made a very strong showing of each elements. It has also demonstrated irreparable harm.

**The Anti-Cybersquatting Act Provides For Permanent Injunctive Relief.**

Injunctive relief is the remedy of choice for cybersquatting as well as trademark and unfair competition violation precisely because there is no adequate remedy at law for the injury caused by a defendant's continuing infringement.[15] Other district courts within the Ninth Circuit have entered similar permanent injunctions.[16]

At the July 12, 2007 contempt hearing, the Court found, *inter alia* that its preliminary injunction was clear on its face and that Pacific Law Center and Solomon Ward had produced

---

[14] *Bosley Medical Institute, supra,* 403 F.3d at 681.
[15] *Bellagio v. Denhammer, et al.,* 2001 U.S. LEXIS 24764, *15 (D. Nev. 2001).
[16] *See, for example, E.&J. Gallo Winery v. Spider Webs, Ltd., et al.,* 286 F.3d 270 (5th Cir. 2002); *Flow Control Industries, Inc. v. Amhi, Inc.,* 278 F.Supp.2d 1193 (W.D. Wash. 2003); *Seattle Laptop Incorporated v. A-1 Best Computer, Inc.,* 2006 U.S. Dist. LEXIS 13013 (W.D. Wash. 2006); *Qwest Communications International v. Sonny Corporation,* 2006 U.S. Dist. LEXIS 87007 (W.D. Wash. 2006); see also *Daimler Chrysler v. The Net Inc., et al.* 388 F.3d 2001 (6th Cir. 2004); *Phillip Morris USA, Inc. v. Marlborough Express, Tobacco Traders and Trust, et al.,* 2005 U.S. Dist. LEXIS 4359 (E.D. NY 2005).

**clear and convincing evidence** that Saadat-Nejad had persisted in registering/trafficking internet website names and terms since the entry of the preliminary injunction that violate that preliminary injunction.

Accordingly, the Court found Saadat-Nejad in contempt and had him jailed for civil contempt as a coercive measure to force him to abandon his continuing and future plan and violations of the preliminary injunction. The Court ordered Saadat-Nejad taken into custody until the July 25 hearing.

At the July 25 hearing, again after extended colloquy, Saadat-Nejad said that he would obey the Court's preliminary injunction order. Accordingly, the Court released him from custody and ordered him to obey that injunction. All Court's prior findings, including the need for incarceration for civil contempt, underscore the need for a permanent injunction in this case. Pacific Law Center and Solomon Ward have established its entitlement to such injunctive relief.

## SAADAT-NEJAD'S Conduct Violates Other Lanham Act Provisions.

### Trade Name Infringement.

Saadat-Nejad's use of the internet domain name and site "solomonwardlawfirm.com" Saadat-Nejad's use of the internet domain name and site "solomonwardlawfirm.com" constitutes an unlawful, willful, fraudulent and malicious interference with Solomon Ward's service marks and trade names.

Saadat-Nejad's wrongful use of the confusingly similar internet domain name and internet site "solomonwardlawfirm.com" has already caused, and will continue to cause, Solomon Ward irreparable injury by misleading, confusing and misdirecting their clients, potential clients and the general public, intercepting potential "hits" on Solomon Ward's internet sites and luring them to Saadat-Nejad's internet sites at "solomonwardlawfirm.com" and "us hostage.com."

### Trade Name Infringement/Dilution.

Saadat-Nejad's registration of the internet domain name and operation of the internet site "solomonwardlawfirm.com" for his own purposes also constitutes a statutory infringement and dilution of Pacific Law Center and Solomon Ward's service marks and trade names and acts of unfair competition.

Solomon Ward's service marks are distinct and famous marks. The Solomon Ward marks are inherently strong and distinctive, have long been used in connection with services with which they appear, have long been the subject of substantial advertising and promotion, have been used and advertised throughout the United States, are widely recognized by consumers and those in the legal profession. Saadat-Nejad committed these acts **after** Solomon Ward's service marks became famous.

Saadat-Nejad's acts have lessened the capacity of Solomon Ward's famous marks to identify and distinguish Solomon Ward's services. Saadat-Nejad's acts have blurred the unique association which had existed between Solomon Ward's service marks and the services it offers, under those service marks.

