# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| PACIFIC LAW CENTER, a Professional Law Corporation; and SOLOMON WARD SEIDENWURM & SMITH, LLP,<br><br>                                          Plaintiffs,<br>vs.<br><br>SHAHROKH SAADAT-NEJAD, an individual,<br><br>                                          Defendant. | CASE NO. 07cv460 JLS (POR)<br><br>**ORDER: DIRECTING PARTIES TO SHOW CAUSE AS TO WHY SUMMARY JUDGMENT SHOULD NOT BE ENTERED** |
|---|---|

On June 12, 2008, the Court held a pre-trial conference in this matter. At the conference, Defendant confirmed his request to move to dismiss this action. [See Doc. No. 71 at 6 (requesting a "motion for dismissal hearing").] In addition, after the Court highlighted its concerns regarding Plaintiffs' case, Plaintiffs agreed that it would be efficient to brief those concerns before proceeding to trial. Accordingly, the Court now finds it appropriate to direct the parties to show cause as to why summary judgment should not be entered.[1] Plaintiffs **SHALL FILE** their brief no later than July 25, 2008. Defendant will then have an opportunity to respond and thereby provide the Court with his justification for dismissal. Defendant **SHALL FILE** his response no later than August 15, 2008. If Plaintiffs choose to file a reply, they **SHALL FILE** no later than August 27, 2008. The Court will

---

[1] Amex Assur. Co. v. Caripides, 179 F. Supp. 2d 309, 315 (S.D.N.Y. 2002) (ordering the parties to show cause as to why summary judgment should not be entered).

- 1 -                                                                   [07cv460]

then provide notice if it desires further briefing from Defendant after that point. In accordance with the local rules, Plaintiffs and Defendant shall limit their opening briefs to twenty-five (25) pages. Plaintiffs' reply shall be limited to ten (10) pages. These page limits do not include any attached exhibits or declarations.

Essentially, the Court is requesting cross-motions for summary judgment from the parties. By proceeding in this fashion: (1) Defendant will have an opportunity to state his legal justification for dismissal; (2) Plaintiffs will able to argue why the Court should enter judgment in their favor; and (3) both parties will have an opportunity to address the Court's concerns. Specifically, the Court would like both parties to address three issues.

**I.      Legality of "Gripe Sites" Having Domain Names Similar to the Marks at Issue**

First, the Court finds that there is substantial legal authority suggesting that Defendant may create "gripe sites," even if the domain names of those sites include the words "Solomon Ward" and "Pacific Law Center." For example, various courts have refused to find that gripe sites located at domain names nearly identical to the marks at issue violated the Anti-Cybersquatting statute ("ACPA"). For example, in TMI v. Maxwell, 368 F.3d 433, 434-35 (5th Cir. 2004), a customer of homebuilder TMI registered the domain name "www.trendmaker.com." This domain name differed by only one letter from TMI's mark, TrendMaker Homes, and its domain name, "www.trendmakerhomes.com." The Fifth Circuit reversed the district court's finding that defendant violated the ACPA and reasoned that the site was noncommercial and designed only "to inform potential customers about a negative experience with the company." Id. at 438-39.

In Lucas Nursery & Landscaping, Inc. v. Grosse, 359 F.3d 806, 810 (6th Cir. 2004), the defendant registered the domain name "www.lucasnursery.com" to post her dissatisfaction with the company's landscaping services. The Sixth Circuit found that her site did not constitute what Congress intended to proscribe and explained:

> One of the ACPA's main objectives is the protection of consumers from slick internet peddlers who trade on the names and reputations of established brands. The practice of informing fellow consumers of one's experience with a particular service provider is surely not inconsistent with this ideal.

Id. at 811.

Further, in Lamparello v. Falwell, 420 F.3d 309 (4th Cir. 2005), the Fourth Circuit cited to TMI v. Maxwell and Lucas Nursery, in finding for the defendant who maintained a website, "www.fallwell.com," nearly identical to Reverend Falwell's mark. In rejecting the Lanham Act claim the Court reasoned, in part:

> Reverend Falwell's mark is distinctive, and the domain name of Lamparello's website, www.fallwell.com, closely resembles it. But, although Lamparello and Reverend Falwell employ similar marks online, Lamparello's website looks nothing like Reverend Falwell's; indeed, Lamparello has made no attempt to imitate Reverend Falwell's website. Moreover, Reverend Falwell does not even argue that Lamparello's website constitutes advertising or a facility for business, let alone a facility or advertising similar to that of Reverend Falwell. Furthermore, Lamparello clearly created his website intending only to provide a forum to criticize ideas, not to steal customers.
>
> Most importantly, Reverend Falwell and Lamparello do not offer similar goods or services. Rather they offer opposing ideas and commentary. Reverend Falwell's mark identifies his spiritual and political views; the website at www.fallwell.com criticizes those very views. After even a quick glance at the content of the website at www.fallwell.com, no one seeking Reverend Falwell's guidance would be misled by the domain name–www.fallwell.com–into believing Reverend Falwell authorized the content of that website. No one would believe that Reverend Falwell sponsored a site criticizing himself, his positions, and his interpretations of the Bible.

Id. at 315. In rejecting the ACPA claim, the Court concluded:

> After close examination of the undisputed facts involved in this case, we can only conclude that Reverend Falwell cannot demonstrate that Lamparello 'had a bad faith intent to profit from using the [www.fallwell.com] domain name.' [Citation.] Lamparello clearly employed www.fallwell.com simply to criticize Reverend Falwell's views. Factor IV of the ACPA, 15 U.S.C. § 1125(d)(1)(B)(i)(IV), counsels against finding a bad faith intent to profit in such circumstances because 'use of a domain name for purposes of . . . comment, [and] criticism,' H.R. Rep. No. 106-412, 1999 WL 970519, at *11, constitutes a 'bona fide noncommercial or fair use' under the statute, 15 U.S.C. § 1125(d)(1)(B)(i)(IV) . . . We agree with the Fifth and Sixth Circuits that, given these circumstances, the use of a mark in a domain name for a gripe site criticizing the markholder does not constitute cybersquatting.