**Trademark Infringement.**

Saadat-Nejad's use of Solomon Ward's names and marks is without its permission or authority and had caused confusion among members of the public. Saadat-Nejad committed these acts of service mark infringement with full knowledge and disregard for Solomon Ward's rights and with the intent to cause confusion and to deceive.

**False Designation of Origin.**

Saadat-Nejad's acts also violate 15 U.S.C. §1125(a) in that he has used a false designation of origin, a false or misleading description and representation of fact which is likely to cause confusion, and to cause mistake, and to deceive with respect to the affiliation, connection or association of Saadat-Nejad with Solomon Ward and with respect to the origin, sponsorship, association, and approval of Saadat-Nejad's conduct by Solomon Ward.

Solomon Ward's service marks are distinct and famous marks. Solomon Ward's marks are inherently strong and distinctive, have long been used in connection with services with which it appear, have long been the subject of substantial advertising and promotion, have been used and advertised throughout the United States and are widely recognized by consumers and those in the legal profession. Saadat-Nejad committed his misappropriation **after** Solomon Ward's service marks became famous.

///

Saadat-Nejad has made use of marks that Solomon Ward owns in connection with services in interstate commerce.

Saadat-Nejad's conduct violates the Lanham Act §43(c) in that he has caused dilution of quality of Solomon Ward's service marks to Solomon Ward's irreparable injury and damage.

Saadat-Nejad's acts have lessened the capacity of Solomon Ward's famous marks to identify and distinguish Solomon Ward's services. Saadat-Nejad's acts have blurred the unique association that had existed between Solomon Ward's service marks and the services it offers, markets and distributes under those service marks.

Saadat-Nejad's acts also violate 15 U.S.C. §1125(a) in that Saadat-Nejad has used a false designation of origin, a false or misleading description and representation of fact which has caused confusion and is likely to cause confusion, mistake, and to deceive with respect to the affiliation, connection or association of Saadat-Nejad with Solomon Ward and with respect to the origin, sponsorship, association, and approval of Saadat-Nejad's conduct by Solomon Ward.

The Lanham Act provides for injunctive relief to prevent future violation of Solomon Ward's service mark and trade name rights in addition to Saadat-Nejad's violations of the Anti-Cybersquatting Act.

### SAADAT-NEJAD'S Conduct Also Violates California Law.

#### California Unfair Trade Practice Act.

Saadat-Nejad's use of the internet domain name and site "solomonwardlawfirm.com" constitutes an unfair trade practice, that also entitles Solomon Ward to injunctive relief under the provisions of California Business & Professions Code §§ 17200, *et seq*.

#### Unauthorized Use of Name.

Saadat-Nejad's conduct also constitutes the unauthorized use of Herbert Solomon and William Ward's names under the laws of the California Civil Code §3344.

Injunctive relief is not only the remedy of choice for violations of the Lanham Act but also for violations of California Unfair Trade Practices Act and Civil Code § 3344.

///

///

1 **Relief Requested.**

2 Solomon Ward stands squarely among those whom Congress intended to protect by the
3 Anti-Cybersquatting and Consumer Protection Act, the other Lanham Act provisions and whom
4 California Legislature also intended to protect. Saadat-Nejad has no right to misappropriate
5 Solomon Ward's service marks, its trade names and its domain names. Solomon Ward is entitled
6 to a permanent injunction in the same form as this Court's preliminary injunction.

7 DATED: May 27, 2008     SOLOMON WARD SEIDENWURM & SMITH, LLP

9 By: _____
    EDWARD J. MCINTYRE
10    Attorneys for SOLOMON WARD
    SEIDENWURM

# CERTIFICATE OF SERVICE

I caused the:

(1) **SOLOMON WARD'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW;**

(2) **SOLOMON WARD'S WITNESS LIST; AND**

(3) **SOLOMON WARD'S EXHIBIT LIST** to be served in the following manner:

Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

**Electronic Mail Notice List**

NONE.

I manually served the following:

Shahrokh Saadat-Nejad
3713 Mt. Ashmun Place
San Diego, CA 92111
**VIA FEDERAL EXPRESS**

/s/ Edward J. McIntyre
EDWARD J. MCINTYRE