Id. at 320-22.[2] These decisions suggest that Plaintiffs' claims could be dismissed as a matter of law. Therefore the parties should carefully review them and address them in their briefs.

---

[2] See also Best Western Int'l, Inc. v. Doe, 2006 U.S. Dist. LEXIS 77942 (D. Ariz. Oct. 24, 2006).

## II. Bad Faith Intent to Profit

The foregoing cases and others indicate that similar gripe sites do not violate the Lanham Act or the ACPA. However, case law does suggest that it would be impermissible to create such sites for the sole purpose to extort money. For example, in Bosley Med. Inst., Inc. v. Kremer, 403 F.3d 672 (9th Cir. 2005), defendant created a website "bosleymedical.com" to discuss his dissatisfaction with hair restoration services that he received from Bosley Medical Institute. Id. at 674. The Ninth Circuit concluded:

> Like the district court, we agree with Kremer. We hold today that the noncommercial use of a trademark as the domain name of a website—the subject of which is consumer commentary about the products and services represented by the mark–does not constitute infringement under the Lanham Act.
>
> Bosley Medical's cybersquatting claim is another matter. The issue under the Anticybersquatting Consumer Protection Act was whether Kremer had a 'bad faith intent to profit' from the use of the trademark in his domain name, such as by making an extortionate offer to sell the BosleyMedical.com site to Bosley. Because discovery regarding that claim had not been completed, and the issue itself was not within the scope of the summary judgment motions, the district court erred in granting summary judgment to Kremer as to cybersquatting.

See also Christensen Firm v. Chameleon Data Corp., 2006 U.S. Dist. LEXIS 79710, *9-10 (W.D. Wash. Nov. 1, 2006) (citing Bosley and stating "Many reference an extortionate offer to sell as the hallmark of a bad faith intent to profit."); Lucas Nursery & Landscaping, 359 F.3d at 810 ("The paradigmatic harm that the ACPA was enacted to eradicate–the practice of cybersquatters registering several hundred domain names in an effort to sell them to the legitimate owners of the mark–is simply not present in any of [defendant's] actions.").

Here, after reviewing the record before the Court, it appears that Defendant was not trying to extort money from Plaintiffs. Ms. Prevost's February 1, 2007 letter demands $500,000 in exchange for domain names previously in Defendant's possession. However, Defendant provided the Court with a series of emails that infer Ms. Prevost was encouraging Defendant to make a demand for money and that Defendant was reluctant. The Court also notes that Defendant apparently terminated his relationship with Ms. Prevost before February 1st.[3] Further, the Court recognizes that Defendant, in

---

[3] See Interstellar Starship Servs. v. Epix, Inc., 304 F.3d 936 (9th Cir. 2002) (finding no "bad faith" under the ACPA, in part, because the *attorney* offered to sell the domain name in the context of settlement negotiations when defendant was not present).

his court filings, has continued to stress that he does not seek money from Plaintiffs and never has. [See Doc. No. 58, Defendant's Opposition to Plaintiffs' Motion for a Permanent Injunction, 20-29, Ex 1 and 2; Doc. No. 64, Defendant's Motion for a Writ of Mandamus, 5-6.] As a result, the Court would like the parties to address this "bad faith intent to profit" issue.[4]

The Court reiterates that it will treat the requested briefs as cross-motions for summary judgment. This means that after reviewing the briefs, the Court could end this litigation in favor of Plaintiffs or in favor of Defendant without proceeding to a trial. Therefore, the parties should attach with their briefs any evidence that: (1) pertains to this "bad faith intent to profit" issue, or (2) that supports any of the arguments they wish to present.[5]

---

[4] The Court is aware of Mr. Slattery's declaration stating that Defendant reiterated Ms. Prevost's demand to him. It appears that this alleged statement occurred during a settlement conference. [See Slattery Decl. ¶ 10, Doc. No. 3.; McIntyre Decl. ¶ 12., Doc. No. 55.]

[5] "Sua sponte summary judgment is only appropriate if the losing party has reasonable notice that the sufficiency of his or her claim will be in issue. Reasonable notice implies adequate time to develop the facts on which the litigant will depend to oppose summary judgment." Oluwa v. Gomez, 133 F.3d 1237, 1239 (9th Cir. 1998) (internal citation and quotation omitted). See also Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986) (discussing summary judgment standard and stating "Our conclusion is bolstered by the fact that district courts are widely acknowledged to possess the power to enter summary judgments sua sponte, so long as the losing party was on notice that she had to come forward with all of her evidence.").

### III. Remedy

The Court would also like the parties to address Plaintiffs' requested remedy in the context of this "bad faith intent to profit." If Defendant did possess such a bad faith intent to profit at one time, but does not now, may the Court still *permanently* enjoin him from creating such gripe sites that incorporate the words "Solomon Ward" and "Pacific Law Center?" The parties should also address this question in their briefs.

Thus, if the parties cannot resolve this dispute prior to July 25, 2008, the parties shall submit their briefs in accordance with this order. Judge Burns' preliminary injunction order remains in effect until the Court rules otherwise.

IT IS SO ORDERED.

DATED: June 16, 2008

Honorable Janis L. Sammartino
United States District Judge