1  Shahrokh Saadat-Nejad
Mail: 3713 Mount Ashmun Place
2  San Diego, California 92111
Telephone: (646)225-8213
3  E-Mail: C9729972@yahoo.com



# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

PACIFIC LAW CENTER
 and
SOLOMON WARD
SEIDENWURM & SMITH

    Plaintiffs,

    vs.

SHAHROKH SAADAT-NEJAD

    Defendant.

CASE No. 07cv0460-LAB (POR)
JLS

**DECLARATION OF DEFENDANT
SHAHROKH SAADAT-NEJAD**

On March 13, 2007 at the time of 12:12 pm (PST) Pacific Law Center and Solomon Ward

Seidenwurm & Smith filed this civil lawsuit, civil case number stated above.

As stated in my March 13, 2008 filing in this court (US District) Docket number 58, the

plaintiffs Pacific Law Center and Solomon Ward Seidenwurm & Smith at the office of Solomon

Ward Seidenwurm & Smith, attempted to blackmail defendant into committing  at minimum

terrorist act(s) and or suicide. The plaintiffs (Mr. Edward J Mcintyre) handed defendant an

alleged true copy of a court transcript of a Superior Court hearing held on March 9, 2007, civil

case number GIC878352 filed on January 12, 2007 (Pacific Law Center vs. Shahrokh Saadat-Nejad, ushostage.com, pacificlawcenters.com). A copy of the exact court transcript received by defendant from Mr. Edward J. Mcintyre is attached to this declaration labeled as EXHIBIT 1.

**In EXHIBIT 1 – Page 7, line 24 - to - EXHIBIT 1 – Page 8, line 3** the Plaintiffs give the impression to the Superior Court that the defendant is angry at the government for not allowing child pornography on the internet.

( Mr. Edward J. Mcintyre from Solomon Ward Seidenwurm and Smith and the the legal counsel for Pacific Law Center addresses the Superior Court - **EXHIBIT 1 – Page 7, line 24 - to – EXHIBIT 1 – Page 8, line 3:**

> "NOW AS HE SAID IN HIS DECLARATION, HE HAS TWO OTHER WEB SITES - - I'LL SPELL
>
> THEM FOR THE REPORTER; IT'S "PHAWKU" AND PHAWKU2", P-H-A-W-K-U AND THEN
>
> THE SAME WITH A "2" AFTER IT - - WHICH HE'S USED, ON WHICH HE HAS PUBLICLY
>
> EXPRESSED HIMSELF ON ANY NUMBER OF ISSUES, INCLUDING METHAMPHETAMINE,
>
> INCLUDING CHILD PORNOGRAPHY, INCLUDING CHILD BONDAGE, AND MANY,
>
> MANY OTHERS.  HE HAS THE RIGHT TO DO SO.  HE IS UPSET ABOUT THE
>
> FBI AND THE EXTENT OF ITS POWER."

Mr. Edward J. Mcintyre and his associates along with Pacific Law Center told defendant that they will use the transcript to ruin defendant if defendant does not follow the plaintiffs orders. Suicide.

As explained in Defendants previous filings in this court (US District), that there is a website called http://www.archive.org which is a nonprofit organisation established to preserve Web sites by taking regular "snapshots" of the Web sites. Archive.org took a snapshot of defendants

websites phawku.com and phawku2.com.

Attached to this declaration labeled as EXHIBIT 2 is a copy of phawku.com from http://web.archive.org/web/20051218022353/http://www.phawku.com. It is a total of 4 pages.

Attached to this declaration labeled as EXHIBIT 3 is a copy of phawku2.com from http://web.archive.org/web/20060716121901/http://phawku2.com. It is a total of 8 pages.

Defendants website phawku.com (EXHIBIT 2) is referring to another website owned and operated by defendant called ushostage.com which was offering a reward of $25,000 (USD) For information leading to the capture of a terrorist by the name of Mr. Masoud Rajavi also spelled Massoud Rajavi, whom is the leader of but not limited to the terrorist groups Mujahedin-e-Khalq, Mojahedin-e-Khalq (MKO), The National Liberation Army of Iran (NLA), The National Council of Resistance of Iran (NCRI), Strategic Policy Consulting, Inc. (SPC) with its terrorist accomplice a Mr. Alireza Jafarzadeh as the president of Strategic Policy Consulting, Inc. He is also a FOX News Channel Foreign Affairs Analyst.

Mr. Edward J Mcintyre and his business partner Mr. William Nolan Kammer used to be partners of a San Diego based law firm called Gray Cary Law Firm, now owned by a law firm called DLA Piper Law Firm. Their office in San Diego is five floors above the office of Mr. Edward J. Mcintyre and Mr. William.Nolan Kammer from Solomon Ward Seidenwurm and Smith law firm. DLA Piper law firm have been involved in political lobbying at minimum inside the United States for terrorists Mr. Masoud Rajavi and Mr. Alireza Jafarzadeh before and after July 25, 2006.

Defendants website phawku2.com (EXHIBIT 3) refers to the dangers of Methmphetamine also known as meth, speed, crank, croak, crypto, crystal, chalk, glass, ice, tweak. It also refers to

dealers and pimps.

Attached to this declaration labeled as EXHIBIT 4, is a copy of the transcript of the US District Court hearing held on June 12, 2008. It is a total of 40 pages.

Attached to this declaration labeled as EXHIBIT 5, is a copy of a May 31, 2007 filing in the Superior Court of California by Mr. Edward J Mcintyre (Declaration of Edward J Mcintyre in support of plaintiff's request for attorney's fees). It is a total of 8 pages.

Attached to this declaration labeled as EXHIBIT 6, is a copy of a October 5, 2007 filing in the Superior Court of California by Mr. Edward J Mcintyre (Supplemental declaration of Edward J Mcintyre in support of plaintiff's request for attorney's fees). It is a total of 12 pages. Please see at minimum EXHIBIT 6, Page 4 and EXHIBIT 6, Page 9.

Attached to this declaration labeled as EXHIBIT 7, are copies of e-mail's to and from godaddy.com, Phillips and Associates law firm, Pacific Law Center, Solomon Ward Seidenwurm & Smith law firm. It is a total of 6 pages.

I declare under penalty of perjury under the laws of the State of California and the United States that the facts in this declaration are true and correct and that I executed this declaration on July, 25, 2008 in San Diego, California.

Shahrokh Saadat-Nejad
Defendant

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN DIEGO

3   DEPARTMENT 75                    HON. RICHARD E.L. STRAUSS, JUDGE

4

5   ―――――――――――――――――――――
                                              )
6   PACIFIC LAW CENTER,                       )
    A PROFESSIONAL CORPORATION,               )
7                                             )
              PLAINTIFF,                      )
8                                             )
         VS.                                  )   CASE NO. GIC 878352
9                                             )
    SHAROKH SAADATNEJAD,                      )
10  INDIVIDUALLY AND DOING BUSINESS AS        )
    PACIFICLAWCENTERS.COM AND                 )
11  USHOSTAGE.COM; AND DOES 1 THROUGH 50,     )
    INCLUSIVE,                                )
12                                            )
              DEFENDANTS.                     )
13  ―――――――――――――――――――――)

14

15

16            REPORTER'S TRANSCRIPT OF PROCEEDINGS

17                    MARCH 9, 2006

18

19

20  APPEARANCES:

         FOR THE PLAINTIFF:       EDWARD J. MCINTYRE, ESQ.
21                                SOLOMON, WARD, SEIDENWURM & SMITH
                                  401 B STREET, SUITE 1200
22                                SAN DIEGO, CALIFORNIA 92101

23

         FOR THE DEFENDANTS:      IN PRO PER
24

25

26
    REPORTED BY:                  JAMES PARTRIDGE, CSR NO. 6226
27                                OFFICIAL REPORTER
                                  330 WEST BROADWAY
28                                SAN DIEGO, CALIFORNIA 92101

*EXHIBIT 1*   TOTAL 24 PAGES

1    1        SAN DIEGO, CALIFORNIA, FRIDAY, MARCH 9, 2007, 2:53 P.M.

     2                            --oOo--

     3        THE COURT:  GOOD AFTERNOON.

     4        MR. MCINTYRE:  GOOD AFTERNOON, YOUR HONOR.

     5        MR. SAADAT-NEJAD:  GOOD AFTERNOON.

     6        THE COURT:  ALL RIGHT.  LET'S HAVE EVERYBODY'S

     7    APPEARARANCE FOR THE RECORD, PLEASE.

     8        MR. MCINTYRE:  THANK YOU, YOUR HONOR.  GOOD AFTERNOON.

     9    EDWARD MCINTYRE, PRIVILEGED TO REPRESENT PACIFIC LAW CENTER.

    10        MR. SAADAT-NEJAD:  GOODAFTERNOON.  SHAHROKH SAADAT-NEJAD.

    11    I AM THE DEFENDANT FOR THIS CASE.  I KNOW THAT IN THE ENGLISH

    12    LANGUAGE THERE IS NO (PRONOUNCIATION) SOUND, SO A LOT OF PEOPLE

    13    JUST CALL ME SHAHROKH.

    14        THE COURT:  THANK YOU.

    15            MR. MCINTYRE FILED A SUPPLEMENTAL MEMORANDUM IN

    16    SUPPORT OF THE MOTION FOR PRELIMINARY INJUNCTION, THEN ALSO A

    17    SUPPLEMENTAL DECLARATION.  I CAN CALL YOU SHAHROKH?

    18        MR. SAADAT-NEJAD:  YES, YOUR HONOR.

    19        THE COURT:  SHAHROKH FILED A DECLARATION FOR CASE

    20    DISMISSAL.  I'VE READ ALL THOSE THINGS.

    21        MR. MCINTYRE:  THANK YOU, YOUR HONOR.

    22        THE COURT:  HERE IS THE QUANDARY THAT I HAVE,

    23    MR. MCINTYRE.  I'M NOT SURE THAT IT'S SUFFICIENT THAT A SIMILAR

    24    NAME IS THE ONLY THING HERE.  I'M NOT SURE THAT AMOUNTS TO THE

    25    TRADEMARK, TRADE NAME OR SERVICEMARK IN PRINCIPLE.  I WAS

    26    LOOKING AT THE CASE OF BROOKFIELD COMMUNICATIONS V. WEST COAST

    27    ENTERTAINMENT CORPORATION.  I DON'T KNOW IF YOU'RE FAMILIAR WITH

    28    THIS ONE OR NOT.  IT'S JUST ONE THAT WE HAPPENED TO FIND.  IT'S

1   A NINTH CIRCUIT COURT OF APPEALS CASE DATED MARCH 10TH, 1999.

2   I'LL GIVE YOU THE CITE IF YOU'D LIKE.  IT'S 174 FED.3D 1036.

3           NOW, THERE IS A LOT OF DISCUSSION IN HEAR ABOUT

4   LANHAM ACT, TRADEMARKS AND ALL OF THAT.  THEY TALK ABOUT

5   ESTABLISHING PROTECTION BASED ON USE OF REGISTRY AND ALL THAT.

6   I UNDERSTAND.  I DON'T THINK THAT'S AN ISSUE IN THE CASE HERE.

7   WHAT'S IN ISSUE -- BECAUSE YOU'RE CORRECT THAT FIRST AMENDMENT

8   RIGHTS CAN BE, IN A LIMITED WAY, REDUCED OR INFRINGED UPON

9   PURSUANT TO A STATUTORY SCHEME THAT WAS PUT IN PLACE TO UPHOLD

10  AN IMPORTANT PUBLIC PURPOSE.  AND THAT INCLUDES ISSUING

11  INJUNCTIONS FOR ALL THE VARIOUS THINGS THAT YOU HAVE SET OUT IN

12  YOUR BRIEF, INCLUDING TRADEMARK INFRINGEMENT.  BUT TRADEMARK

13  INFRINGEMENT IS BASED UPON A NUMBER OF FACTORS, AND THEY TALK

14  ABOUT EIGHT FACTORS TO SEE IF THE TRADEMARK EXISTS -- TRADEMARK,

15  SERVICEMARK, TRADE NAME, ALL THE SAME IN THAT REGARD -- IN TERMS

16  OF PROTECTABILITY.

17       MR. MCINTYRE:  I THINK THAT'S FAIR, YOUR HONOR.

18       THE COURT:  OKAY.  I'M NOT SAYING THIS IS THE ONLY CASE

19  ON THIS BY ANY MEANS.  AND I HAVEN'T DONE A WHOLE LOT OF

20  RESEARCH ON IT.  BUT THIS ONE GOES INTO A LOT OF DETAIL ABOUT

21  THESE EIGHT FACTORS.  IT MUST ALSO BE SHOWN THAT THE PUBLIC IS

22  LIKELY TO BE SOMEHOW CONFUSED ABOUT THE SOURCE OR SPONSORSHIP

23  OF, IN THIS CASE, A WEB SITE WITH A VERY SIMILAR NAME, AND

24  SOMEHOW TO ASSOCIATE THE SITE WITH, IN THIS CASE, THE DEFENDANT.

25           THEN THEY SAY -- I'M READING FROM -- I'M NOT SURE

26  WHAT PAGE THIS IS.  IN ANY EVENT, IT'S FROM THAT OPINION.  IT

27  SAYS, "THE CORE ELEMENT OF TRADEMARK INFRINGEMENT IS THE

28  LIKELIHOOD OF CONFUSION, THAT IS, WHETHER THE SIMILARITY OF

1  MARKS IS LIKELY TO CONFUSE CUSTOMERS ABOUT THE SOURCE OF THE

2  PRODUCTS" OR SERVICES.  THEY TALK ABOUT AN EIGHT-FACTOR TEST IN

3  HERE.  IT SAYS, "THE SIMILARITY OF THE MARKS WILL ALWAYS BE AN

4  IMPORTANT FACTOR."  BY THE WAY, THERE'S OTHER DISCUSSION ABOUT

5  DOMAIN NAMES BEING COVERED.

6       MR. MCINTYRE:  THEY ARE.

7       THE COURT:  SO MARK OR DOMAIN IS THE SAME.  "THE

8  SIMILARITY OF MARKS WILL ALWAYS BE AN IMPORTANT FACTOR.  WHERE

9  THE TWO MARKS ARE ENTIRELY DISSIMILAR, THERE IS NO LIKELIHOOD OF

10 CONFUSION.  'PEPSI' DOES NOT INFRINGE COCA-COLA'S 'COKE.'

11 NOTHING FURTHER NEED BE SAID.  EVEN WHEN THERE IS PRECISE

12 IDENTITY OF A COMPLAINANT'S AND AN ALLEGED INFRINGER'S MARK,

13 THERE MAY BE NO CONSUMER CONFUSION - AND THUS NO TRADEMARK

14 INFRINGEMENT - IF THE ALLEGED INFRINGER IS IN A DIFFERENT

15 GEOGRAPHIC AREA OR IN A WHOLLY DIFFERENT INDUSTRY."

16      THEN TALKING ABOUT THAT FURTHER THEY SAY, "THE

17 SIMILARITY OF MARKS ALONE, AS WE HAVE EXPLAINED, DOES NOT

18 NECESSARILY LEAD TO CONSUMER CONFUSION.  ACCORDINGLY, WE MUST

19 PROCEED TO CONSIDER THE RELATEDNESS OF THE PRODUCTS AND SERVICES

20 OFFERED.  RELATED GOODS ARE GENERALLY MORE LIKELY THAN UNRELATED

21 GOODS TO CONFUSE THE PUBLIC AS TO THE PRODUCERS OF THE GOODS."

22      SKIPPING A LITTLE FURTHER DOWN, THEY SAY, "IF, ON

23 THE OTHER HAND, BROOKFIELD AND AND WEST COAST DID NOT COMPETE TO

24 ANY EXTENT WHATSOEVER, THE LIKELIHOOD OF CONFUSION WOULD

25 PROBABLY BE REMOTE."  THEN THEY GIVE AN EXAMPLE OF WHERE THE

26 COURT FOUND NO LIKELIHOOD OF CONFUSION WITHIN THE USE OF

27 "EPIX.COM" TO ADVERTISE THE ROCKY HORROR PICTURE SHOW AND THE

28 "EPIX," SPELLED THE SAME WAY, TRADEMARK REGISTERED FOR USE FOR

1  COMPUTER CIRCUIT BOARDS.  TWO TOTALLY DIFFERENT MARKETS,

2  DIFFERENT INDUSTRIES.  THEN THEY SAY, "AT THE LEAST, BROOKFIELD

3  WOULD BEAR THE HEAVY BURDEN OF DEMONSTRATING (THROUGH OTHER

4  RELEVANT FACTORS) THAT CONSUMERS WERE LIKELY TO BE CONFUSED AS

5  TO SOURCE OR AFFILIATION IN SUCH A CIRCUMSTANCE."  A LITTLE

6  LATER ON THEY SAY, "INSTEAD, THE FOCUS IS ON WHETHER THE

7  CONSUMING PUBLIC IS LIKELY SOMEHOW TO ASSOCIATE WEST COAST'S

8  PRODUCTS WITH BROOKFIELD."

9          . IT KIND OF GOES ON TO -- AND THERE'S MUCH MORE IN

10  HERE.  THEY TALK ABOUT THE UNDERLYING IMPORTANT PUBLIC PURPOSE

11  BEHIND THE TRADEMARK, TRADE NAME, SERVICEMARK PROTECTION ACTS --

12  WHICH CAN LEAD TO INJUNCTIONS -- IS THE CONFUSION OF THE PUBLIC

13  BETWEEN COMPETITORS.  AS WE TALKED ABOUT BEFORE, IN OTHER WORDS,

14  IF IN THIS CASE SHAHROKH WAS A LAWYER TRYING TO COMPETE WITH

15  PACIFIC LAW CENTER, AND USED THE SAME NAME, THEN YOU COULD SAY

16  THE PUBLIC IS CONFUSED ABOUT WHO IS OFFERING THE SERVICE, AND

17  THE PROTECTION OF THE TRADEMARK WOULD REQUIRE THE ISSUANCE OF

18  THE INJUNCTION.

19          BUT MY PROBLEM HERE -- AND I DON'T NEED TO MAKE A

20  DECISION NECESSARILY ON IT TODAY, IF YOU WANT TO GIVE ME SOME

21  MORE AUTHORITY ON THIS -- IS THAT SINCE HE IS NOT A COMPETITOR

22  AT ALL, AND HE IS NOT IN THE BUSINESS -- AND THIS CASE TALKS

23  ABOUT COMPETITORS IN THE SAME BUSINESS AND THAT SORT OF THING --

24  HOW DO WE GET -- I GUESS THE BASIC QUESTION IS:  IS THE MERE

25  FACT THAT A VERY SIMILAR -- AND IT IS SIMILAR -- DOMAIN NAME,

26  ALMOST IDENTICAL, IS BEING USED BY A TOTALLY NON-COMPETITOR, IS

27  THAT ENOUGH TO BRING ABOUT TRADEMARK INFRINGEMENT THAT WOULD

28  LEAD TO AN INJUNCTION?  THAT'S THE BOTTOM-LINE QUESTION.

1   JURISDICTION, OR ACROSS THE STREET, TO SHOW CONFUSION.  I CAN

2   SHOW LIKELIHOOD OF CONFUSION BY DOING AN EXPENSIVE SURVEY, OR I

3   CAN SHOW ACTUAL CONFUSION AMONG CONSUMERS.  WHAT WE HAVE, I

4   BELIEVE -- I'LL REFER THE COURT TO IT, BUT IN PARAGRAPHS 10

5   THROUGH 12 OF MR. SLATTERY'S ORIGINAL DECLARATION WE HAVE

6   INSTANCES OF ACTUAL CONFUSION WHERE CLIENTS OF PACIFIC LAW

7   CENTER HAVE BEEN MISDIRECTED TO "PACIFICLAWCENTERS.COM," HAVE

8   COMPLAINED ABOUT IT, OR HAVE EVEN SAID THEY WILL NOT GO TO

9   PACIFIC LAW CENTER, THE LAW FIRM, AS A RESULT OF THAT

10  MISDIRECTION.

11       THE COURT:  THE MISDIRECTION, OR WHAT THEY READ ON THE

12  WEB SITE?

13       MR. MCINTYRE:  WELL, YOU START WITH THE MISDIRECTION.

14  LET ME MAKE CLEAR -- AND I TRIED TO MAKE THIS VERY CLEAR WHEN I

15  HAD THE OPPORTUNITY TO TALK TO MR. SADATNEJAD YESTERDAY BY

16  TELEPHONE EXTENSIVELY, AND VERY, VERY BRIEFLY THIS MORNING.

17  MR. SAADAT-NEJAD HAS A FIRST AMENDMENT RIGHT TO COMPLAIN IN THE

18  PUBLIC FORUM ABOUT THINGS THAT HE DOES NOT LIKE.  AND I WILL

19  FIGHT TO THE DEATH FOR HIS RIGHT TO SAY THE SUBSTANCE OF IT.

20  WHAT WE ARE TALKING ABOUT IS THE MANNER IN WHICH HE IS SAYING

21  IT, NAMELY, BY USING A PROTECTED MARK.  IT IS THE MISDIRECTION

22  OF PEOPLE TO HIS WEB SITE, AT LEAST THE PACIFICLAWCENTERS.COM

23  WEB SITE, THAT IS THE NARROW ISSUE BEFORE THE COURT.

24       NOW, AS HE SAID IN HIS DECLARATION, HE HAS TWO

25  OTHER WEB SITES -- I'LL SPELL THEM FOR THE REPORTER; IT'S

26  "PHAWKU" AND "PHAWKU2," P-H-A-W-K-U AND THEN THE SAME WITH A "2"

27  AFTER IT -- WHICH HE'S USED, ON WHICH HE HAS PUBLICLY EXPRESSED

28  HIMSELF ON ANY NUMBER OF ISSUES, INCLUDING METHAMPHETAMINE,

EXHIBIT 1 - PAGE 7

1    INCLUDING CHILD PORNOGRAPHY, INCLUDING CHILD BONDAGE, AND MANY,

2    MANY OTHERS.  HE HAS THE RIGHT TO DO SO.  HE IS UPSET ABOUT THE

3    FBI AND THE EXTENT OF ITS POWER.  AFTER WE ALL READ OUR

4    NEWSPAPERS THIS MORNING, MAYBE WE ALL SHOULD BE A LITTLE BIT

5    UPSET.  HE HAS THE PERFECT RIGHT TO DO SO.

6              WHAT HE DOES NOT HAVE THE RIGHT TO DO, AND IT IS

7    THE ONLY THING WE'VE SOUGHT SO FAR, IS TO USE SUCH A CONFUSINGLY

8    SIMILAR -- AND THAT'S THE TRADEMARK TERM -- SUCH A CONFUSINGLY

9    SIMILAR WEB SITE THAT, BUT FOR ONE LETTER, DIRECTS PEOPLE TO HIM

10   AND TO HIS WEB SITE.  THAT'S THE ABUSE THAT WE SEEK TO ENJOIN.

11             THE COURT:  BUT IT HAS TO CONFUSE THE CONSUMER, IT SEEMS

12   TO ME; THAT THE CONSUMER WOULD THINK THAT THEY ARE GETTING A

13   SERVICE OR PRODUCT FROM HIM; HE IS MISDIRECTING THEM FROM YOUR

14   CLIENT TO HIM AND HE'S OFFERING THOSE SERVICES.

15             MR. MCINTYRE:  AND AFTER THEY GET THERE THEY FIND THAT

16   OUT.  TO USE THE ANALOGY THAT YOUR HONOR USED, I THINK, IN

17   READING FROM THE BROOKFIELD CASE, IF PEPSI WANTED TO ADVERTISE

18   COKE SPELLED WITH A "K", K-A-W-K, AND I AS THE CONSUMER THOUGHT

19   IT WAS COKE, UNDER SOME WILD STRETCH OF MY IMAGINATION, AND I

20   TOOK A SIP, I MIGHT KNOW THE DIFFERENCE.  THE CONSUMER'S

21   CONFUSION DOESN'T HAVE TO GO ALL THE WAY DOWN TO THE END WHERE

22   THEY GO OFF AND THEY BUY COKE AND THINK IT'S PEPIS, OR PEPSI AND

23   THINK IT'S COKE, WHEN THEY BUY THIS COMPUTER CHIP AND THEY THINK

24   IT'S THE OTHER ONE.  IT IS THE LIKELIHOOD OF MISDIRECTING THE

25   CONSUMER.  WHEN THE CONSUMER GETS TO THE WEB SITE, I CAN SEE THE

26   CONSUMER, IF THEY DIG THROUGH, AFTER A WHILE -- ALTHOUGH THERE

27   ARE REFERENCES TO OTHER LAW FIRMS ON THERE.  MARY -- WHAT'S

28   HER --

EXHIBIT 1 - PAGE 8

1          THE COURT:  PREVOST.

2          MR. MCINTYRE:  MARY PREVOST'S LAW FIRM IS ALSO TOUTED ON

3   HIS WEB SITE.  THERE IS ALSO ACTUALLY THE MISDIRECTION TO OTHER

4   LAW FIRMS.

5          MR. SAADAT-NEJAD:  EXCUSE ME.  SHOW, PLEASE, THAT THERE

6   IS A LINK ON THERE TO HER.

7          MR. MCINTYRE:  I BELIEVE IN THE EXHIBITS, IT APPEARS --

8          THE COURT:  ONE AT A TIME.

9          MR. SAADAT-NEJAD:  SORRY.

10         MR. MCINTYRE:  ALL RIGHT.

11         THE COURT:  SO THERE IS A LINK ON HIS WEB SITE THAT LINKS

12   INTO HER?

13         MR. MCINTYRE:  I DON'T THINK THERE IS A LINK, YOUR HONOR.

14         THE COURT:  OKAY.  WELL, HOW DOES -- SEE, THAT MAKES A

15   DIFFERENCE IN MY MIND.

16         MR. MCINTYRE:  I UNDERSTAND THAT.  I'M GOING TO -- I

17   DON'T WANT TO HAVE TO WASTE THE COURT'S TIME STUMBLING THROUGH

18   ALL OF THE ATTACHMENTS TO THE SLATTERY DECLARATIONS.

19         THE COURT:  WELL, IF SOMEHOW THERE IS ANOTHER COMPETING

20   ATTORNEY THAT COMES INTO THE PICTURE, THAT'S MAYBE A DIFFERENT

21   THING.

22         MR. SAADAT-NEJAD:  YOUR HONOR, MAY I SPEAK?

23         THE COURT:  YES.

24         MR. SAADAT-NEJAD:  YOUR HONOR, PACIFICLAWCENTERS.COM HAS

25   A TOTAL OF FIVE PAGES.  WHAT THE PLAINTIFF HAS PROVIDED THE

26   COURT IS ONLY ONE PAGE.  THEY HAVE SKIPPED FOUR OTHER PAGES, AND

27   ALL FOUR PAGES DO CONTAIN THE WORDS "PACIFIC LAW CENTER."  THERE

28   IS A PSYCHOLOGICAL REASON THAT THEY DID THIS.  I ASK THAT

1    THEY -- I WILL PROVIDE IT.  I WILL PROVIDE THE OTHER FOUR PAGES.

2    USHOSTAGE.COM HAS BEEN SUED ON THIS COMPLAINT.  USHOSTAGE.COM

3    HAS A TOTAL OF 33 PAGES ON ITS WEB SITE RIGHT NOW, AND THERE IS

4    NOT A SINGLE COPY IN ANY OF HIS --

5         THE COURT:  I'M NOT SURE I UNDERSTAND THE RELEVANCE OF

6    WHAT YOU'RE SAYING.

7         MR. SAADAT-NEJAD:  THEY ARE SUING USHOSTAGE.COM, AND THEY

8    HAVEN'T GIVEN ME A LEGITIMATE REASON WHY.

9         THE COURT:  WELL, I DON'T KNOW ABOUT THAT.  THAT'S NOT

10   BEFORE ME RIGHT NOW.

11        MR. MCINTYRE:  IT'S NOT, YOUR HONOR.  IF YOU GO TO THE

12   ATTACHMENTS TO MR. SLATTERY'S DECLARATION, IT'S AN ATTACHMENT

13   FROM PACIFIC LAW CENTER LA JOLLA -- THIS COMES RIGHT OUT OF

14   MR. SAADAT-NEJAD'S WEB SITE.  IF YOU GO TO PAGE 7 OF 10 --

15        THE COURT:  WAIT A MINUTE.  LET ME FIND IT.

16        MR. MCINTYRE:  I'M SORRY.  THE SLATTERY DECLARATION DATED

17   FEBRUARY 26TH, YOUR HONOR.

18        THE COURT:  ALL RIGHT.

19        MR. MCINTYRE:  THERE IS AN ATTACHMENT TO IT.

20        THE COURT:  I HAVE AN EXHIBIT 1 AND EXHIBIT 2 FOLLOWING

21   THAT.

22        MR. MCINTYRE:  THIS WOULD BE EXHIBIT 1, I GUESS, YOUR

23   HONOR.  IT IS.  IT'S EXHIBIT 1.  I BEG YOUR PARDON.

24        THE COURT:  ALL RIGHT.

25        MR. MCINTYRE:  I'M LOOKING AT THE FOOTER ALL THE WAY DOWN

26   AT THE LOWER RIGHT-HAND SIDE.

27        THE COURT:  RIGHT.

28        MR. MCINTYRE:  IF THE COURT GOES TO PAGE 7 OF 10.  THIS

1    IS SIMPLY AN EXAMPLE, BUT IT IS ONE I COULD POINT THE COURT TO

2    VERY QUICKLY.

3         THE COURT:  ALL RIGHT, 7 OF 10.

4         MR. MCINTYRE:  IF YOU LOOK AT WHAT WOULD BE THE SECOND

5    FULL PARAGRAPH.  "QUINN & ASSOCIATES, SAN DIEGO IMMIGRATION

6    ATTORNEY AND U.S. NATURALIZATION LAWYER...LOCATED IN SAN DIEGO,

7    CALIFORNIA IS DEVOTED EXCLUSIVELY TO U."  GEEZ, EVEN A TELEPHONE

8    NUMBER THERE.  THAT'S ONE OF THE REFERENCES ON THE SAADAT-NEJAD

9    PACIFICLAWCENTERS WEB SITE TO ANOTHER LAW FIRM.  I BELIEVE

10   ALSO -- I BELIEVE THERE ARE OTHERS.  THAT'S ONE I COULD POINT

11   THE COURT TO VERY QUICKLY.

12        THE COURT:  OKAY.  WELL, THAT MAKES A DIFFERENCE.

13        MR. MCINTYRE:  THERE'S ANOTHER ONE AT PAGE 5 OF 10 -- I

14   BEG YOUR PARDON.  THAT LOOKS LIKE THAT'S THE REFERENCE TO --

15   THAT'S REFERENCE, I THINK, TO -- IT'S A LITTLE CONFUSING.  IT'S

16   A REFERENCE BACK TO PACIFIC LAW CENTER.

17             THAT'S ONE OF THEM.  WE PUT MORE PAGES BEFORE THE

18   COURT WITH MR. SLATTERY'S SECOND DECLARATION.  I DON'T WANT TO

19   WASTE THE COURTS TIME PLOWING THROUGH ALL OF THOSE.  BUT I

20   RESPECTFULLY SUGGEST THAT THE COURT MAY WELL FIND OTHER

21   REFERENCES.

22        THE COURT:  THAT'S A DIFFERENT ANALYSIS, THEN, IN MY

23   MIND.

24        MR. MCINTYRE:  FROM A TRADEMARK STANDPOINT, I MEAN, WHAT

25   WE'VE ESTABLISHED, AT LEAST PRELIMINARILY -- WE HAVEN'T BEEN AT

26   THIS VERY LONG.  BUT IF YOU LOOK AT PARAGRAPHS 10 THROUGH 12 OF

27   THE SLATTERY DECLARATION, WHICH SHOWS ACTUAL CONFUSION -- WHICH,

28   FRANKLY, BECAUSE I TRY TRADEMARK CASES, IT'S IDEAL IF YOU CAN

1  SHOW THE ACTUAL CONFUSION; YOU DON'T NEED A BIG SURVEY.  HE'S

2  POINTING TO, AMONG OTHERS, QUINN & ASSOCIATES.  AND I DO BELIEVE

3  THERE ARE OTHER REFERENCES TO LAW FIRMS IN THE SITE.  IN FACT,

4  MR. SLATTERY, WHO HAS LOOKED AT THE SITE, WHO IS A MEMBER OF THE

5  BAR, CAN ANSWER THAT QUESTION.

6  WHAT WE ARE ASKING IS NOT TO SHUT DOWN HIS SPEECH,

7  BUT TO SHUT DOWN HIS USE OF AN ESTABLISHED MARK BY CLEARLY A

8  VERY DELIBERATE ATTEMPT TO GET AS CLOSE AS HE COULD, ONE LETTER

9  OFF, TO THE PACIFIC LAW CENTER SITE, WHICH IS A LEGITIMATE

10  TRADEMARK.  I'LL BE HAPPY AGAIN TO ADDRESS ANY OF THE QUESTIONS

11  THE COURT WANTS.  IF THE COURT WANTS FURTHER BRIEFING ON THE

12  TRADEMARK ISSUE --

13  THE COURT:  IT'S THE CONFUSION THAT --

14  MR. MCINTYRE:  THE CONFUSION --

15  THE COURT:  IT'S WHAT KIND OF CONFUSION HAS TO COME OUT

16  OF THIS FOR A COURT TO BE JUSTIFIED IN ISSUING AN INJUNCTION.

17  MR. MCINTYRE:  I FULLY UNDERSTAND, YOUR HONOR.

18  ESPECIALLY ONE THAT ALSO, AS THE COURT WAS CONCERNED ABOUT THE

19  LAST TIME WE WERE HERE, IS FRAUGHT A BIT WITH FIRST AMENDMENT

20  IMPLICATIONS.  HOPEFULLY, WE'VE ADDRESSED THOSE.

21  THERE ARE JUST TWO THINGS I DO WANT TO ADDRESS FOR

22  THE COURT AND WITH MR. SAADAT-NEJAD HERE.  HE WAS KIND ENOUGH TO

23  CALL US YESTERDAY, AND PERHAPS HE WILL -- THE COURT MAY WANT TO

24  INQUIRE OF HIM.  THERE WAS CONCERN ABOUT GETTING SUBSTITUTE

25  SERVICE AT HIS FATHER'S RESIDENCE.  HE ASKED THAT WE NOT ATTEMPT

26  THAT AGAIN.  WE HAVE AN AGREEMENT WITH MR. SAADAT-NEJAD.  HE HAS

27  GIVEN US HIS CELL PHONE NUMBER, AND IF THERE IS INDEED A FURTHER

28  NEED TO SERVE HIM, ALL WE HAVE TO DO IS CALL HIM ON THE CELL AND

1    HE WILL COME TO OUR OFFICE AND PICK UP THE PAPERS.  BECAUSE HE

2    DOESN'T WANT TO BE SERVED AT ANY ADDRESS.  I WOULD LIKE TO GET

3    THAT ON THE RECORD.  IT'S LITTLE UNUSUAL.

4              THE COURT:  IS THAT YOUR AGREEMENT, SIR?

5              MR. SAADAT-NEJAD:  PARTLY.  YESTERDAY, I THINK IT WAS, I

6    TOLD -- WHAT IS YOUR NAME?

7              THE COURT:  MR. MCINTYRE.

8              MR. MCINTYRE:  MR. MCINTYRE.

9              MR. SAADAT-NEJAD:  MR. MCINTYRE THAT THEY CAN CALL ME AND

10   I WILL COME TO THEIR OFFICE.  THERE IS NO REASON TO MAKE ME LOOK

11   LIKE I'M RUNNING.  I AM NOT RUNNING.  PACIFIC LAW CENTER HAS HAD

12   MY PHONE NUMBER.  THEY HAVE MY E-MAIL ADDRESS.  MY E-MAIL

13   ADDRESS IS ON --

14             THE COURT:  BUT THE LAW DOESN'T PROVIDE FOR --

15             MR. SAADAT-NEJAD:  YES, I UNDERSTAND THAT.  THEY REALLY

16   MAKE NO ATTEMPT OF CONTACTING ME, EVEN THOUGH THEY COULD HAVE.

17   THEY REALLY HAVE MADE NO ATTEMPTS.  THEY WENT TO MY FATHER'S

18   HOUSE.

19             THE COURT:  OKAY.  THE ARRANGEMENT THAT MR. MCINTYRE

20   OUTLINED HERE, THAT IF THEY NEED TO SERVE YOU WITH SOMETHING,

21   THAT THEY WILL CALL YOU AND THEN YOU WILL COME AND PICK UP

22   WHATEVER THE DOCUMENT IS --

23             MR. SAADAT-NEJAD:  I WOULD LIKE TO CHANGE THAT, AFTER

24   THIS MORNING'S MEETING.  THAT WAY I DON'T GET ACCUSED OF ANY

25   WRONGDOINGS.

26             THE COURT:  WHEN YOU SAY CHANGE, YOU MEAN YOU AGREE?

27             MR. SAADAT-NEJAD:  NO, I DO NOT AGREE.

28             THE COURT:  YOU DON'T WANT TO DO THAT?

1    MR. SAADAT-NEJAD:  NO.  THIS IS WHAT I AM PROPOSING.

2    THEY CAN MAIL IT TO MY FATHER'S HOUSE, BUT THEY MUST MAIL TWO

3    COPIES OF EACH DOCUMENT IN TWO SEPARATE ENVELOPES.  ONE I WOULD

4    OPEN, AND ONE WOULD STAY SEALED.  I DO NOT TRUST THE PLAINTIFFS

5    ONE BIT.

6    THE COURT:  IS THAT AGREEABLE WITH YOU, MR. MCINTYRE?

7    MR. MCINTYRE:  IT'S PERFECTLY FINE, YOUR HONOR.  MY

8    CONCERN WOULD BE IF WE RUN INTO A SITUATION WHERE THE COURT'S

9    EITHER DIRECTIVE OR THE RULES WOULD REQUIRE VERY QUICK SERVICE.

10   BUT WE CAN, I THINK, FED-EX TO HIS FATHER'S HOUSE.  THAT'S FINE.

11   I JUST WANT TO MAKE SURE THAT WE CAN ADEQUATELY, AS NEED BE

12   THROUGH THE COURSE OF THIS, SERVE MR. SAADAT-NEJAD TIMELY SO HE

13   HAS ACCESS TO ALL THE PAPERS, THAT'S ALL.  THAT'S PERFECTLY

14   FINE.

15   MR. SAADAT-NEJAD:  WITH TRACKING NUMBER ON THE PACKAGES?

16   MR. MCINTYRE:  WE ROUTINELY DO THAT SO WE HAVE A TRACKING

17   NUMBER.

18   MR. SAADAT-NEJAD:  ALL RIGHT.  THAT'S --

19   MR. MCINTYRE:  WE HAVE TRACKING NUMBERS WITH EVERY FED-EX

20   WE DO.

21   THE COURT:  BY AGREEMENT, THAT'S THE WAY IT WILL OCCUR,

22   UNLESS WE SEE THERE IS A PROBLEM.

23   MR. MCINTYRE:  THANK YOU, YOUR HONOR.

24   THE COURT:  AS TO THE ISSUE I'M TALKING ABOUT, I'D LIKE

25   TO KNOW SOMETHING FURTHER ABOUT CONFUSION.  BECAUSE IT'S NOT

26   JUST ANYBODY'S CONFUSION.  I DON'T KNOW THAT WHAT'S IN

27   MR. SLATTERY'S DECLARATION IS THE KIND OF CONFUSION THAT'S

28   ENJOINABLE UNDER TRADEMARK.

1    MR. MCINTYRE:  I'LL BE HAPPY TO ADDRESS IT, YOUR HONOR.

2    I REALLY WILL.

3       THE COURT:  I THINK WE NEED TO DO THAT.

4       MR. SAADAT-NEJAD:  DO I HAVE ALL THE TIME?

5       THE COURT:  DO YOU UNDERSTAND WHAT I'M TALKING ABOUT?

6       MR. SAADAT-NEJAD:  ACTUALLY, CAN YOU REPEAT THAT AGAIN?

7       THE COURT:  TRADEMARK, TRADE NAME, SERVICEMARK, ANY OF

8    THOSE THINGS, CAME ABOUT BECAUSE OF THE IMPORTANT PUBLIC PURPOSE

9    OF MAKING SURE CONSUMERS ARE NOT CONFUSED ABOUT WHO IS OFFERING

10   CERTAIN GOODS AND SERVICES.  FOR INSTANCE, IF YOU WERE A CAR

11   MANUFACTURER, YOU COULDN'T CALL YOURSELF GENERAL MOTORS AND TRY

12   TO SELL YOUR CARS UNDER THE NAME GENERAL MOTORS, BECAUSE THAT'S

13   A WELL-KNOWN, ALREADY ESTABLISHED TRADEMARK.

14              ON THE OTHER HAND, MY QUESTION TO MR. MCINTYRE IS

15   HOW MUCH CONFUSION AND WHAT TYPE OF CONFUSION DOES IT TAKE WHEN,

16   IN YOUR CIRCUMSTANCE, YOU'RE NOT OFFERING A SERVICE SIMILAR, OR

17   ANY SERVICE AT ALL COMPARED TO PACIFIC LAW CENTER, ALTHOUGH YOU

18   HAVE CREATED A DOMAIN NAME THAT'S ALMOST IDENTICALLY THE SAME.

19   AND THERE ARE CASES ON THIS.  DOMAIN NAMES ARE PROTECTABLE.  THE

20   QUESTION IS WHAT KIND OF CONFUSION COMING OUT OF YOUR USE OF

21   YOUR DOMAIN NAME WOULD HAVE TO EXIST FOR ME TO ISSUE AN

22   INJUNCTION.  THAT'S WHAT I WANT TO KNOW ABOUT.

23       MR. SAADAT-NEJAD:  SIR, IF I MAY.  ON THE PAGE OF 100%

24   PERCENT FREE WARNING, THAT IS THE PAGE THAT FOCUSES ON PACIFIC

25   LAW CENTER, THE SECOND PAGE OF PACIFICLAWCENTERS.COM, AND THE

26   VISITOR, WHOEVER VISITS THAT PAGE IS ENCOURAGED TO GO TO

27   PACIFICLAWCENTER.COM AND PHILLIPSLAW.COM, WHICH IS OWNED BY THE

28   PHILLIPS & ASSOCIATES LAW FIRM IN ARIZONA.  IT HAS BEEN ON THERE

1    FOR SEVERAL WEEKS.

2              AS FAR AS ANY LITERATURE IN THERE THAT ADVERTISES,

3    FOR EXAMPLE, OTHER ATTORNEYS, I FEEL THAT I DO HAVE THE RIGHT TO

4    ADVERTISE MY SPACE.  IN THIS CASE IT DOES NOT ADVERTISE.  I

5    STILL QUESTION THE AUTHENTICITY OF THESE PAPERS THAT THEY HAVE

6    NOW FILED.  I HAVE SAVED ALL OF THE HTML CODES ON THE WEB SITE,

7    E-MAILED THEM TO MYSELF SO IT'S DATED, AND THEN I BROUGHT DOWN

8    EVERYTHING.  I HOPE TO BRING THE HTML CODES TO --

9              THE COURT:  THE ISSUE HERE IS NOT YOUR ABILITY TO

10   CRITICIZE PACIFIC LAW CENTER.  AS MR. MCINTYRE SAID, YOU'RE

11   ENTITLED TO DO THAT.

12             MR. SAADAT-NEJAD:  OKAY.

13             THE COURT:  SUBJECT TO OTHER RULES THAT MAY APPLY,

14   DEFAMATION AND OTHER THINGS.  YOU RUN THE RISK OF BEING

15   RESPONSIBLE FOR THE THINGS THAT YOU SAY.

16             MR. SAADAT-NEJAD:  YES.

17             THE COURT:  BUT THAT'S NOT WHAT THEY ARE TALKING ABOUT.

18   THAT'S DIFFERENT THAN THIS.  THE QUESTION IS WHETHER YOU CAN USE

19   A DOMAIN NAME ALMOST IDENTICALLY SIMILAR; THAT IT WOULD BE

20   CONFUSING TO THE PUBLIC, AND THEREFORE IT WOULD BE IN VIOLATION

21   OF TRADEMARK, TRADE NAME, SERVICEMARK OR NAME RULES, WHICH COULD

22   BE ENJOINABLE.  I WANT TO KNOW ABOUT THE NATURE AND TYPE AND

23   EXTENT OF CONFUSION THAT WOULD ALLOW ME, OR NOT ALLOW ME, TO

24   ISSUE AN INJUNCTION.  THAT DOESN'T MEAN -- IF I ISSUE AN

25   INJUNCTION ULTIMATELY, THAT MEANS YOU WOULDN'T BE ABLE TO USE

26   THAT DOMAIN NAME.  YOU COULD USE SOME OTHER DOMAIN NAME, AND YOU

27   COULD STILL CRITICIZE THEM, IF YOU WANT TO, AND YOU STILL STAND

28   RESPONSIBLE FOR WHATEVER COMES OUT OF IT.

1      MR. SAADAT-NEJAD:  CAN I DRIVE DOWN TO TIJUANA, WRITE

2  WHATEVER I WANT ON PACIFICLAWCENTERS.COM, AND THEN COME BACK TO

3  THE UNITED STATES?

4      THE COURT:  I VERY MUCH DOUBT IT.  I DON'T KNOW THE

5  ANSWER TO THAT.

6      MR. SAADAT-NEJAD:  WHERE DOES IT STOP?  WHERE DOES IT

7  STOP?  WHAT COUNTRY CAN I GO TO AND USE PACIFICLAWCENTERS.COM?

8      THE COURT:  I'M NOT SURE THAT YOU CAN.  I DON'T KNOW THE

9  ANSWER TO THAT.  I'M NOT GIVING YOU AN OPINION.  THAT'S A WHOLE

10  DIFFERENT ISSUE.  BUT IT'S LIKE YOU COULDN'T GO TO MEXICO AND

11  CALL YOURSELF GENERAL MOTORS.  GENERAL MOTORS WOULD BE AFTER YOU

12  UP HERE AS SOON AS YOU GOT BACK.

13      MR. SAADAT-NEJAD:  YOU MEAN GENERALMOTORS.COM AS A DOMAIN

14  NAME?

15      THE COURT:  GENERALMOTORS.COM, TO USE THE EXAMPLE WE

16  TALKED ABOUT BEFORE.

17          I DO HAVE ONE QUESTION.  YOU INDICATED -- SOMEBODY

18  INDICATED THAT MAYBE MARY PREVOST IS GOING TO BE ASSISTING YOU.

19  ARE YOU GOING TO HAVE AN ATTORNEY IN THIS MATTER?

20      MR. SAADAT-NEJAD:  AS FAR AS RIGHT NOW GOES, NO, YOUR

21  HONOR.

22      THE COURT:  OKAY.  WELL, THESE ARE COMPLICATED AREAS.

23      MR. SAADAT-NEJAD:  YES.

24      THE COURT:  IT WOULD BE VERY HELPFUL IF YOU HAD AN

25  ATTORNEY.

26      MR. SAADAT-NEJAD:  I WILL CONTACT CIVIL RIGHTS

27  ORGANIZATIONS, WRITE THEM LETTERS, AND SEE IF ANYONE WILL

28  RESPOND.

1            THE COURT:  IT WOULD BE HELPFUL.

2            MR. SAADAT-NEJAD:  OKAY.  BUT THIS WILL BE VERY TIME

3       CONSUMING.  I WOULD LIKE TO GET A CONTINUANCE ON THIS CASE, IF

4       YOU ARE NOT GOING TO DISMISS THE CASE.

5            THE COURT:  WELL, I'M GOING TO ASK MR. MCINTYRE AND YOU

6       TO GIVE ME SOME MORE INFORMATION ABOUT, IN THIS CIRCUMSTANCE,

7       WHAT'S ENJOINABLE AND WHAT'S NOT.  I DON'T KNOW HOW MUCH TIME

8       YOU NEED.

9            MR. SAADAT-NEJAD:  I WOULD LIKE TO MENTION THERE ARE

10      SEARCH ENGINES BESIDES GOOGLE.  I HAVE PUNCHED INTO THE SEARCH

11      BOX THE WORDS "PACIFIC LAW CENTER," ALL SEPARATE, JUST AS THE

12      PLAINTIFF HAS, AND WHEN YOU PUNCH IN "PACIFIC LAW CENTER" SOME

13      SEARCH ENGINES WILL BRING UP ADVERTISEMENTS, SPONSORED

14      ADVERTISEMENTS, AND THERE ARE SPONSORS THAT ARE ATTORNEYS THAT

15      DO COME UP WHEN YOU PUNCH IN "PACIFIC LAW CENTER" ON THE SEARCH

16      ENGINE THAT IS NOT PACIFIC LAW CENTER.  ALL THEY SAY, FOR

17      EXAMPLE, "WE ARE THE BEST ATTORNEY IN THE WORLD."

18           THE COURT:  ALL I'M CONCERNED WITH IS YOUR DOMAIN NAME

19      AND WHAT COMES UP WHEN THAT'S USED.  ALL THAT'S BEFORE ME NOW IS

20      SUBSTANTIALLY SIMILAR DOMAIN NAMES.  NOW, THERE ARE OTHER

21      FACTORS WHEN YOU'RE USING THE INTERNET.  WE HAVEN'T TALKED ABOUT

22      ANY OF THOSE THINGS.  THAT'S NOT WHAT'S BEING ASKED OF ME AT

23      THIS STAGE.

24           MR. MCINTYRE:  WHEN WOULD YOU LIKE THE ADDITIONAL

25      BRIEFING, YOUR HONOR?

26           THE COURT:  AT YOUR PLEASURE.

27           MR. MCINTYRE:  WELL, I WILL SAY THIS FOR

28      MR. SAADAT-NEJAD.  APPARENTLY, ONCE HE BECAME AWARE OF THE

1   COURT'S TEMPORARY RESTRAINING ORDER, HE HAS BLACKED OUT HIS

2   PACIFICLAWCENTERS SITE.  YOUR HONOR MAY HAVE ALREADY TRIED IT.

3   IF ONE --

4         THE COURT:  NO.

5         THE COURT:  IF ONE GOES AND TRIES TO LOG ON, ALL YOU GET

6   IS A BLACK PAGE.  I COMMEND HIM FOR THAT.  THAT WAS THE COURT'S

7   ORDER.

8         THE COURT:  OKAY.

9         MR. MCINTYRE:  BECAUSE OF THAT, I WOULD LIKE TO DO IT

10  PROMPTLY.  WOULD WEDNESDAY WORK FOR THE COURT?  I HAVE A BRIEF

11  DUE IN L.A. ON MONDAY.

12        THE COURT:  I'M IN TRIAL ALL NEXT WEEK.

13        MR. MCINTYRE:  WELL, AT LEAST TO GET IT TO THE COURT, SO

14  THE COURT HAS WHATEVER SUPPLEMENTAL PAPERS.

15        THE COURT:  IF YOU WANT TO HAVE THIS HEARD FURTHER A WEEK

16  FROM TODAY.

17        MR. MCINTYRE:  THAT WOULD BE FINE.  BY WEDNESDAY?

18        THE COURT:  DOES THAT GIVEN YOU ENOUGH TIME, SIR?

19        MR. SAADAT-NEJAD:  I HAVE A PENDING CRIMINAL CASE, TWO OF

20  THEM, AS I PUT IN THE DECLARATION.  I'VE PRETTY MUCH LOST FAITH

21  IN THE CRIMINAL ATTORNEY.  PACIFIC LAW CENTER HAS MADE CONTACT

22  WITH HIM.  I WOULD LIKE TO GET THIS IN APRIL.  HOPEFULLY, I CAN

23  GET THE CRIMINAL CASE RESOLVED BY THEN.  IF NOT --

24        THE COURT:  WELL, AS LONG AS YOU HAVE YOUR DOMAIN BLACKED

25  OUT.

26              DOES THAT WORK FOR YOU?

27        MR. MCINTYRE:  IT WORKS FINE, YOUR HONOR.  I UNDERSTAND.

28  LIBERTY IS MORE IMPORTANT THAN ALMOST ANYTHING ELSE.  TO THE

1   EXTENT MR. SAADAT-NEJAD HAS PENDING CRIMINAL MATTERS, IF THE

2   COURT WILL JUST CONTINUE, WITH HIS ACQUIESCENCE, THE TRO IN

3   PLACE.  DID YOU WANT TO PICK --

4          THE COURT:  WELL, WE WOULD DO IT ON A FRIDAY, SIR.

5          MR. SAADAT-NEJAD:  ON A FRIDAY?

6          THE COURT:  WHEN IN APRIL?

7          MR. SAADAT-NEJAD:  MY NEXT COURT DATE WILL BE MARCH 28TH.

8   I'M SURE THAT IT WILL GET CONTINUED.  I WOULD RECOMMEND APRIL

9   20TH.

10         MR. MCINTYRE:  THAT'S PERFECTLY FINE WITH ME, YOUR HONOR.

11  THANK YOU.

12         THE COURT:  LET'S DO APRIL 20 AT -- WE ALWAYS HAVE

13  MOTIONS IN THE AFTERNOONS.  I'M GOING TO SAY THREE O'CLOCK

14  AGAIN, SO YOU DON'T HAVE TO WAIT AROUND.

15         MR. MCINTYRE:  THANK YOU.  THAT'S VERY GRACIOUS, YOUR

16  HONOR.

17         THE COURT:  THIS IS CONDITIONED UPON YOU NOT HAVING THAT

18  WEB SITE --

19         MR. SAADAT-NEJAD:  I CANNOT HAVE ANYTHING ON THERE?  I

20  CAN'T EVEN HAVE A PICTURE OF A CAT?  NOTHING?

21         THE COURT:  NOT UNDER THAT NAME.

22         MR. SAADAT-NEJAD:  OKAY.  NOW, WHAT ABOUT USING THE NAME

23  PACIFIC LAW CENTER IN PUBLIC FORUMS?

24         THE COURT:  THEY ARE NOT ASKING THAT YOU BE STOPPED FROM

25  DOING THAT.

26         MR. SAADAT-NEJAD:  I UNDERSTAND THAT THEY ARE TRYING TO

27  STOP ME FROM USING EVEN THE WORDS "PACIFIC LAW CENTER."  I

28  BELIEVE THE COURT ORDER SETS OUT THE SAME THING.

1       THE COURT:  IT'S THE DOMAIN NAME THAT YOU'RE CONCERNED

2  WITH, AS I UNDERSTAND IT.

3       MR. MCINTYRE:  IN THIS INSTANCE IT'S THE DOMAIN NAME.

4  THAT'S THE MARK.

5       THE COURT:  AS YOU SAID, IF HE WANTED TO STAND OUTSIDE

6  YOUR CLIENT'S OFFICE AND SAY PACIFIC LAW CENTER IS NO GOOD, HE

7  CAN DO THAT.

8       MR. MCINTYRE:  HE CAN CARRY HIS PICKET SIGN AND SAY, DO

9  NOT HIRE PACIFIC LAW CENTER.  THAT IS OBVIOUSLY WITHIN AN AREA

10  OF PROTECTED SPEECH.  IT IS THE USE OF THE MARK AS A DOMAIN NAME

11  IN ANY OTHER FASHION HE WOULD USE THE MARK.  IT'S NOT THE

12  SPEECH.  IT'S THE MARK.

13       THE COURT:  I CAN'T ENJOIN HIM FROM USING THE NAME IN

14  CONVERSATION IN E-MAIL ON THE INTERNET.  IF HE WANTS TO TALK

15  ABOUT PACIFIC LAW CENTER, HE IS ENTITLED TO DO THAT.  HE CAN'T

16  HAVE A DOMAIN NAME, HOWEVER, THAT SAYS "PACIFIC LAW CENTER" OR

17  "PACIFIC LAW CENTERS" IN THIS CASE.  BUT IF HE CALLED IT THE

18  DONALD DUCK WEB SITE, AND IT'S ALL ABOUT -- AND HE SAYS, I WANT

19  YOU TO KNOW I DON'T LIKE PACIFIC LAW CENTER, HE CAN DO THAT.

20       MR. MCINTYRE:  I'M NOT ARGUING THAT POINT, YOUR HONOR.

21       THE COURT:  OKAY.

22       MR. MCINTYRE:  YOU'RE RIGHT, HE CAN'T.

23       MR. SAADAT-NEJAD:  YEAH, I -- JUST FOR THE RECORD, I AM

24  NOT AFTER THE NAME THAT THEY CLAIM THAT THEY OWN, PACIFIC LAW

25  CENTER.  I HIGHLY RECOMMEND THEY DO A BASIC REGISTRATION OF

26  OWNING THAT NAME.

27       THE COURT:  THEY HAVE USED IT FOR A LONG TIME.  IT'S

28  WIDELY KNOWN IN THE PUBLIC.  THERE'S OTHER WAYS THAT SOMETHING

1    BECOMES PROTECTABLE, AND ONE OF THEM IS WIDESPREAD USE.  TO MY

2    SATISFACTION, THEY'VE ESTABLISHED THAT.  IT DOESN'T HAVE TO BE

3    REGISTERED TO BE PROTECTED.

4         MR. SAADAT-NEJAD:  WELL, DON'T THEY BECOME A PUBLIC

5    FIGURE FROM THIS?

6         THE COURT:  WELL, THAT'S ANOTHER ISSUE.  I'M NOT MAKING

7    ANY COMMENT THERE.

8         MR. SAADAT-NEJAD:  THAT ISSUE WILL COME UP ON APRIL 20TH.

9         THE COURT:  OKAY.

10        MR. SAADAT-NEJAD:  THEY ARE A PUBLIC FIGURE.

11        THE COURT:  WELL, WE ARE GOING TO CONTINUE THIS TO THAT

12   DATE.  SINCE IT'S THAT FAR OUT, MR. MCINTYRE, IF YOU COULD LET

13   ME HAVE YOUR SUPPLEMENTAL POINTS AND AUTHORITIES AND ALL MAYBE

14   TEN DAYS AHEAD.

15        MR. MCINTYRE:  I WAS GOING TO SUGGEST BY THE SIXTH, YOUR

16   HONOR, TWO WEEKS BEFORE THE HEARING.  DOES THAT WORK FOR YOU?

17   MR. SAADAT-NEJAD WILL THEN HAVE A CHANCE TO RESPOND.

18        THE COURT:  THAT'S RIGHT.  THANK YOU.

19        MR. SAADAT-NEJAD:  THANK YOU, YOUR HONOR.

20        MR. MCINTYRE:  THANK YOU FOR TAKING THE TIME THIS

21   AFTERNOON, YOUR HONOR.  APPRECIATE IT.

22        THE COURT:  ALL RIGHT.

23        SIR, ONCE YOU RECEIVE MR. MCINTYRE'S -- HE'S GOING

24   TO HAVE EVERYTHING OUT ON APRIL THE 6TH, AND WE ARE GOING TO

25   MEET ON THE 20TH.  I WOULD LIKE TO HAVE ANYTHING THAT YOU WOULD

26   HAVE IN RESPONSE -- COULD I HAVE THAT BY THE 13TH OF APRIL?

27   THAT WOULD GIVE YOU A WEEK.

28        MR. SAADAT-NEJAD:  IF WORST COMES TO WORST, I CAN GET A

1    CONTINUANCE ON THE 20TH?

2         THE COURT:  WELL, WE ARE NOT INCLINED TO DO THAT.

3         MR. SAADAT-NEJAD:  I AM CURRENTLY OUT ON BAIL.  I MAY

4    EVEN GET REMANDED.  THEY ARE INFLUENCING MY CRIMINAL CASE, AND

5    THEY HAVE GIVEN SO MANY INDICATIONS THAT WE CAN HAVE THE

6    DISTRICT ATTORNEY FILE MORE CHARGES TO PUT ME BEHIND BARS IN

7    JAIL.

8         THE COURT:  I DON'T KNOW WHAT'S GOING TO HAPPEN TO YOU IN

9    THAT REGARD.  LET'S SAY ANY RESPONSE THAT YOU WISH TO GIVE ME --

10   HE IS GOING TO GET IT OUT TO YOU ON APRIL 6TH.  I WOULD LIKE TO

11   HAVE YOUR RESPONSE BY APRIL 16TH.  THAT'S A MONDAY.  THAT'S TEN

12   DAYS LATER.  IT TAKES ME TIME TO READ ALL OF THIS.

13        MR. SAADAT-NEJAD:  I FULLY UNDERSTAND.  BUT WHAT IF I AM

14   INCARCERATED?

15        THE COURT:  I DON'T KNOW.  WE WILL HAVE TO ADDRESS THAT

16   WHEN WE GET THERE.  HOPEFULLY THAT WON'T HAPPEN.  IF YOU ARE, WE

17   WILL SEE WHAT WE ARE GOING TO DO ABOUT IT.

18        MR. SAADAT-NEJAD:  FROM JAIL?  I MEAN --

19        THE COURT:  I CAN'T ANSWER THAT, SIR.  I DON'T KNOW.  WE

20   WILL SEE WHAT HAPPENS.

21        MR. MCINTYRE:  AS THE COURT SAID, HOPEFULLY THAT WON'T

22   OCCUR.

23        THE COURT:  WELL, HOPE NOT.  THANK YOU VERY MUCH.

24        MR. SAADAT-NEJAD:  THANK YOU.

25        MR. MCINTYRE:  THANK YOU AGAIN, YOUR HONOR.  APPRECIATE

26   YOUR TIME.

27        THE COURT:  ALL RIGHT.

28        (PROCEEDINGS ADJOURNED.)

1   STATE OF CALIFORNIA)
                            : SS.
2   COUNTY OF SAN DIEGO)

3

4

5           I, JAMES PARTRIDGE, CSR NO. 6226, AN OFFICIAL

6   REPORTER FOR THE SUPERIOR COURT OF THE STATE OF CALIFORNIA, IN

7   AND FOR THE COUNTY OF SAN DIEGO, DO HEREBY CERTIFY THAT I

8   REPORTED IN MACHINE SHORTHAND THE PROCEEDINGS HAD IN THE ABOVE

9   ENTITLED MATTER, AND THAT THE FOREGOING TRANSCRIPT, CONSISTING

10  OF PAGES NUMBERED 1 TO 22, INCLUSIVE, IS A FULL, TRUE AND

11  CORRECT TRANSCRIPT OF SAID PROCEEDINGS.

12          DATED AT SAN DIEGO, CALIFORNIA, THIS 13TH DAY OF

13  MARCH 2007.

14

15

16

17

18

19

20

21          JAMES PARTRIDGE, CSR NO. 6226

22

23

24

25

26

27

28

EXHIBIT 1 - PAGE 24

# PHAWKU.com

| | | | |
|---|---|---|---|
| | | | |

**USHOSTAGE.com IS OFFERING A $25,000 U.S. REWARD FOR INFORMATION LEADING TO THE CAPTURE OF THE LEADER OF NATIONAL COUNCIL OF RESISTANCE (NCR) (a.k.a. MUJAHEDIN-E-KHALQ ORGANIZATION; a.k.a. MEK; a.k.a. MKO; a.k.a. MUJAHEDIN-E-KHALQ; a.k.a. NLA; a.k.a. ORGANIZATION OF THE PEOPLE'S HOLY WARRIORS OF IRAN; a.k.a. PEOPLE'S MUJAHEDIN ORGANIZATION OF IRAN; a.k.a. PMOI; a.k.a. SAZEMAN-E-MUJAHEDIN-E-KHALQ-E-IRAN; a.k.a. THE NATIONAL LIBERATION ARMY OF IRAN)**

# Mr. MASOUD RAJAVI

EXHIBIT 2   TOTAL 4 PAGES



**CONSIDERED ARMED AND EXTREMELY
DANGEROUS**

**MURDER OF U.S. NATIONALS;**

**MURDER OF IRANIAN NATIONALS INSIDE AND
OUTSIDE OF IRAN;**

**CONSPIRACY TO MURDER IRANIAN NATIONALS
INSIDE AND OUTSIDE OF IRAN;**

**ATTACK(S) ON GOVERNMENT FACILITY(S)
RESULTING IN DEATH**

**SILENCE = SUPPORTING TERRORISM**

**If you have credible information on where
Masoud Rajavi is, you can contact
USHOSTAGE.com and/or you should contact the
government of Iran because Masoud Rajavi is a
Iranian National wanted for murder.**

If you have credible information on Mojahedin-e-Khalq/Mujahedin-e-Khalq terrorist agents then you should contact the government of where he/she resides and contact the government of his/her National government.

USHOSTAGE.com is independent, and privately owned. USHOSTAGE.com is NOT affiliated with, nor does USHOSTAGE.com have ANY licenses or strategic alliances with ANY government nor is USHOSTAGE.com authorized by ANY government to offer ANY reward for information leading to the capture of Masoud Rajavi. You MUST contact USHOSTAGE.com for $25,000 reward with information leading to the capture of the US backed terrorist Masoud Rajavi.

Since 1979 to the present, Allegations ( Exaggerated ) made by the United States Government and the Media About Iran Supports Terrorism is nothing but lies. If Iran Teaches, Trains, Funds, Feeds and Harbors Terrorists, Then Why has there never been a Iranian That acted in any Terrorist manner that murders children by blowing them selves up or by hijacking a plane. There are over 65 Million people that live in Iran, and not one wants to go to heaven by blowing them selves up?

The only known Terrorist groups that has Iranians Involved are the ones that are Funded, Trained, Etc. by the United States Government are known as Mojahedin-e-Khalq / Mujahedin-e-Khalq; National Liberation Army of Iran (NLA); People's Mojahedin of Iran (PMOI); National Council of Resistance (NCR); National Council of Resistance of Iran (NCRI); Muslim Iranian Student's Society with a Office in Washington DC - United States Government has so much blood on its hands that it can not wash it off, and this is the main reason that the Mujahedin-e-Khalq / Mojahedin-e-Khalq is and has been blackmailing the U.S. Government. United States Government was the one that gave Saddam Hussain Methods for Weapons of Mass Destruction to use against the Kurdish and Iranian people.

Copyright 2005 phawku.com. All rights reserved.

EXHIBIT 2 - PAGE 4

# PHAWKU2.com 

**Methamphetamine
laboratories**
Contact: (646)225-8213



"Run to a phone and call 911
before the meth snake gets you."

Also known as meth, speed, crank, croak, crypto, crystal, chalk, glass, white cross, ice, tweak, shshit

Illegal meth laboratories can be set up wherever activities may be hidden from view, often in locations that are especially dangerous to children, such as sleeping areas, eating areas where food is also stored and prepared, and garages.4 These makeshift labs and their dangerous components (for example, chemical containers and electrical wiring) have been discovered in vehicles of all types, hotel and motel rooms, storage lockers and units, mobile homes and surrounding areas, apartments, ranches, houses, campgrounds, rural and urban rental properties with absentee landlords, abandoned dumps, restrooms, houseboats, and other locations. Meth can be produced in as few as 6 to 8 hours using apparatus and

EXHIBIT 3   TOTAL 8 PAGES

cookware that can be dismantled rapidly and stored or relocated to avoid detection.

Children of alcoholics, heroine addicts, cocaine abusers often find themselves in a "whirlwind" of problems associated with the drug use. Methamphetamine brings a "hurricane" by comparison. Children are at a major high risk for toxic neurological damage, mental health and substance-abuse disorders. We have very little descriptive information about their psychological development and well-being," Children in meth-affected households pay in two ways - from exposure to toxicity (gases, dust, poison chemicals) and neglect.

TOXICITY

Ingredients in Meth range from battery acid to Drano - Red Devil Lye to starter fluid. (toxic acids, solvents, salts and gases) All of these ingredients are toxic, and when combined create chemical reactions, which produce gases, some of which will kill you! Parents making the drug in their homes exposed their children to toxic fumes and the danger of explosions or fires. The chemicals involved in meth use could also cause physical problems that could hurt children throughout their lives. What do you suppose happens to "the children left to crawl around in the miniature toxic waste dumps?"

Children are uniquely susceptible to neurological contamination in the environment because their brains are still developing. (It is known fact that Meth affects the central nervous system, causing cell loss in adult brains.) Children up to 6 years of age are rapidly developing throughout their entire body, especially in their brain. Would you feed your baby brake cleaner? Ether? What about acetone or fertilizing chemicals?

Children going through adolecence have reasoning problems due to the frontal area of the brain going through serious development. This is when teens often go through outbursts which contain no reasoning. What if the affect of adolecense brain maturity is stifled earlier in their life? The problems we are now having with teens could very well be exacerbated by the year of 2015 to the extent we cannot control them at all. Look at the News now.. Children are wanting to hurt someone and we ask ourselves why? How could this happen?

NEGLECT

Imagine a 10-year-old child becoming the parent(s) to younger siblings... as their parents went through days-long highs, often accompanied by psychotic symptoms, followed by crashes and days of sleep. The older child will feed, clean, and entertain the smaller children. An only child would feel incredible lonliness and despair as they found their way around the home searching for food, which more than likely there if very little of. Parents who use Meth rarely eat, why would they take the time to spend their money for food they didn't want. So what kind of nutrician do meth children receive? Fruits, vegetables, meat, milk or bread. This sounds doubtful. More than likely candy bars, maybe stolen, chips, old food...

Some children may be asked to steal items needed for making the drug or to watch out for police or other authorities who may be watching.

What does a meth child wear? The clothes that they wash or the dirty clothes that they wore last week. It is sad to think that a 10-year-old would do the laundry for the family, tend to the house, give baths, feed the others, and worry constantly about what it takes two parents to accomplish. What lonliness and despair they must feel.

How does a meth child feel? Children tend to think their parents' problems are caused by them. Meth parents yell, scream, deman, say things they don't even know that they are saying to their children, around their children and about their children. Children of meth parents tend to stay in the background unoticed while trying to survive. Children think drug use by the parent is their fault. What a heavy -heavy burden to carry upon such little shoulders.





**Meth kills.**

**Without conscience or care, passion or prejudice.**

**It isn't a distant fear.**

**It isn't coming soon.**

**It's here.**

## CHILDREN AND METH

### LIFE OF A DRUG-ENDANGERED CHILD

**Life of chaos**
**Bonding and attachment disputes**
**No boundaries or limits**
**Pornography**
**Knowledge of drugs**
**Access to drugs, needles, paraphernalia, chemicals**
**Filth, environmental exposure**

### ISSUES THAT EFFECT CHILDREN

**Supervision issue**
**School problems**
**Criminal behavior**
**Social isolation**
**Environmental dangers**
**Sexual, physical abuse**
**Overall neglect**

### MEDICAL ISSUES THAT EFFECT CHILDREN

**Acute illness or injury**
**Lethargy**
**Agitation**
**Jitters**
**Fussy babies**
**Seizure activity**
**Respiratory symptoms**
**Lack of basic medical care**

Immunizations
Speech delays
Developmental delays
Behavior issues
Dental Caries
Inadequate nutrition
Untreated conditions


Child Abuse

Childhelp USA National Child Abuse Hotline
1-800-4-A-CHILD
(1-800-422-4453)
Each day in the United States, more than 3 children die as a result of child abuse in the home. In 1998, an estimated 1,100 children died of abuse and neglect-an average of more than 3 children per day. (source: Childhelp USA)

Child Care

Child Care Aware
1-800-424-2246
Choosing child care is an important decision. Good child care arrangements can improve the daily lives of children and parents. In addition, children in high quality care have higher levels of success when they enter school. (source: Child Care Aware)

Missing Children

National Center for Missing and Exploited Children
1-800-THE-LOST
(1-800-843-5678)

Runaways

National Runaway Switchboard
1-800-621-4000
Every day 1.3 million runaway and homeless youth live on the streets of America. One out of every seven children will run away before the age of 18. Each year approximately 5,000 runaway and homeless youth die from assault, illness, and suicide. (source: National Runaway Switchboard)


**Amphetamine, dextroamphetamine, methamphetamine, and their various salts are collectively referred to as amphetamines. In fact, their chemical properties and actions are so similar that even experienced users have difficulty knowing which drug they have taken. Methamphetamine is the most commonly abused.**

Here are some of the things to watch for:

Unusual strong odors (like cat urine, ether, ammonia, acetone or other chemicals).
Residences with windows blacked out.
Renters who pay their landlords in cash (most drug dealers deal exclusively in cash).
Large amounts of traffic - people coming and going at unusual hours. There may be little traffic during the day and large amounts at night.
Excessive trash, including large quantities of: antifreeze containers, lantern fuel cans, red chemically stained coffee filters, drain cleaner containers and duct tape.
Unusual quantities of clear glass containers being brought into the home.

- 
- **Presence of the following items could also indicate the presence of a meth lab:**
- 
- Alcohol, Ether, Benzene, Toluene/Paint Thinner, Freon, Acetone, Chloroform, Camp Stove/Coleman Fuel, Starting Fluid, Anhydrous Ammonia, "Heet", White Gasoline, Phenyl-2-Propane, Phenylacetone, Phenylpropanolamine, Iodine Crystals, Red Phosphorus, Black Iodine, Lye (Red Devil Type), Drano, Muriatic/Hydrochloric Acid, Battery/Sulphuric Acid, Epsom Salts, Lithium Batteries, Sodium Metal, Wooden Matches, Propane Cylinders, Hot Plates, Ephedrine (over the counter), Cold Tablets, Bronchodialators, Energy Boosters, Rock Salt and Diet Aids.

Call the San Diego County Methamphetamine Hotline
1-877-NO-2-METH
For information on treatment or to report criminal activity in San Diego County, California.

Meth resources from the White House

Office of Child Abuse Prevention, California



**I started this WebSite after seeing with my own eyes, homeless and not homeless kids in San Diego, California having mothers and/or fathers that worship crystal meth. I have seen kids having problems with hunger, shelter, clothing, health, emotional, mental all because of crystal meth and their parents.**

**I have seen recently in the past three years:**

**Homeless meth addicts in Mission Bay that live in their motorhomes sell their own kids identity, let alone steal others identity. A meth dealer in Hillcrest buys and sells identity from these people. If they can counterfeit it, they will. Meth addicts, while on meth have the ability to pay attention to small details. Meth addicts love to blackmail other meth dealers.**

**A homeless meth addict mother of two was trying to pimp her teenage kid in a parking lot in Mission Bay. The very next morning this child was seen coming out of a meth dealer motorhome, and geting into her mothers car. This child was seen two weeks later in a Mission Bay parking lot, looking very very bad.**

**I have seen more than one homeless crystal meth dealers that live in their motorhomes that call themselves Pastors while holding a holy bible. They prey on runaway kids, and other tweakers kids, and some sick tweaker parents pimp their kids to the so called Pastors. These crystal meth pastors travel around the country and have runaway kids addicted to crystal meth with them in their motorhomes.**

A homeless meth family that live in a motorhome selling crystal meth on Mission Bay smoke Meth, cigarettes, marijuana in their motorhome with little or no ventilation. The tweaker parents bring in other tweakers male/female for group sex. Many tweakers have sex with the same sex. Two tweaker females were/are known to have sex with a dog. When the dog sees one of them, his thing pops out.

A van was burned down to the ground during 2006, because of tweaker(s) were trying to cook.

A body of a dead female was found in a Mission Bay parking lot with multiple stabbings. The body was in a trunk of a vehicle.

### High-Risk Sex Associated with Meth Use

### Effect on Sex Drive Makes Meth Appealing

A new aggressive strain of HIV that is related to methamphetamine use. (Coming Soon)

I myself grew up in San Diego and just like many, I too was using crystal meth as a teenager. I would say over 95% of the dealers that I bought crystal meth from in San Diego when I was a teenager were adults. The first time I was offered crystal meth was from an adult hanging around my school.(Yes, my school)

Crystal meth addicts and dealers have delusional disorders, hallucinations, disorganized speeches, grossly organized, catatonic behaviors, and in many ways have schizophrenia.

Crystal meth is made and used by rich people and poor people. Any idiot can make crystal meth, thats why there are homeless people in San Diego, California that make crystal meth in canyons, and in their motorhomes.

These crystal meth dealers are addicts and victims themselves, but two wrongs does not make a right, thats why you need to get involved and help stop this epidemic we have in San Diego, California. This WebSite will be updated with a page with license plate numbers, auto discriptions, names, and photos of crystal meth cooks and dealers in San Diego, County.

Legalization of marijuana would help crystal meth addicts to kick

**the crystal meth habit. I have seen it!**

**With the legalization of marijuana, crime would drop, demand for crystal meth and other drugs would drop, overall everybody wins.**

**This WebSite is to help Law Enforcement put a stop to crystal meth labs in San Diego, California.**

**This program is dedicated to the Kids in San Diego County.**



**In 1980, a group of policeman in Phoenix, Arizona fulfilled the wish of a seven year old Chris Greicius. Chris's one ambition in life was to be a policeman. The Arizona Department of Public Safety equipped him with a uniform, helmet and badge and made Chris an honorary patrolman. Chris died just days later from battling leukemia, and was buried in his uniform and given a police funeral with full honors. From that humble beginning, the Make-A-Wish Foundation spread throughout the country and abroad to become the largest wish granting organization in the world, with 74 chapters in the United States and 28 international affiliates.  Please donate to Make A Wish Foundation.**

- Senate Bill 91 deals with a related topic. It bans the practice of buying and selling telephone records without proper authorization by phone customers.

- House Bill 1149 seeks to address a problem in government that has been highlighted by scandals in Washington — influence peddling by lobbyists.

The bill requires all lobbyists working in Colorado to disclose what bills they are working on, who they are working for, and whether they oppose or support a bill. They also are required to record their connections with public officials.

- Senate Bill 51 bars elected officials from taking cash gifts from lobbyists, and it bans the use of so-called office accounts.

Some people argued that office accounts — so named because they were meant to create a funding source for lawmakers to run their offices — were a source of

unregulated cash gifts to lawmakers and were open to abuse.

- House Bill 1145 sets up a new task force that will be charged with examining laws dealing with methamphetamine and looking for ways to crack down on the drug.

The bill also makes it a child-abuse crime to manufacture meth in a house with a child present.

Copyright © 2005 - 2006 phawku2.com  All rights reserved.

EXHIBIT 3 - PAGE 8

1           THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF CALIFORNIA

2

3           HONORABLE JANIS L. SAMMARTINO
       UNITED STATES DISTRICT JUDGE PRESIDING

4  ------------------------------------------------

5

6  PACIFIC LAW CENTER, AND     )
    SOLOMON, WARD, SEIDENWURM &   )
    SMITH,                 )

7                    )
            PLAINTIFFS,   )

8                    )
    VS.               )  NO. 07-CV-0460-JLS

9                    )
    SHAHROKH SAADAT-NEJAD,    )

10                   )
         DEFENDANT.    )

11

12  ------------------------------------------------

13               MOTION HEARING

14  ------------------------------------------------

15

16

17        REPORTER'S TRANSCRIPT OF PROCEEDINGS
              JUNE 12, 2008

18           SAN DIEGO, CALIFORNIA

19

20

21

22        GAYLE WAKEFIELD, RPR, CRR
          OFFICIAL COURT REPORTER

23        UNITED STATES COURTHOUSE
      940 FRONT STREET, ROOM 3142

24     SAN DIEGO, CALIFORNIA 92101-8900
        PH: 619-239-0652

25       GAYLE5@SBCGLOBAL.NET

EXHIBIT 4  TOTAL OF 40 PAGES

```
1    APPEARANCES:

2    FOR THE PLAINTIFF:      EDWARD J. MCINTYRE
     SOLOMON WARD            SOLOMON WARD SEIDENWURM & SMITH, LLP
3                            401 B STREET, SUITE 1200
                             SAN DIEGO, CA   92101
4

5    FOR THE PLAINTIFF:      ROBERT F. CLARKE
     PACIFIC LAW             PHILLIPS & ASSOCIATES
6                            3030 N. THIRD STREET, SUITE 1100
                             PHOENIX, AZ  85012
7

8    FOR THE DEFENDANT:      SHAHROKH SAADAT-NEJAD
                             PRO SE
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    JUNE 12, 2008

2        THE COURT: NUMBER TWO ON THE CALENDAR, 07-CV-0460,

3    PACIFIC LAW CENTER VS. SAADAT-NEJAD, FOR PRETRIAL CONFERENCE.

4        MR. MCINTYRE: EDWARD MCINTYRE ON BEHALF OF SOLOMON

5    WARD.

6        MR. CLARKE: GOOD AFTERNOON, ROBERT CLARKE ON BEHALF

7    OF PACIFIC LAW CENTER. PLEASE EXCUSE MY LATE ARRIVAL.

8        THE COURT: WE GOT THE CALL THAT YOU WERE RUNNING

9    LATE, SIR, AND WE HAD ANOTHER MATTER SO THAT'S JUST FINE.

10        SIR, WOULD YOU STATE YOUR NAME FOR THE RECORD.

11        THE WITNESS: YES, MY NAME IS SHAHROKH SAADAT-NEJAD.

12    I'M THE DEFENDANT.

13        THE COURT: THANK YOU. PLEASE, EVERYBODY BE SEATED.

14        WE ARE HERE FOR PRETRIAL CONFERENCE, AND IT'S THE

15    COURT'S UNDERSTANDING THAT PLAINTIFFS ARE SEEKING TO TURN

16    JUDGE BURNS' PRELIMINARY INJUNCTION INTO A PERMANENT

17    INJUNCTION; IS THAT CORRECT, MR. MCINTYRE?

18        MR. MCINTYRE: THAT'S CORRECT, YOUR HONOR. WE'RE

19    WAIVING ANY CLAIM FOR EITHER ATTORNEY'S FEES OR MONEY DAMAGES.

20        MR. CLARKE: THAT'S CORRECT ON BEHALF OF PACIFIC LAW

21    CENTER, YOUR HONOR.

22        THE COURT: OKAY, VERY WELL. MR. SAADAT-NEJAD, ARE

23    YOU SEEKING ANY RELIEF OUT OF THIS MATTER?

24        MR. SAADAT-NEJAD: WELL, I HAVE A FEW DISPUTES. WHAT

25    I WOULD LIKE --

1      THE COURT:  NO, I KNOW YOU HAVE A FEW DISPUTES AND

2  WE'RE GOING TO GET TO THEM.  IS THERE ANY RELIEF THAT YOU'RE

3  ACTUALLY SEEKING?  YOU'RE DEFENDING THIS REQUEST FOR A

4  PERMANENT INJUNCTION, CORRECT?

5      MR. SAADAT-NEJAD:  YES, MA'AM.

6      THE COURT:  OKAY.  LET ME ASK YOU THIS, ARE THE

7  WEBSITES STILL UP, SIR?

8      MR. SAADAT-NEJAD:  THERE ARE EIGHT WEBSITES AND BLOGS

9  THAT HAVE BEEN SHUT DOWN, AND THEY HAVE BEEN SHUT DOWN FOR

10  REASONS THAT'S NOT KNOWN TO ME.  THERE WAS NO COURT ORDER FOR

11  ANY WEBSITES OR BLOGS TO BE SHUT DOWN.

12      THE COURT:  ANY OF THE WEBSITES THAT WERE THE SUBJECT

13  OF JUDGES BURNS' ORDER, ARE THOSE SHUT DOWN NOW?

14      MR. SAADAT-NEJAD:  THERE WAS NO ORDER.  ON DOCUMENT

15  NO. 51 --

16      THE COURT:  LET ME CONTINUE HERE, OKAY, MR. NEJAD.

17      MR. SAADAT-NEJAD:  OKAY.

18      THE COURT:  LET ME ASK PLAINTIFFS, WHAT IS YOUR

19  UNDERSTANDING OF THE WEBSITES THAT ARE CURRENTLY UP, IF YOU

20  KNOW?

21      MR. MCINTYRE:  LAST TIME I LOOKED, YOUR HONOR, THERE

22  ARE A COUPLE THAT I WOULD THINK OF AS DUBIOUS BUT -- THAT IS,

23  DUBIOUS, WHETHER THEY DO OR DO NOT VIOLATE JUDGE BURNS'

24  PRELIMINARY INJUNCTION ORDER, BUT WE HAVE NOT BOTHERED THE

25  COURT WITH THOSE.  I AM AWARE OF NO WEBSITE THAT IS A FLAGRANT

1   VIOLATION OF THE ORDER. I THINK THAT'S A FAIR STATEMENT WHERE

2   THINGS STAND.

3   THE COURT: OKAY. THE COURT HAS SPENT A GREAT DEAL OF

4   TIME REVIEWING THE RECORD IN THIS MATTER, INCLUDING THE AMICUS

5   BRIEF PREVIOUSLY FILED IN THIS MATTER AT THE FINAL DAYS OF MR.

6   NEJAD'S INCARCERATION FOR VIOLATION OF THE ORDER.

7   THE COURT FINDS THAT GRIPE SITES, SIMILAR TO MR.

8   NEJAD'S FORMER SITES, DON'T APPEAR TO VIOLATE THE LANHAM ACT

9   OR THE ANTI-CYBERSQUATING STATUTE. ON THE OTHER HAND, THE

10  COURT FINDS IT WOULD BE IMPERMISSIBLE TO CREATE SUCH WEBSITES

11  FOR THE SOLE PURPOSE OF EXTORTING MONEY. THIS INTENT TO

12  EXTORT WOULD LIKELY SATISFY THE BAD FAITH INTENT TO PROFIT

13  ELEMENT OF THE CYBERSQUATTING STATUTE.

14  WE'RE CUTTING TO THE CHASE HERE, FOLKS, IN THE COURT'S

15  COMMENTS, HAVING SPENT MANY HOURS REVIEWING THIS.

16  HERE FROM THE RECORD CURRENTLY BEFORE THE COURT IT IS

17  NOT CLEAR THAT THE DEFENDANT INTENDED TO EXTORT MONEY. MS.

18  PREVOST'S FEBRUARY 1, 2007 LETTER DEMANDS $500,000 IN EXCHANGE

19  FOR DOMAIN NAMES PREVIOUSLY IN DEFENDANT'S POSSESSION.

20  HOWEVER, DEFENDANT PROVIDED THE COURT WITH A SERIES OF E-MAILS

21  THAT SEEMS TO SUGGEST THAT MS. PREVOST WAS ENCOURAGING THE

22  DEFENDANT TO MAKE A DEMAND FOR MONEY AND THAT THE DEFENDANT

23  WAS RELUCTANT. THE COURT ALSO NOTES THAT DEFENDANT SEEMS TO

24  HAVE TERMINATED HIS RELATIONSHIP WITH MS. PREVOST BEFORE

25  FEBRUARY 1ST.

1    FURTHER, THE COURT RECOGNIZES THAT THE DEFENDANT, IN

2  HIS COURT FILINGS, HAS CONTINUED TO STRESS THAT HE DOES NOT

3  SEEK MONEY FROM PLAINTIFFS AND NEVER HAS.  DUE TO ALL OF THIS,

4  THE COURT THINKS THERE'S AN ISSUE AS TO WHETHER OR NOT MR.

5  SAADAT-NEJAD POSSESSED A BAD FAITH INTENT TO PROFIT.

6    MOREOVER, THIS BAD FAITH ELEMENT ALSO RAISES A

7  SEPARATE LEGAL ISSUE.  EVEN IF THE DEFENDANT DID SEEK TO

8  EXTORT MONEY FROM PLAINTIFF IN THE PAST, IS THE CORRECT REMEDY

9  TO PERMANENTLY ENJOIN HIM FROM CREATING SUCH GRIPE SITES IN

10  THE FUTURE?  CAN THE COURT JUSTLY ISSUE AN ORDER, EVEN IF

11  DEFENDANT DOES NOT HAVE ANY BAD FAITH INTENT TO PROFIT GOING

12  FORWARD?  AND THOSE ARE SIGNIFICANT CONCERNS.

13    NOW, WE ARE HERE AT PRETRIAL CONFERENCE, AND IT SEEMS

14  REMARKABLE TO THE COURT THAT THESE MATTERS HAVE NOT BEEN

15  RESOLVED.  I THINK MANY OF THEM CAN BE RESOLVED AS A MATTER OF

16  LAW, IF YOU WILL, AND WHAT I AM INCLINED TO SUGGEST AT THIS

17  POINT IS AN ORDER TO SHOW CAUSE RE A SUA SPONTE SUMMARY

18  JUDGMENT MOTION TO DISCUSS GRIPE SITES, BAD FAITH INTENT TO

19  PROFIT AND EXTORT MONEY, AND, BASICALLY, CAN A PRELIMINARY

20  INJUNCTION GO TOWARD FUTURE GRIPE SITES.  I'M NOT REALLY SURE

21  THAT AS A MATTER OF LAW IT CAN.

22    NOW, THERE ARE A NUMBER OF OTHER ISSUES THAT THIS

23  RAISES, BUT LET ME START WITH THAT.  IF YOU WANT TO COMMENT,

24  MR. MCINTYRE, GO AHEAD.  NOW, MR. NEJAD ASKED FOR SOME RELIEF

25  IN SOME OF HIS PAPERWORK BECAUSE I'VE SPENT A LOT OF TIME

1    GOING THROUGH THINGS, AND I'M PREPARED TO DISCUSS THAT IN JUST

2    A MOMENT, BUT IF YOU WANT TO COMMENT, GO AHEAD.

3         MR. MCINTYRE:  LET ME JUST DISTINGUISH, YOUR HONOR,

4    BECAUSE I THINK IT IS CRITICAL, AND IF YOUR HONOR HAD THE

5    OPPORTUNITY TO LOOK AT THE TRANSCRIPTS, I THINK WE MADE IT

6    CLEAR WHEN WE WERE IN FRONT OF JUDGE BURNS; WE ARE NOT TRYING

7    TO STOP MR. SAADAT-NEJAD FROM GRIPING.  I'VE SPENT 25-PLUS

8    YEARS AS A FIRST AMENDMENT LAWYER AND I RESPECT IT.  I AM NOT

9    TRYING TO STOP HIM FROM GRIPING IN ANY FASHION HE CHOOSES,

10   WHETHER IT BE OVER THE INTERNET OR CARRYING A PLACARD IN FRONT

11   OF THE COURTHOUSE.  HE HAS THE ABSOLUTE RIGHT TO SAY WHAT HE

12   WANTS TO SAY.  IT'S A UNIQUE RIGHT IN THIS COUNTRY.

13        WHAT HE DOESN'T HAVE THE RIGHT TO DO, HOWEVER, IS TO

14   MISAPPROPRIATE EITHER OUR SERVICE MARK, SOLOMON WARD OR

15   SOLOMON WARD SEIDENWURM & SMITH.  IT'S JUST A STRAIGHT-OUT

16   LANHAM ACT CLAIM.  AND HE ALSO DOES NOT HAVE THE RIGHT TO

17   MISAPPROPRIATE OUR DOMAIN NAME.

18        JUDGE BURNS, IF YOU MAY LOOK AT THE TEMPORARY

19   RESTRAINING ORDER AND WHAT I SOUGHT AND WHAT HE STRUCK OFF AND

20   INTERLINEATED IN THE ORDER, LATER A FULLY TYPED ORDER CAME

21   OUT, JUDGE BURNS WAS QUITE CAREFUL TO MAKE SURE, AND THE

22   COLLOQUIES THAT WENT ON FOR 40 MINUTES AT A SHOT MADE VERY

23   CLEAR -- BECAUSE I KNOW THE COURT'S READ THOSE -- MADE VERY

24   CLEAR THAT ALL JUDGE BURNS WAS ATTEMPTING TO STOP MR.

25   SAADAT-NEJAD FROM DOING WAS MISAPPROPRIATING OUR DOMAIN NAME

1      OR PACIFIC LAW CENTER'S DOMAIN NAME, EITHER LITERALLY OR, IF

2      YOU MAY REMEMBER, ONE OF THE INSTANCES ADDING AN EXTRA S,

3      PACIFIC LAW CENTERS.  SO IT'S NOT GRIPE SITES, IT'S

4      ANTI-CYBERSQUATTING.

5              THE COURT:  BUT AREN'T THERE CASES OUT THERE THAT TALK

6      ABOUT EXACTLY THAT, WHERE THERE'S ONE LETTER OFF, BUT BECAUSE

7      THERE'S NOT AN INTENT TO PROFIT -- I MEAN, IT'S NOT AS THOUGH

8      HE'S DIVERTING CLIENTS FROM PACIFIC LAW CENTER OR SOLOMON WARD

9      TO HIS LAW FIRM, THAT'S NOT THE INTENT TO CONFUSE.  THE INTENT

10     IS TO SAY HE WASN'T HAPPY WITH SOMEBODY'S SERVICES.  HE'S NOT

11     COMPETING.  HE'S NOT PROFITING.  GO WITH THE COURT FOR JUST A

12     MOMENT.

13             MR. MCINTYRE:  I AM, YOUR HONOR.

14             THE COURT:  THERE ARE CASES OUT THERE THAT BASICALLY

15     MAKE THAT DISTINCTION, AND THAT'S WHERE I THOUGHT WE WERE

16     LACKING, TO BE QUITE HONEST, COUNSEL, AND MR. SAADAT-NEJAD,

17     BECAUSE IF YOU CHOOSE TO REPRESENT, SIR, YOU'RE HELD TO THE

18     SAME STANDARD, AND I'M GOING TO EXCEPT YOU TO BRIEF AND DO

19     WHATEVER YOU NEED TO DO TO REPRESENT YOURSELF, SIR.  THAT'S

20     WHERE WE'RE LACKING IN A LITTLE BIT OF THE LEGAL ANALYSIS HERE

21     AS TO WHY THERE SHOULD BE THIS DISTINCTION.

22             I DON'T HAVE THE CITE RIGHT IN FRONT OF ME, BUT

23     THERE'S A CASE WHERE THERE'S ONE LETTER OFF, MUCH LIKE PACIFIC

24     LAW CENTER'S SITUATION, THEY SAID, "YOU KNOW WHAT, IT'S OKAY,"

25     FOURTH CIRCUIT, NINTH CIRCUIT.  THERE'S A COMBINATION OF

1    CIRCUITS. SO I'VE BEEN DOING SOME RESEARCH IN ANTICIPATION OF

2    TODAY BECAUSE I THOUGHT THIS WAS A TROUBLESOME CASE, BOTH IN

3    THE POSTURE IT CAME FORWARD AND GOING FORWARD, SO I THINK WE

4    NEED TO RESOLVE SOME OF THIS.

5         MR. MCINTYRE: I'LL BE HAPPY TO BRIEF IT, YOUR HONOR,

6    BUT I DO REMIND THE COURT THAT UNDER NINTH CIRCUIT LAW THERE

7    IS NO COMMERCIAL REQUIREMENT. HE DOESN'T HAVE TO SET UP A

8    COMPETING LAW FIRM. THAT'S EXACTLY WHAT THE CIRCUIT SAID IN

9    THE *CHRISTIANSEN* CASE.

10        THE COURT: EXACTLY.

11        MR. MCINTYRE: NO, I UNDERSTAND.

12        THE COURT: NO, I AGREE WITH THAT, BUT I THINK THERE

13   IS STILL THE ISSUE OF WHETHER OR NOT HE HAD A BAD FAITH INTENT

14   TO PROFIT OR EXTORT, IF YOU WILL.

15        MR. MCINTYRE: I UNDERSTAND, YOUR HONOR.

16        THE COURT: SO, I MEAN, I THINK THAT'S WHERE WE ARE.

17        MR. MCINTYRE: YOU ALSO HAD MR. SLATTERY'S DECLARATION

18   OF THE CONFERENCE IN OUR OFFICE, THE SO-CALLED BASEBALL BAT

19   CONFERENCE IN OUR OFFICE, AND PART OF THIS RECORD IS THE

20   DEMANDS MADE DURING THAT CONFERENCE.

21        OBVIOUSLY, WHAT WAS DONE IN FRONT OF JUDGE PORTER AT

22   THE SETTLEMENT CONFERENCE IS OFF LIMITS, BUT I'LL BE HAPPY TO

23   BRIEF BOTH OF THOSE ISSUES, YOUR HONOR, IF THE COURT WOULD

24   LIKE.

25        THE COURT: MY CONCERN AND THOUGHT IS THIS, AND THAT

1    IS, THIS COULD BE MORE FOCUSED IN GOING FORWARD.

2         I UNDERSTAND THE IMPORTANCE OF THIS.  I ALSO THINK A

3    VERY SIGNIFICANT ISSUE IS WHETHER OR NOT YOU HAVE ANY ABILITY

4    TO ENJOIN FUTURE GRIPE SITES.  I THINK THAT'S A SERIOUS

5    QUESTION.

6         MR. MCINTYRE:  AGAIN, THE DISTINCTION THAT I DREW FOR

7    THE COURT -- I'M NOT TRYING TO ENJOIN A FUTURE GRIPE SITE.  I

8    AM TRYING TO ENJOIN INTO THE FUTURE THE MISUSE OF OUR NAME

9    BECAUSE IF HE MISUSES IT AGAIN -- PRECISELY BECAUSE WE'RE

10   UNDER THE LANHAM ACT, PERMANENT INJUNCTIVE RELIEF IS THE

11   REMEDY PAR EXCELLENCE UNDER THE LANHAM ACT PRECISELY BECAUSE

12   YOU WANT TO STOP AND -- JUST TAKE A PLAIN JANE LANHAM ACT

13   CASE -- YOU WANT TO STOP THE DEFENDANT FROM MISUSE OF A

14   TRADEMARK OR SERVICE MARK.

15        THE WAY THE COURTS HAVE DONE IT SINCE THE LANHAM ACT

16   WAS PASSED, AND IT PROVIDES FOR INJUNCTIVE RELIEF, IS THOU

17   SHALT NOT USE THAT MARK ON INTO THE FUTURE.  WE'RE ASKING THE

18   SAME RELIEF UNDER THE ANTI-CYBERSQUATTING PROVISION OF THE

19   LANHAM ACT, THAT'S ALL.

20        THE COURT:  ARE THERE ANY VIOLATIONS OF JUDGE BURNS'

21   ORDERS AS WE SIT HERE THIS AFTERNOON?

22        MR. MCINTYRE:  NOT THAT I AM AWARE OF.  AS I TOLD THE

23   COURT, THERE WERE SOME LEANERS, BUT I WOULD NOT SAY THEY ARE

24   SO FLAGRANT THAT I WOULD BOTHER THE COURT WITH ANOTHER OSE.

25        THE COURT:  OKAY.  IS THERE ANY OPPOSITION, AND I'M

1    LOOKING TO MR. SAADAT, SO A VERY SPECIFIC ANSWER, TO

2    MAINTAINING THAT ORDER ON A PERMANENT BASIS?

3          MR. SAADAT-NEJAD:  YES, MA'AM.

4          THE COURT:  THERE IS?

5          MR. SAADAT-NEJAD:  IT'S THAT ORDER ITSELF THAT GOT

6    EIGHT WEBSITES AND BLOGS SHUT DOWN.  THEY'RE SEEKING TO SHUT

7    DOWN ANYTHING THAT I START UP.

8          THE COURT:  NO, THEY'RE NOT SEEKING TO SHUT DOWN

9    EVERYTHING THAT YOU START UP.  WHAT THEY'RE SEEKING TO SHUT

10    DOWN ARE THOSE THINGS THAT ARE IN VIOLATION OF JUDGE BURNS'

11    ORDER.  I WAS JUST ATTEMPTING TO SEE IF THERE WAS ANY

12    DISAGREEMENT ON THAT BECOMING PERMANENT.

13          MR. MCINTYRE:  IF THERE WAS NOT, YOUR HONOR, WE WOULD

14    BE OUT OF HERE.

15          MR. SAADAT-NEJAD:  YOUR HONOR, LIKE THE NAME PACIFIC

16    LAW CENTER, THE WORD "LAW" IS A COMMON WORD.  I MEAN, IF I

17    WERE TO HAVE PACIFIC BEACH LAW CENTER, WHICH I GUESS THERE IS

18    A LAW FIRM OUT THERE THAT'S CALLED THAT, THAT I SHOULD BE

19    ALLOWED TO DO THAT.  THEY'RE TRYING TO CONTROL WHAT WORDS I

20    CANNOT USE IN DOMAIN NAMES, LET ALONE IN A WHOLE URL.  THOSE

21    WEBSITES BEING SHUT DOWN FOR SINCE JULY OF LAST YEAR.  THE

22    ORDER THAT MR. BURNS GAVE -- JUDGE BURNS GAVE WAS THAT IT

23    SAYS, "THE COURT GRANTED IN PRINCIPAL PLAINTIFF'S REQUEST FOR

24    AN ORDER DIRECTING THE WEB CYCLES TO REMOVE SITES FOUND TO BE

25    IN VIOLATION OF THE PERMANENT INJUNCTION IN THIS CASE,

1    CONDITIONED UPON PLAINTIFF'S PROVIDING THE COURT WITH SPECIFIC

2    DOMAIN NAMES," AND THEY HAVE NOT PROVIDED THIS COURT WITH

3    ANYTHING.  THEY WENT AHEAD AND SOMEHOW MANAGED TO PERSUADE MY

4    HOSTING COMPANY TO SHUT DOWN EIGHT OF MY SITES.

5         THE COURT:  I THINK YOU'RE MAKING SOME ASSUMPTIONS.  I

6    DON'T KNOW EXACTLY WHAT'S HAPPENED, AND YOU MAY NOT EITHER,

7    BUT YOU'VE ANSWERED MY QUESTION.  YOU HAVE AN OBJECTION TO

8    JUDGE BURNS' ORDER BECOMING PERMANENT.

9         HAVE A SEAT, MR. NEJAD, BECAUSE I'M GOING TO TAKE A

10   MOMENT TO ADDRESS SOME THINGS THAT YOU HAVE REQUESTED IN SOME

11   OF YOUR PAPERWORK TO THIS COURT.

12        YOU'VE ASKED THIS COURT TO ORDER THE FBI AND THE

13   DEPARTMENT OF JUSTICE TO FULLY INVESTIGATE THE ALLEGED CRIMES

14   COMMITTED BY PLAINTIFFS AND THE SAN DIEGO POLICE DEPARTMENT.

15   THIS COURT DOES NOT HAVE THE POWER TO DIRECT OR ORDER THE FBI

16   OR THE DEPARTMENT OF JUSTICE TO INVESTIGATE ANY ALLEGED CRIMES

17   OR CORRUPTION, AS YOU MAY REQUEST, AND THAT REQUEST IS

18   ACCORDINGLY DENIED.

19        SECONDLY, YOU ASKED THE COURT TO ORDER GODADDY.COM TO

20   RETURN EIGHT DIFFERENT DOMAIN NAMES TO YOU.  SINCE GODADDY.COM

21   IS NOT A PARTY TO THIS ACTION, THIS COURT DOES NOT HAVE ANY

22   BASIS TO ORDER IT TO RETURN DOMAIN NAMES, AND, THEREFORE, THE

23   COURT HAS TO DENY THAT REQUEST ALSO.

24        YOU'VE ALSO ASKED THIS COURT TO GRANT A CONTEMPT OF

25   COURT HEARING AGAINST THE PLAINTIFFS, AND THE COURT SEES NO

1    REASON TO HOLD SUCH A HEARING, AND THAT REQUEST IS ALSO

2    DENIED.

3         YOU'VE ASKED THE COURT FOR PERMISSION TO FILE MORE

4    THAN TEN PAGES ON SOME OF THE DOCUMENTS THAT NEED TO BE FILED,

5    AND YOUR FUTURE RESPONSES WILL NOT BE LIMITED TO TEN PAGES,

6    NOR WILL THE PLAINTIFFS, AND WE CAN DISCUSS THE APPROPRIATE

7    PAGE LIMIT, BUT I WILL GRANT THAT REQUEST.  THAT'S A

8    REASONABLE REQUEST AND ONE THAT I CAN GRANT AND HAVE AUTHORITY

9    TO.

10        YOUR FINAL REQUEST IS YOU'RE ASKING THIS COURT TO HOLD

11   A MOTION TO DISMISS ALL OF THIS, AND I WOULD SUGGEST TO YOU,

12   SIR, THAT YOU CAN BRING THOSE ISSUES BEFORE THE COURT IN THE

13   CONTEXT OF THE ORDER TO SHOW CAUSE HEARING THAT I'M WILLING TO

14   HAVE.  THE PLAINTIFFS ARE GOING TO FILE WHAT MIGHT BE A

15   POTENTIALLY CASE-ENDING MOTION.  I WOULD NORMALLY SAY

16   DISPOSITIVE MOTION OF THE ISSUES, SOMETHING THAT COULD END

17   THIS CASE THROUGH THAT MOTION, AND YOU, THROUGH YOUR MOTION TO

18   DISMISS, ARE ASKING TO BRING A MOTION THAT COULD END THIS CASE

19   ALSO, DIFFERENT WAYS, AND I'M HAPPY TO ENTERTAIN THAT.

20        I HOPE SOMEBODY HAS INDICATED TO YOU AND -- I'VE READ

21   LARGE PORTIONS OF WHAT HAS GONE ON IN FRONT OF JUDGE BURNS TO

22   GET A SENSE OF THIS MATTER.  I HOPE SOMEWHERE ALONG THE LINE

23   IT HAS BEEN INDICATED TO YOU, SIR, THAT BY SELF-REPRESENTING

24   COMING IN HERE YOU ARE HELD TO THE SAME STANDARDS THAT THE

25   PLAINTIFFS ARE HELD TO AS ATTORNEYS PRACTICING LAW BEFORE THIS

1    COURT. AND IT'S A TOUGH STANDARD BECAUSE, AS MR. MCINTYRE HAS

2    INDICATED, HE'S AN ATTORNEY OF MANY YEARS EXPERIENCE, AND I'M

3    SURE THE OTHER COUNSEL IS ALSO, SO IT'S A DIFFICULT STANDARD.

4    YOU DON'T HAVE THE BENEFIT OF A LEGAL EDUCATION OR DOING THIS

5    ON A DAILY BASIS. BUT THE LAW DOESN'T SAY THAT I CAN MAKE

6    EXCEPTIONS FOR PEOPLE WHO SELF-REPRESENT.

7    AND YOU ALSO NEED TO UNDERSTAND THAT I AM NEUTRAL IN

8    THIS. I CAN'T ASSIST EITHER SIDE. I JUST CALL A NEUTRAL,

9    FAIR CALL BASED ON THE LAW, THAT I DON'T MAKE AND I DON'T

10   WRITE, IT'S GIVEN TO ME BY CONGRESS AND CASE AUTHORITY THAT

11   COMES TO THE COURT BY HIGHER COURTS.

12   SO YOU'VE GOT A HEAVY BURDEN, AND I JUST WANTED THAT

13   TO BE ON THE RECORD. I NOTE FROM READING THE RECORD YOU'RE

14   BRIGHT, YOU UNDERSTAND THIS, BUT YOU STILL HAVE A HEAVY, HEAVY

15   BURDEN.

16   WHAT I WOULD LIKE TO DO, AND I'M WILLING TO HEAR IF

17   PACIFIC LAW CENTER WANTS TO STEP IN AND SAY ANYTHING AT THIS

18   POINT, BECAUSE I KNOW IT ALL STARTED WITH YOU AND THEN SOLOMON

19   WARD GOT INVOLVED IN THIS. I MEAN, IT DID START WITH PACIFIC

20   LAW CENTER, CORRECT?

21   MR. CLARKE: THAT'S CORRECT, YOUR HONOR.

22   THE COURT: MY THOUGHT IS BEST TO RESOLVE MR.

23   SAADAT-NEJAD'S MOTION TO DISMISS, AND HIS CONCERNS ON THAT, TO

24   RESOLVE THE ISSUES THAT THE COURT RAISES WITH REGARD TO THE

25   LEGAL ISSUES, BASED ON THE CASES THAT I HAVE READ THUS FAR,

1    THAT WE WOULD SET AN OSE ON, BASICALLY, WHAT I'M GOING TO CALL

2    A SUA SPONTE SUMMARY JUDGMENT MOTION.  IT WOULD INCLUDE MR.

3    NEJAD'S MOTION TO DISMISS.

4         I'M GOING TO GIVE A LITTLE LATITUDE HERE SO THAT WE

5    CAN GET THIS ALTOGETHER.  IF IT'S CAPABLE OF BEING RESOLVED IN

6    THAT FASHION, SO BE IT.  IF IT'S NOT, WE'LL TAKE IT FROM

7    THERE.  I WOULD LIKE TO HEAR YOUR THOUGHTS, SIR.

8         MR. CLARKE:  I THINK THAT'S AN EXCELLENT APPROACH,

9    YOUR HONOR.  I HAVE NOTHING ADDITIONAL TO ADD TO MR. MCINTYRE.

10   I THINK THAT IT PROBABLY ALLOWS US OR FORCES US TO NARROW DOWN

11   WHAT WE'RE ACTUALLY ASKING THE COURT TO PERMANENTLY ENJOIN AND

12   IT GIVES MR. NEJAD AN OPPORTUNITY TO PRESENT WHATEVER HE WANTS

13   TO PRESENT IN HIS MOTION TO DISMISS.  I THINK THAT'S THE BEST

14   WAY TO APPROACH THIS.

15         THE COURT:  I'M NOT GOING TO SUGGEST THAT ANYBODY DO

16   ANYTHING TO RESOLVE THIS MATTER, BUT IT DOES STRIKE ME, AND I

17   JUST FEEL COMPELLED TO SAY THIS, MR. NEJAD AND MR. MCINTYRE

18   AND MR. CAMPBELL -- I'M SORRY, MR. CLARKE, THAT THIS CRIES OUT

19   FOR RESOLUTION.  I MEAN, NOBODY'S INFRINGING ON ANYBODY'S

20   RIGHT TO BE HEARD, TO COMPLAIN OR GRIPE OR EXPRESS THEIR VIEW,

21   IT JUST NEEDS TO BE DONE IN A CERTAIN WAY WITHIN THE CASE LAW,

22   WITHIN THE STATUTORY LAW.  I THINK IT COULD BE FRAMED IN A WAY

23   THAT'S WORKED OUT, BUT I KNOW YOU'VE TRIED THAT.  YOU TRIED

24   THAT WITH ONE OF OUR MAGISTRATE JUDGES, APPARENTLY THERE WAS A

25   MEETING IN YOUR OFFICE.

1          MR. MCINTYRE:  THERE WAS, YOUR HONOR.

2          THE COURT:  WITH REGARD TO THAT, AND IT DIDN'T GO

3    PARTICULARLY WELL, SO I'M NOT GOING TO SUGGEST THAT, BUT I DO

4    THINK THE LAW WARRANTS THAT WE FOCUS THIS A LITTLE BIT MORE

5    AND TRY TO NARROW IT DOWN BEFORE WE PUT, I THINK, THE COMBINED

6    TOTAL WAS SOME 10 TO 12 LAWYERS ON THE WITNESS STAND, AND WE

7    NEVER EVEN GOT TO THE ISSUE, MR. MCINTYRE, THAT YOU WERE

8    LISTING YOURSELF AS A WITNESS, WHICH CAUSED THE COURT NO

9    CONSIDERABLE CONCERN.  I MEAN, I THINK THAT'S A VERY UNIQUE

10   APPROACH, SIR, AND ONE THAT I REALLY WOULDN'T WANT TO

11   ENTERTAIN, IF AT ALL POSSIBLE.

12         AND THEN THAT -- SO I HAD NO IDEA WHAT THE TIME

13   ESTIMATE WAS.  WE HAVEN'T EVEN GOTTEN TO THE PRE-HEARING

14   ISSUES BECAUSE I THINK THAT THIS IS A BETTER APPROACH, AND

15   I'LL HEAR FROM ANY OF YOU.

16         MR. SAADAT-NEJAD:  IF I MAY, YOUR HONOR?

17         THE COURT:  CERTAINLY, GO AHEAD.

18         MR. SAADAT-NEJAD:  YOUR HONOR, ON THE CONTEMPT

19   HEARING, I TOLD JUDGE BURNS THAT THE PLAINTIFFS HAVE

20   FABRICATED, THEY'VE MANUFACTURED WEB NAMES, DOMAIN NAMES,

21   ALLEGING THAT I'VE VIOLATED THE COURT ORDER.  I ASKED JUDGE

22   BURNS TO PLEASE PROVIDE THE COURT WITH AN INTERNET SO WE --

23   AND WE CAN LOOK UP THESE DOMAIN NAMES.  THE JUDGE DENIED IT.

24   AND I ASK AGAIN THIS COURT TO HAVE INTERNET IN HERE BECAUSE

25   THE LATEST PAPERWORK THAT THE PLAINTIFFS HAVE FILED, BOTH OF

1　THEM, THEY HAVE JUST MANUFACTURED DOMAIN NAMES THAT DO NOT

2　EXIST, AT LEAST THEY'RE NOT EVEN IN MY NAME. FROM THE VERY

3　BEGINNING, THEY'RE JUST MANUFACTURING EVIDENCE. THEY CAN TYPE

4　UP ANYTHING THEY WANT ON PAPER AND THEY FILE IT IN COURT,

5　INCLUDING THE STATE COURT ACROSS THE STREET, AND THE COURT HAS

6　BEEN ACCEPTING IT AS IF IT'S LEGITIMATE OR AUTHENTICATED.

7　NONE OF IT HAS BEEN AUTHENTICATED.

8　　　　THE COURT: YOU RAISE A GOOD QUESTION, WHAT HAPPENED

9　AT STATE COURT? IS THAT CASE OVER, MR. NEJAD?

10　　　　MR. CLARKE: YOUR HONOR, IF I MAY.

11　　　　THE COURT: SURE.

12　　　　MR. CLARKE: WE FILED A REQUEST TO DISMISS THAT CASE,

13　AND IT HAS BEEN DISMISSED.

14　　　　THE COURT: OKAY.

15　　　　MR. SAADAT-NEJAD: IF THIS COURT WERE TO GRANT FOR

16　THIS CASE TO GO TO A JURY TRIAL, THE EXACT SAME THING IS GOING

17　TO HAPPEN WITH THE STATE COURT. THEY'RE GOING TO DROP OUT.

18　THEY DON'T WANT THIS TO GO TO A JURY TRIAL.

19　　　　THE COURT: I DON'T THINK -- AND THAT'S ANOTHER ISSUE

20　THAT'S ON MY LIST, IF WE GET THERE. I DON'T THINK THERE'S A

21　RIGHT TO A JURY TRIAL.

22　　　　MR. SAADAT-NEJAD: THERE IS.

23　　　　MR. MCINTYRE: NO, I'M ACTUALLY AGREEING WITH THE

24　COURT. WE HAVE NOTHING BUT A COMPLAINT AND AN ANSWER.

25　THERE'S NO COUNTER-CLAIM. SINCE ALL THAT WE ARE ASKING FOR AT

1  THIS POINT IS EQUITABLE RELIEF, I THINK THAT'S PURELY A BENCH

2  ISSUE, YES, YOUR HONOR.

3  THE COURT:  THERE REALLY ISN'T A RIGHT IN FEDERAL

4  COURT, THE WAY THIS IS CURRENTLY FRAMED, FOR A JURY TRIAL.

5  WHAT IT WAS GOING TO BE WAS GOING TO BE A TRIAL IN FRONT OF

6  THE COURT.

7  MR. SAADAT-NEJAD:  CAN THE COURT HAVE THE INTERNET IN

8  HERE SO WE CAN -- SO I CAN SHOW THE COURT THAT THESE WEBSITES

9  DO NOT EXIST.  THEY HAVE MANUFACTURED FROM 12 MONTHS AGO UP

10  UNTIL NOW.  THE LATEST PAPERWORK -- I MEAN, THERE'S WEBSITES

11  IN THERE THAT DO NOT EXIST, BUT THEY'RE ALLEGING THAT THEY'RE

12  MINE.  IT'S ALL FABRICATED.

13  THE COURT:  WE'LL NEED TO HAVE SOME SORT OF DEFINITION

14  OF WHAT WE'RE TALKING ABOUT.  GO BACK AND LOOK AT JUDGE BURNS'

15  ORDER, AND THAT'S WHAT WE'RE TALKING ABOUT HERE, SIR, IS JUDGE

16  BURNS' ORDER.  BUT I DON'T KNOW IF WE CAN HOOK UP TO THE

17  INTERNET IN HERE, WE PROBABLY COULD, BUT THAT ASIDE, NOBODY IS

18  IN HERE TO TRY TO TRICK ANYBODY OR DO ANYTHING.  THEY FEEL

19  THEY HAVE A LEGITIMATE RIGHT TO THEIR DOMAIN NAMES, AND

20  WHATNOT, AND YOU, SIR, HAVE A LEGITIMATE RIGHT TO COMPLAIN.  I

21  READ A LOT OF WHAT WENT ON BETWEEN YOURSELF AND JUDGE BURNS SO

22  I KNOW HE TOLD YOU YOU CAN CARRY A PLACARD, AND YOU CAN DO

23  ANYTHING YOU WANT TO DO, BUT NOT INFRINGE ON THEIR AREA.

24  I'M RAISING AN ISSUE WITH REGARD TO THAT AND THE

25  INTENT TO PROFIT AND EXTORT, AND I THINK THAT'S THE SPECIFIC

1    ISSUE HERE, WHETHER THE ONE LETTER OFF ON PACIFIC LAW CENTERS,

2    AS LONG AS IT'S NOT COMPETING WITH THE LAW FIRM, WHETHER OR

3    NOT, UNDER THE CASE LAW OF THIS CIRCUIT, THERE'S AN ISSUE

4    THERE.  IT'S SPECIFIC, SIR, AND IT'S TECHNICAL.

5         MR. SAADAT-NEJAD:  BUT WHY DO THEY GET TO GET AWAY

6    WITH MANUFACTURING FALSE EVIDENCE?  MR. CLARKE HIMSELF, HE HAS

7    BEEN FOUND GUILTY ON SIMILAR THINGS, MISREPRESENTING $27,000

8    OF FUNDS.  I LOOKED HIM UP ON THE CALIFORNIA BAR.  BUT IT DOES

9    COUNT AS FAR AS ALLEGATIONS ABOUT THEM, THEY KEEP DOING THIS.

10   FOR YEARS THEY'RE MISLEADING THE COURTS.  HIS BOSS DOESN'T

11   EVEN HAVE A CALIFORNIA BAR LICENSE.  I WRITE ABOUT IT, AND

12   THEY GO AND SHUT DOWN THE WEBSITE.

13        THE COURT:  SIR, WE'RE GOING TO STICK WITH THE FACTS

14   OF THIS CASE, OKAY?  I CAN'T GET INTO ANY OTHER THINGS THAT

15   MAY HAVE GONE ON.  WE'VE GOT OUR HANDS FULL WITH JUST YOUR

16   CASE, AND THE CASE THAT THEY HAVE BROUGHT AGAINST YOU.  I

17   MEAN, WE'VE GOT OUR HANDS FULL TO DETERMINE WHAT THE

18   APPROPRIATE LAW WILL BE AS IT WILL BE BROUGHT TO THE FACTS OF

19   THIS CASE AS THIS COURT DETERMINES THEM TO BE.

20        NOBODY'S GOING TO GET AWAY WITH ANYTHING.  I MEAN,

21   WE'RE ATTEMPTING TO SORT THIS OUT, AND BY VIRTUE OF PUTTING

22   EVERYBODY THROUGH A BRIEFING ON SOME SPECIFIC ISSUES, I THINK

23   IT WILL BE BENEFICIAL TO ALL OF US.

24        WHAT I THINK WOULD PROBABLY BE BEST IN THIS WOULD BE

25   FOR THE COURT TO DRAFT AN ORDER AND THE SPECIFIC ISSUES THAT

1    ARE TO BE ADDRESSED IN THE ORDER.  I'LL SET A BRIEFING

2    SCHEDULE FOR EVERYBODY AND SEE WHERE WE ARE.  I'M NOT GOING TO

3    SET A HEARING DATE UNTIL I DETERMINE WHETHER OR NOT WE NEED A

4    FUTURE HEARING DATE OR WHETHER THE MATTER CAN BE, YOU KNOW,

5    RESOLVED ON THE PAPERS.  I'M NOT CERTAIN WHICH WAY THE COURT

6    WILL GO AT THIS JUNCTURE.

7         I WANT TO MAKE SURE THAT I'VE ANSWERED EVERYBODY'S

8    QUESTIONS AS TO WHERE WE'RE GOING AND WE'LL TAKE IT FROM

9    THERE, BUT WE NEED TO TAKE AN INTERMEDIARY STEP, IN THIS

10   COURT'S MIND, BEFORE WE GET TO PUTTING WITNESSES ON.

11        MR. MCINTYRE:  THAT'S FINE.

12        MR. SAADAT-NEJAD:  WILL YOUR HONOR PLEASE GIVE AN

13   ORDER FOR THE INTERNET TO BE HERE ON THE NEXT COURT HEARING?

14        THE COURT:  WELL, NUMBER ONE, I DON'T KNOW WHEN THAT

15   HEARING'S GOING TO BE.  NUMBER TWO, I DON'T KNOW IF IT'S

16   NECESSARY.

17        CAN EITHER OF YOU COMMENT ON WHAT HE'S SAYING AS

18   OPPOSED TO SHUTTING DOWN SITES THAT WEREN'T -- I'VE GONE ON

19   THE INTERNET, SIR, AND I'VE LOOKED UP SOME OF THE NAMES THAT

20   ARE IN QUESTION HERE.

21        MR. SAADAT-NEJAD:  OKAY.

22        THE COURT:  I KNOW I'M PROBABLY NOT AS KNOWLEDGEABLE

23   AS YOU ARE OR PLAINTIFFS ARE ON THIS MATTER, BUT I'M LEARNING

24   A LOT, AND I THINK SOME OF THEM ARE DOWN, BUT THEY'RE CACHED,

25   DOES THAT MAKE SENSE TO EVERYBODY?  THEY'RE STORED IN SOME

1    FASHION.

2         MR. MCINTYRE:  THAT'S RIGHT.

3         THE COURT:  SO I THINK IF WE HAD A CLEAR DEFINITION OF

4    WHAT WE'RE TRYING TO ACHIEVE WOULD BE A GOOD STARTING POINT,

5    AND I THINK WE REALLY DO HAVE THAT IN JUDGE BURNS' ORDER, BUT

6    GO AHEAD, MR. MCINTYRE.

7         MR. MCINTYRE:  OKAY.  A COUPLE THINGS, YOUR HONOR.

8    OBVIOUSLY, GODADDY.COM, OR ANY OF THE OTHER PROVIDERS, ARE NOT

9    BEFORE THE COURT, AND WE HAVE NO CONTROL OVER WHAT THOSE

10   PROVIDERS DO OR DON'T DO.  I THINK -- FRANKLY, I KNOW, WERE I

11   COUNSEL TO GODADDY.COM OR SOME OTHER PROVIDER, WHAT I WOULD DO

12   AND THAT IS I WOULD COUNSEL MY CLIENT THAT IF THERE IS A

13   QUESTION OF WHETHER YOU ARE IN SOME SENSE FACILITATING THE

14   VIOLATION OF A FEDERAL COURT'S ORDER, YOU'RE BETTER OFF NOT

15   HOSTING A SITE THAN HOSTING IT.  THAT WOULD BE SIMPLY A MATTER

16   OF LEGAL PRUDENCE AND BUSINESS PRUDENCE.

17        TO THE EXTENT -- I'LL USE EBAY AS AN EXAMPLE.  TO THE

18   EXTENT THAT EBAY IS TOLD, "OH, BY THE WAY, SOMEBODY IS

19   ATTEMPTING TO DO BUSINESS IN COUNTERFEIT GOODS," EBAY SHUTS

20   THEM DOWN, SIMPLY BECAUSE EBAY DOESN'T WANT TO BE CONCERNED

21   WITH IT, BUT WE HAVE NO POWER OVER WHAT GODADDY.COM DOES OR

22   DOESN'T DO.

23        THE COURT:  SO TO THE BEST OF YOUR KNOWLEDGE, YOU'VE

24   TAKEN NO ACTIONS ON BEHALF OF YOUR CLIENT TO DO ANYTHING TO

25   SHUT DOWN WEBSITES.

1            MR. MCINTYRE:  NOT RECENTLY.  WHEN JUDGE BURNS FIRST

2      ISSUED HIS ORDER, THERE IS THE ICANN PROCEDURE THAT IS SET UP

3      AND WE FILED A CLAIM WITH ICANN, WHICH IS INDEPENDENT OF

4      GODADDY.COM OR EBAY OR ANYBODY ELSE, IT IS THE NATIONAL AND

5      INTERNATIONAL JURISDICTIONAL AGENCY THAT DEALS WITH DOMAIN

6      NAMES AND RIGHTS TO DOMAIN NAMES.  WE FILED A COMPLAINT WITH

7      ICANN, CONTEMPORANEOUSLY ACTUALLY WITH FILING THIS LAWSUIT,

8      ICANN GAVE NOTICE, BECAUSE I GOT A COPY OF IT, TO MR.

9      SAADAT-NEJAD, AND ICANN, OF ITS OWN, THEN PROCEEDED TO

10     ADJUDICATE THE OWNERSHIP OF, IN OUR INSTANCE, TWO WEBSITES,

11     SWSSLAW.COM AND SOLOMONWARD.COM.  THEY'RE REGISTERED TO US.

12     WE PAID FOR THEM.  WE PAY FOR THEM ANNUALLY.  WE OWN THEM, AND

13     ICANN DETERMINED THAT WE OWNED THEM.  THAT WAS THE ONLY ACTION

14     THAT I'M AWARE OF THAT WE TOOK WITH RESPECT TO ANYONE, AND

15     THAT WAS, AGAIN, WITH THE INDEPENDENT ADMINISTRATIVE AGENCY

16     SET UP TO POLICE THE USE OF DOMAIN NAMES.

17            ONE QUESTION I DID HAVE, YOUR HONOR, WHAT YOUR HONOR

18     REALLY ENVISIONS IS ESSENTIALLY A SUMMARY JUDGMENT PROCEEDING,

19     ESSENTIALLY, WITH THE QUESTIONS THAT YOU WANT ANSWERED?

20            THE COURT:  I WANT TO BROADEN IT A LITTLE BIT BECAUSE

21     MR. SAADAT-NEJAD ASKED TO BRING A MOTION TO DISMISS, AND I

22     THINK THAT'S APPROPRIATELY ENTERTAINED IN THE SAME CONTEXT.

23            MR. MCINTYRE:  THAT'S FINE.

24            THE COURT:  BECAUSE THE MOTION THAT I'M SUGGESTING

25     COULD END ALL OR PART OF THIS LITIGATION.  YOUR MOTION COULD

1    END ALL OR PART OF IT, AND WE WILL DEAL WITH THE OUTCOME OF

2    IT.

3            MR. MCINTYRE:  ESSENTIALLY, WE'LL HAVE CROSS-MOTIONS.

4            THE COURT:  WE'LL HAVE CROSS-MOTIONS.  I THINK THE

5    LEGAL ISSUES ARE SIGNIFICANT ENOUGH TO WARRANT THAT.

6            MR. SAADAT-NEJAD:  YOUR HONOR.

7            THE COURT:  YES, SIR.  WAIT, LET'S SEE IF MR. MCINTYRE

8    IS FINISHED.

9            MR. SAADAT-NEJAD:  YES, YOUR HONOR.

10            MR. MCINTYRE:  I JUST HAD ONE OTHER POINT.  AS WE HAD

11    IN THIS CASE A RELATIVELY COMPLICATED SERVICE PROTOCOL WHERE

12    WE HAVE TO FEDEX TWO COPIES OF THE SAME THING TO AN ADDRESS

13    THAT MR. SAADAT-NEJAD GAVE US, THERE HAS BEEN SITTING, SINCE

14    MAY 28TH, AT OUR RECEPTIONIST, THE EXHIBITS, AND I JUST

15    WANT -- WHICH HE HAD NOT PICKED UP.  I LEFT HIM A COUPLE OF

16    VOICE MESSAGES.  I JUST WANT TO MAKE SURE THAT HE GETS THEM,

17    AND I'M GIVING THEM TO HIM NOW IN OPEN COURT.  THEY WERE THE

18    EXHIBITS THAT WE IDENTIFIED ON OUR DRAFT OF THE FINAL PRETRIAL

19    ORDER, YOUR HONOR.  SO THAT WAS THE ONLY OTHER POINT I WANTED

20    TO MAKE, SO HE HAS THE EXHIBITS.

21            THE COURT:  OKAY, THANK YOU.

22            MR. MCINTYRE:  THANK YOU.

23            THE COURT:  ONE OTHER THING, BECAUSE I HAVE GONE TO

24    THE INTERNET, I DO KNOW THERE ARE NUMEROUS -- IF YOU PUNCH IN

25    PACIFIC LAW CENTER ON GOOGLE SEARCH OR YAHOO SEARCH, YOU GET

1   NUMEROUS THINGS UP, SOME MAY BE RELEVANT TO PACIFIC LAW CENTER

2   OR SOLOMON WARD, BUT I'M GOING TO TALK ABOUT PACIFIC LAW

3   CENTER, BUT OTHERS ARE NOT, AND THEY'RE NAMES THAT HAVE NO

4   RELATIONSHIP TO PACIFIC LAW CENTER BUT THE BODY HAS

5   INFORMATION ON PACIFIC LAW CENTER.  WE'RE NOT TALKING ABOUT

6   THOSE, CORRECT?

7           MR. CLARKE:  NO, WE'RE NOT, YOUR HONOR.

8           MR. MCINTYRE:  CORRECT, YOUR HONOR, THAT'S CONTENT AS

9   OPPOSED TO THE DOMAIN NAME.

10          THE COURT:  CORRECT.  AND I THINK SOME OF THOSE BELONG

11  TO MR. SAADAT-NEJAD, CORRECT?

12          MR. SAADAT-NEJAD:  I HAVE 40 OF THEM UP RIGHT NOW.

13          THE COURT:  OKAY, THAT'S WHAT I THOUGHT.  SO THERE'S

14  NOTHING ABOUT THIS -- AND I WANT TO MAKE THAT CLEAR, THERE'S

15  NOTHING ABOUT THIS LITIGATION THAT IMPACTS YOUR ABILITY TO DO

16  THAT.

17          SO I WENT TO GOOGLE, I WENT TO YAHOO, AND I TYPED IN

18  PACIFIC LAW CENTER, IT DIDN'T MATTER IF IT HAD AN S, WITH AN

19  S, WITHOUT AN S, WHATEVER, AND YOUR SITE CAME UP, AND SO DID

20  YOUR SITES.  YOUR SITES HAD THE REFERENCES IN THE TEXT, NOT IN

21  THE DOMAIN NAME.

22          MR. SAADAT-NEJAD:  YES, AND -- NOT IN THE DOMAIN NAME,

23  BUT EIGHT OF MY WEBSITES AND BLOGS, WHICH INCLUDES

24  USHOSTAGE.COM.

25          THE COURT:  WHICH INCLUDES WHAT?

1    MR. SAADAT-NEJAD: A DOMAIN NAME CALLED USHOSTAGE.COM.

2    THE COURT: USHOSTAGE?

3    MR. SAADAT-NEJAD: YES. THEY HAVE BEEN SHUT DOWN BY

4    GODADDY.COM. GODADDY CONTACTED ME AND TOLD ME THAT THEY HAD

5    BEEN CONTACTED BY THE SOLOMON WARD SEIDENWURM & SMITH OFFICE,

6    MORE SPECIFICALLY BY A GENTLEMAN BY THE NAME OF MR. KAMMER --

7    KRAMER, I BELIEVE IS HIS NAME. HE'S AN ATTORNEY WITH THE

8    FIRM. HE HAS ENCOURAGED GODADDY.COM TO SHUT DOWN THOSE EIGHT

9    WEBSITES, AND I HAVE SAVED THOSE E-MAILS, WHICH I WILL BRING

10   IN.

11   THE COURT: LET ME STOP YOU. WITHOUT HEARING THIS

12   FROM YOU, I WOULDN'T HAVE THOUGHT THAT THAT WAS WITHIN THE

13   SCOPE OF THIS LITIGATION. DOES THE CONTENT OF THOSE WEBSITES

14   RELATE TO PACIFIC LAW CENTER AND SOLOMON WARD?

15   MR. SAADAT-NEJAD: ONLY IN THE BODY, NOT IN THE DOMAIN

16   NAMES.

17   THE COURT: WELL, MR. MCINTYRE, DO YOU KNOW ANYTHING

18   ABOUT THIS?

19   MR. MCINTYRE: THE ONLY THING I KNOW ABOUT ARE THE

20   ICANN PROCEEDINGS, YOUR HONOR, AND NOT GODADDY.COM.

21   THE COURT: OKAY, SO HE'S GOING TO LOOK INTO THAT.

22   HE'S GOING TO HAVE TO LOOK INTO THAT BECAUSE HE DOESN'T KNOW.

23   I DON'T DISBELIEVE WHAT YOU'RE SAYING, SIR, BUT THIS GETS A

24   LITTLE BIT CONFUSING. YOU'VE GOT 40 OF THESE THINGS OUT

25   THERE.

```
 1              MR. SAADAT-NEJAD:  MA'AM, HE'S MISLEADING THE COURT IS

 2      WHAT HE'S DOING.  HE'S VERY WELL OF WHAT HAPPENED, WHAT THEY

 3      DID TO GET THE EIGHT WEBSITES SHUT DOWN.  THEY KNOW THAT THAT

 4      SPECIFIC DOMAIN NAME, USHOSTAGE.COM, MEANT A LOT TO ME.  IT

 5      REALLY DID.  IT'S GOT PICTURES OF RABBIS USING CHEMICAL BOMBS

 6      ON LEBANESE, AND THEY DON'T LIKE THAT.  THAT'S WHAT THEIR

 7      FOCUS WAS.  NOWHERE IN THE URL DID IT SAY PACIFIC LAW CENTER

 8      OR SOLOMON WARD OR EVEN THE WARD ATTORNEY.  I WROTE IN THERE

 9      THAT I'M BEING SUED BY LAW FIRMS THAT ARE CONNECTED WITH AIPAC

10      AND BELOW THAT HAD THE POLITICAL PICTURES, AND THEY'RE UPSET

11      ABOUT IT, AND THEY CONVINCED GODADDY.COM TO SHUT IT DOWN, BUT

12      HE'S MISLEADING THE COURT THAT "WE DON'T KNOW NOTHING ABOUT

13      IT."  I HAVE SAVED THE E-MAILS.

14              THE COURT:  WELL, I'M GOING TO ASK MR. MCINTYRE TO

15      LOOK INTO THAT AND TO REPORT BACK TO EVERYBODY, AGAIN, THROUGH

16      THIS ORDER TO SHOW CAUSE, AS TO WHAT'S GOING ON, TO HIS

17      KNOWLEDGE, WHAT ANYBODY HAS DONE WITH REGARD TO THAT.  OKAY, I

18      JUST WANT IT CLEAR --

19              MR. SAADAT-NEJAD:  IT'S BEEN 11 MONTHS NOW THOUGH.  I

20      MEAN --

21              THE COURT:  YOU KNOW WHAT YOU CAN AND CAN'T DO AT THIS

22      POINT, CORRECT, UNDER THE TEMPORARY ORDER.

23              MR. SAADAT-NEJAD:  I CANNOT OWN A DOMAIN NAME THAT HAS

24      THEIR NAME IN IT, THE NAME OF THEIR BUSINESS.  IF I WANT TO

25      GET MCINTYRESUCKS.COM, I DON'T THINK I'M VIOLATING THE COURT'S
```

1    ORDER.

2         THE COURT:  LET'S NOT DO THAT IN THE COURSE OF THIS

3    LITIGATION, SIR.

4         MR. SAADAT-NEJAD:  NO, I WOULDN'T DO IT.

5         THE COURT:  I MEAN, I'M NOT SAYING IT'S ENJOINED, BUT

6    I DON'T THINK THAT WOULD BE A NICE THING TO DO.  BOTH SIDES,

7    LET'S DON'T GO THERE.

8         MR. SAADAT-NEJAD:  BUT HE'S WRITTEN NAMES OF LAWYERS

9    SAYING THAT I CAN'T EVEN USE THE WORD SOLOMON.  THERE'S

10   SOLOMON KING.  THERE'S SOLOMON ISLAND.  THEY'RE AFTER ME NOT

11   TO WRITE ABOUT THEM BECAUSE SEARCH ENGINES ARE VERY SMART,

12   THEY READ THE CONTEXT AND THEY PUT IT IN A POSITION ON THE

13   WEBSITES.  ANYBODY LOOKS UP SOLOMON WARD ATTORNEYS, I THINK

14   THREE OF MY WEBSITES WILL COME UP RIGHT ON THE FIRST PAGE

15   RESULTS, AND IT'S IRRITATING TO THEM.

16        THE COURT:  I KNOW EVERYBODY'S IRRITATED IN THIS CASE

17   BECAUSE I'VE READ THE RECORD, OKAY?

18        MR. SAADAT-NEJAD:  OKAY.

19        THE COURT:  SO THAT GOES WITHOUT SAYING, YOU DON'T

20   HAVE TO TELL THE COURT, BUT YOU HAVE CERTAIN FIRST AMENDMENT

21   RIGHTS AND THEY HAVE CERTAIN RIGHTS ALSO SHALL, AND WHAT WE'RE

22   TRYING TO DO IN THIS LITIGATION, SIR, IS SORT OUR WAY AS TO

23   WHERE THE LINE IS, AND THAT'S NOT AN EASY ONE TO DETERMINE,

24   GIVEN THE WAY THE INTERNET OPERATES.

25        SO ALL I'M SAYING IS THIS RIGHT NOW; YOU'RE GRANTED

1    YOUR REQUEST TO EXCEED THE PAGE LIMIT, AND YOU'RE GRANTED YOUR

2    REQUEST TO BRING A MOTION TO DISMISS.

3         I'M REQUESTING THAT EVERYBODY PREPARE, AND THE COURT'S

4    GOING TO DO AN ORDER AND SPECIFICALLY STATE WHAT ISSUES NEED

5    TO BE ADDRESSED, AND I WILL BE DEFERENTIAL, AND IF THERE ARE

6    OTHER THINGS THAT PEOPLE THINK THEY NEED TO TALK ABOUT, BUT WE

7    NEED TO BE FOCUSED HERE.

8         MR. SAADAT-NEJAD:  YES.

9         THE COURT:  THAT'S WHY I WANT TO SPELL OUT THE ISSUES,

10   AND I'LL SET FORTH A BRIEFING SCHEDULE FOR EVERYBODY, SO IT

11   WILL BE YOUR BRIEF IS DUE THIS DAY, YOUR REPLY, AND VICE

12   VERSA, BECAUSE THEY'RE GOING TO BE MOVING ON ONE SET OF PAPERS

13   AND YOU'RE GOING TO BE THE MOVING PARTY ON THE OTHERS.  I'LL

14   SET THIS FORTH AS CLEARLY AS I CAN SO THAT NOBODY, YOU KNOW,

15   HAS ANY QUESTIONS ABOUT IT.  I'LL DO IT AS CLEARLY AS WE CAN,

16   AND WE'LL SORT THROUGH THIS.

17        IN THE INTERIM, WE WILL LIVE WITH THE TEMPORARY ORDER,

18   AND WE WILL DO EVERYTHING THAT WE CAN NOT TO AGGRAVATE, BE

19   HOSTILE TO, IN AN INAPPROPRIATE WAY, THE OTHER SIDE.  SO, YOU

20   KNOW, THE DOMAIN NAME THAT YOU MENTIONED INVOLVING THE LAWYER

21   SITTING TO THE COURT'S RIGHT, I WOULDN'T DO THAT DURING THE

22   COURSE OF THIS LITIGATION, THAT DOESN'T GENERATE GOOD

23   FEELINGS.  YOU HAVE ALL YOUR FIRST AMENDMENT RIGHTS BUT LET'S

24   NOT GO THERE.  NOBODY IS ENJOINING THAT, I'M JUST TELLING YOU

25   THAT THE LAW IS ON ONE HAND BUT FUNCTIONING IN THIS WORLD IS A

1    LITTLE BIT DIFFERENT, AND I'M JUST SUGGESTING YOU NOT DO IT.

2        MR. SAADAT-NEJAD:  NO, I'M NOT DOING IT, BUT THEY DID

3    PERSUADE GODADDY TO SHUT DOWN EIGHT OF MY WEBSITES AND THEY'RE

4    DENYING THAT THEY DID THAT.  THEY'RE LITERALLY LYING.  THESE

5    PAPERWORKS THAT HE JUST HANDED ME I'M SURE THAT IT CONTAINS

6    MANUFACTURED EVIDENCE.  THAT'S WHY I KEEP ASKING THIS COURT,

7    PLEASE, BRING THE INTERNET IN HERE SO I CAN SHOW -- BECAUSE I

8    CAN TYPE UP ANYTHING I WANT TO AND JUST PRESENT IT TO COURT,

9    DOESN'T MEAN THAT IT'S TRUE.  IT NEEDS TO BE VERIFIED.  I

10    MEAN, YOU KNOW, THEY TYPE UP ANYTHING, THEY'RE JUST

11    MANUFACTURING EVIDENCE.

12        THE COURT:  WHAT WE'RE WORKING TOWARD IS GETTING OUR

13    WAY THROUGH ALL OF THIS.

14        MR. SAADAT-NEJAD:  I THINK HAVING THE INTERNET IN THE

15    COURTROOM CAN PROVE THAT THEIR CREDIBILITY IS VERY POOR.

16    THEY'RE JUST MAKING FALSE ALLEGATIONS.

17        THE COURT:  WELL, I'VE BEEN LOOKING AT EVERYTHING AS

18    MUCH AS I CAN TO SEE WHAT WAS UP, WHAT WAS DOWN, WHAT YOU GOT

19    IF YOU PUNCHED IN PACIFIC LAW CENTER.

20        MR. SAADAT-NEJAD:  OH, THAT I UNDERSTAND, BUT THE

21    PAPERWORK THAT THEY FILED SAYING THAT WE'RE GOING TO PRESENT

22    THIS DOMAIN NAME, FOR EXAMPLE -- FOR EXAMPLE, I THINK ONE IS

23    CALLED USGOVERNMENT.COM, I DON'T OWN THAT.  THERE'S ANOTHER

24    ONE, INTELLIGENCE.COM, I DON'T OWN THAT.  BUT THEY'VE

25    MANUFACTURED IT, AND PUT IT IN HERE.  THEY WANT TO PRESENT IT

1          TO THE COURT SAYING, NO, HE'S BEEN --

2              THE COURT: BUT SEE, THEY DON'T SAY, SIR, THAT YOU

3     CAN'T DO THAT. YOU CAN HAVE A DOMAIN NAME THAT DOESN'T

4     INFRINGE ON THEIRS AND SAY WHATEVER YOU WANT. THAT'S THE --

5              MR. SAADAT-NEJAD: THEY'RE PRESENTING DOMAIN NAMES

6     THAT DON'T EXIST. THEY'RE FALSIFYING EVIDENCE..

7              THE COURT: OKAY. WE'RE GOING TO SORT OUR WAY THROUGH

8     IT. IT'S GOING TO TAKE A LITTLE BIT OF TIME, BUT THAT'S WHERE

9     WE'RE GOING.

10             DO YOU HAVE ANY QUESTIONS, MR. MCINTYRE, MR. CLARKE?

11             MR. CLARKE: NONE FOR PACIFIC LAW CENTER, YOUR HONOR.

12    THANK YOU FOR YOUR TIME.

13             MR. MCINTYRE: NO, YOUR HONOR. WHAT DOES YOUR HONOR

14    ANTICIPATE THE BRIEFING SCHEDULE WILL BE, JULY-ISH? JUNE-ISH?

15             THE COURT: WE'RE IN JUNE, IT'S PROBABLY GOING TO BE

16    MORE JULY-ISH.

17             MR. MCINTYRE: OKAY.

18             THE COURT: NOW, YOU MENTIONED SOMETHING WITH REGARD

19    TO BRIEFING. THE OTHER SIDE IN THE COURT NEEDS TO HAVE A GOOD

20    WAY OF GETTING IN TOUCH WITH YOU. I ASSUME YOU'RE NOT --

21    YOU'RE NOT USING THE E-FILING SYSTEM OR ARE YOU?

22             MR. SAADAT-NEJAD: I DON'T MIND USING IT BUT NOBODY'S

23    PUTTING MY E-MAIL. EVERY PAPER I FILE I WRITE MY E-MAIL ON

24    THERE.

25             THE COURT: WELL, YOU HAVE TO REGISTER FOR THE SYSTEM

1   SO MAYBE SELF-REPRESENTED PEOPLE CAN'T DO THAT, I DON'T KNOW,

2   SIR.  IN ANY EVENT, WE NEED A GOOD ADDRESS AND A WAY OF

3   GETTING DOCUMENTS TO YOU BECAUSE THEY'RE GOING TO FILE A

4   MOTION.  YOU'RE GOING TO GET THAT MOTION, AND YOU'RE GOING TO

5   HAVE TO RESPOND.  YOU KNOW THAT.  AND THEN YOU'RE GOING TO

6   FILE A MOTION, YOU'VE GOT TO GET IT TO BOTH SIDES OVER HERE,

7   BOTH PARTIES, AND THEN THEY'RE GOING TO RESPOND, AND THERE'S

8   GOING TO BE A COUPLE OF ROUNDS OF THAT ON THE ISSUES THAT I'M

9   GOING TO OUTLINE.

10          MR. SAADAT-NEJAD:  THEY'RE PLAYING LITTLE GAMES WITH

11  THAT, ALSO.  FOR EXAMPLE, YOU MAY GIVE AN ORDER THAT ON THE

12  15TH -- THAT PLAINTIFF NEEDS TO FILE SOMETHING BY THE 15TH,

13  WELL, I'LL BE SITTING AT THE OTHER BUILDING ON THE COMPUTER

14  WAITING FOR THEIR FILING TO SHOW UP ON THERE, 4:30 THE DOOR

15  CLOSES, THEY'LL FILE IT AFTER 4:30 ELECTRONICALLY.  FOR

16  EXAMPLE, IF THE DEADLINE'S ON A FRIDAY, I WON'T GET TO SEE IT

17  UNTIL MONDAY.

18          AND WHEN THEY FEDEX ME A COPY, THEY MAKE IT A TWO-DAY

19  THING WHERE I DON'T GET IT UNTIL TUESDAY.  THEY JUST PLAY

20  LITTLE GAMES THAT ARE NERVE-WRACKING.

21          THE COURT:  WELL, WE'LL BUILD IN ENOUGH OF A FACTOR SO

22  THAT A DAY OR TWO ISN'T GOING TO MAKE ANY DIFFERENCE.  I'LL

23  EXTEND THEM -- I'LL GIVE YOU PLENTY OF TIME, SIR.

24          I MEAN, THAT HAPPENS ALL THE TIME THAT LAWYERS FILE

25  THINGS AFTER HOURS WITH E-FILING, AND IT'S BOTH A BLESSING AND

1     A CURSE OF THE SYSTEM, AND I UNDERSTAND WHAT YOU'RE SAYING ON

2     DELIVERY, BUT BE FOREWARNED, I MEAN, AS MUCH AS POSSIBLE HERE,

3     THE COURT WOULD URGE EVERYBODY TO TRY AND GET ALONG THROUGH

4     THIS.

5          NOBODY'S TRYING TO DO ANYTHING OTHER THAN WHAT IS

6     PERMITTED BY THE LAW, MR. SAADAT-NEJAD.  I WANT YOU TO

7     UNDERSTAND THAT.  SO WE'RE GOING TO TRY TO WORK TOGETHER AS

8     BEST WE CAN.  THAT'S ALL WE CAN DO.

9          MR. SAADAT-NEJAD:  YOUR HONOR, I WENT TO JAIL BASED ON

10    FALSIFIED EVIDENCE, AND JUDGE BURNS WOULD NOT ALLOW ME TO SHOW

11    HIM ON THE INTERNET.  I MEAN, I'M VERY UPSET ABOUT THAT, BUT

12    I'M NOT GOING TO GO OFF THE WALL AND GO AND GET ANGRY OR

13    ANYTHING.

14         THE COURT:  I KNOW YOU WENT TO JAIL, SIR, I READ THIS

15    FILE.

16         MR. SAADAT-NEJAD:  YEAH, ALL I WANT IS AT LEAST THE

17    INTERNET IN HERE SO I CAN SHOW THAT THEY'RE JUST FULL OF

18    BALONEY.

19         THE COURT:  DO YOU WANT TO COMMENT ON THIS ISSUE?  I'M

20    NOT REALLY SURE I HAVE A HANDLE ON THE ISSUE THAT HE'S

21    SPEAKING TO.  HE'S SAYING THAT YOU HAVE SOME ABILITY TO SHUT

22    DOWN THINGS THAT DON'T RELATE TO THIS OR DOMAIN NAMES THAT

23    AREN'T IMPINGING ON YOURS.

24         MR. MCINTYRE:  I'LL TAKE THE ONE THAT MR. SAADAT-NEJAD

25    MENTIONED, WHICH IS USHOSTAGE.COM, AND I DIDN'T EVEN KNOW IT

1    WAS SHUT DOWN. THE LAST TIME I LOOKED IT WAS UP AND RUNNING,

2    AND USHOSTAGE.COM IS HIGHLY CRITICAL, IN A LOT OF RESPECTS, OF

3    MY FIRM AND PEOPLE IN IT, AND I THINK ALSO PACIFIC LAW CENTER.

4    I THINK IT'S THE ONE THAT ALSO HOSTS JUDGE BURNS' OWN PICTURE.

5    I DON'T BELIEVE -- I'D HAVE TO GO BACK AND LOOK -- WE'VE EVER

6    COMPLAINED THAT USHOSTAGE.COM INFRINGES JUDGE BURNS' ORDER

7    BECAUSE I DON'T THINK IT DOES.

8          JUDGE BURNS' ORDER WAS VERY SPECIFIC THAT THE WORDS,

9    IN OUR INSTANCE, SOLOMON AND WARD HAD TO APPEAR IN THE DOMAIN

10    NAME, AND IN USHOSTAGE.COM, TO TAKE THE EXAMPLE JUST USED, IT

11    DOES NOT. THE LAST TIME I LOOKED -- IT'S NEWS TO ME IF IT'S

12    DOWN.

13          WITH ALL DUE RESPECT, MY PLATE IS HUGELY FULL AND I

14    DON'T SPEND MY DAYS SURFING TO SEE IF SOMEHOW SOMEBODY IS

15    BEING CRITICAL OF ME OR MY FIRM.

16          ONE THING I WOULD LIKE, AND THIS MAY HELP EVERYBODY,

17    YOUR HONOR, WE HAVE TRULY TRIED TO TREAT MR. SAADAT-NEJAD WITH

18    THE SAME RESPECT WE WOULD TREAT ANY LITIGANT OR ANYBODY

19    SELF-REPRESENTING OR EVEN AN ATTORNEY. IF HE WILL ACCEPT

20    E-MAIL SERVICE, PDF SERVICE BY E-MAIL, HE WILL GET THEN

21    CONTEMPORANEOUSLY WITH WHEN WE FILE AND HAVE SAME DAY, SAME

22    TIME.

23          I DO AGREE WITH THE COURT THAT BOTH THE BANE AND THE

24    BLESSING OF E-FILING IS THE ABILITY TO FILE AT 10 OR 11 AT

25    NIGHT. I JUST DID IT TWO DAYS AGO FOR JUDGE ADLER, AND IT WAS

1    10:00 AT NIGHT.

2           BUT IF MR. SAADAT-NEJAD WILL ACCEPT E-MAIL SERVICE

3    THROUGH A PDF, HE WILL HAVE THINGS INSTANTLY, AND THEN HE

4    WON'T HAVE TO GO WHAT WE UNDERSTAND IS HIS FATHER'S HOUSE AND

5    PICK UP A FEDEX.  AND THE E-MAIL ADDRESS I HAVE FOR HIM IS THE

6    ONE ON HIS ANSWER IN THIS CASE AND IT'S C9729972@YAHOO.COM,

7    AND IF THAT'S A WORKING E-MAIL ADDRESS, I WOULD BE MORE THAN

8    HAPPY, IF HE AGREES, THAT WE JUST SERVE HIM BY E-MAIL.

9           THE COURT:  WOULD THAT BE PREFERABLE FOR YOU, SIR?

10          MR. SAADAT-NEJAD:  MA'AM, THAT IS MY E-MAIL, AND THAT

11   IS OKAY WITH ME.

12          ALSO, HE'S MISLEADING THE COURT AGAIN.  PACIFIC LAW

13   CENTER SUED USHOSTAGE.COM, AND SOLOMON WARD REPRESENTED THEM

14   WHILE SUING USHOSTAGE.COM.  THEY WENT AFTER USHOSTAGE.COM

15   SINCE FEBRUARY OF --

16          THE COURT:  OKAY, LET ME STOP YOU FOR A SECOND.  SO

17   THAT'S A SEPARATE PIECE OF LITIGATION MAYBE, SEPARATE LAWSUIT

18   TO THIS ONE, IF PACIFIC LAW CENTER SUED SOMEBODY ELSE.

19          MR. SAADAT-NEJAD:  NO, BUT THEY'RE SAYING THEY HAVE NO

20   IDEA OF WHAT'S GOING ON WITH USHOSTAGE.COM.  THEY SUED

21   USHOSTAGE.COM.  THEY KNOW EXACTLY WHAT'S ON THERE.

22          THE COURT:  SIR, I GUESS ALL I'M SAYING IS WE HAVE AN

23   ISSUE BEFORE THIS COURT AND IT RELATES TO PLAINTIFFS SUING YOU

24   TO PREVENT YOU FROM DOING CERTAIN THINGS THAT THEY FEEL

25   IMPINGE ON THEIR RIGHTS AND THEIR DOMAIN NAMES.  THAT'S ALL

1  THAT'S IN FRONT OF US. AS OFFICERS OF THE COURT, THEY ARE NOT

2  TO MISREPRESENT THE COURT OR DO ANYTHING OF THAT NATURE.

3      I UNDERSTAND YOUR FEELINGS. I KNOW YOU SPENT TWO

4  WEEKS IN JAIL OVER VIOLATION OF THE ORDER -- JUDGE BURNS'

5  ORDER. I'M TRYING TO DO THIS IN A WAY THAT GETS US FOCUSED,

6  GETS US DOWN TO BASICALLY A TOUGH LEGAL CALL ON THESE ISSUES

7  AND WE'LL SEE WHERE WE ARE.

8      I DON'T WANT TO -- THIS IS NOT A LEGAL CONCEPT, SO

9  YOU'LL APPRECIATE THIS -- MUDDY THE WATERS WITH OTHER THINGS.

10  I KNOW EVERYBODY'S GOT OTHER ISSUES THEY COULD PULL IN, AND

11  THEY'RE RELATED IN A WAY, BUT LET'S JUST FOCUS ON THIS AND

12  WE'LL DO A BETTER JOB BECAUSE OUR PLATE IS FULL ON THIS, SIR.

13      MR. SAADAT-NEJAD: WILL YOU PLEASE CONSIDER AGAIN

14  ABOUT ORDERING GODADDY OR AT LEAST PROVIDE -- AT MINIMUM,

15  PROVIDE A LETTER TO GODADDY THAT THERE WAS NO SUCH ORDER TO

16  SHUT DOWN THESE WEBSITES.

17      THE COURT: GODADDY IS NOT IN THIS COURTROOM. THEY

18  ARE NOT NAMED IN THIS LITIGATION. I HAVE NO ABILITY TO ORDER

19  THEM TO DO ANYTHING.

20      MR. SAADAT-NEJAD: THEY SAID THAT IT GOT SHUT DOWN

21  BASED ON -- BECAUSE OF THIS CASE.

22      THE COURT: THAT MAY BE, BUT THEY ARE NOT REPRESENTED

23  HERE, AND I CAN'T MAKE ORDERS OVER PEOPLE WHO ARE NOT PROPERLY

24  BEFORE ME. SO NO, I CAN'T DO THAT. I UNDERSTAND WHY YOU'RE

25  ASKING THAT.

1    YOU KNOW, MAYBE YOU CAN GET SOME LEGAL ADVICE, SIR,

2    YOU COULD GO TO THE CLERK'S OFFICE AND YOU COULD ASK FOR

3    REFERRAL SERVICES TO LAWYERS THAT MIGHT HELP YOU WITH THIS AT

4    LIMITED OR NO COST.

5         MR. SAADAT-NEJAD:  THERE WAS NO COURT ORDER TO SHUT

6    THESE DOWN.

7         THE COURT:  SIR, I KNOW THAT.  THE COURT DIDN'T CAUSE

8    IT TO HAPPEN, AND THE COURT CAN'T PREVENT CERTAIN THINGS THAT

9    AREN'T BEFORE IT.  THE COURT CAN ONLY DEAL WITH WHAT IS

10   LEGITIMATELY BROUGHT IN HERE.  AND IT'S A CONCEPT THAT CAUSES

11   US TO BE ABLE TO FUNCTION BECAUSE IF ANYTHING COULD JUST POP

12   IN AND OUT OF COURT, IT WOULDN'T BE A VERY ORDERLY PLACE.  SO

13   I HOPE I'VE ADDED SOME ORDER AND STRUCTURE TO THIS.

14        THERE'S GOING TO BE AN ORDER TO SHOW CAUSE.  YOU'RE

15   GOING TO BRING YOUR MOTION TO DISMISS.  PLAINTIFFS ARE GOING

16   TO BRING A REQUEST FOR SUMMARY JUDGMENT.  I'M GOING TO OUTLINE

17   THE ISSUES IN AN ORDER THAT MEMORIALIZES THIS HEARING.  I'M

18   GOING TO SET FORTH A BRIEFING SCHEDULE.

19        YOU'RE GOING TO GET EVERYTHING BY E-MAIL SERVICE, AND

20   I THINK THAT'S A NICE GESTURE.  IT WILL GET IT TO YOU QUICKER,

21   AND IT WILL BE MUCH MORE EXPEDITIOUS FOR EVERYBODY.

22        I THINK WE'VE MADE SOME PROGRESS THIS AFTERNOON.  IT'S

23   NOT RESOLVED YET, BUT WE WILL GO FORWARD FROM HERE.

24        MR. SAADAT-NEJAD:  EIGHT OF MY WEBSITES ARE STILL SHUT

25   DOWN BASED ON THEY INFLUENCED GODADDY.COM FROM THIS CASE, AND

1    THEY'RE DENYING THAT THEY HAVE KNOWLEDGE OF IT.  THE MAN IS

2    LYING TO YOU WHILE MY CIVIL RIGHTS HAVE -- ARE BEING VIOLATED.

3    FOR 11 MONTHS THEY'VE BEEN SHUT DOWN NOW.

4         THE COURT:  SIR, I DON'T HAVE THAT IN FRONT OF ME.  I

5    UNDERSTAND YOUR FRUSTRATION.

6         MR. SAADAT-NEJAD:  WELL, COULD WE HAVE THE INTERNET

7    HERE?

8         THE COURT:  MR. MCINTYRE AND MR. CLARKE, IF YOU WOULD

9    LIKE TO SPEAK WITH HIM WITH ABOUT THAT AFTERWARDS, YOU

10   CERTAINLY MAY.  IF THERE'S ANY WAY WE CAN RESOLVE THAT, YOU

11   CAN.  I'M NOT OPTIMISTIC THAT YOU CAN.

12        WE'VE DONE AS MUCH AS I CAN TODAY, SIR.  AND YOUR

13   REQUEST -- I GRANTED YOUR REQUEST FOR INCREASED PAGES ON THE

14   BRIEFING, AND I'LL ADDRESS THAT, I'LL AT LEAST DOUBLE THE PAGE

15   LIMIT FOR YOU SO YOU CAN PRESENT MORE PAPERS.

16        MR. CLARKE:  YOUR HONOR, THE ONLY THING THAT I WOULD

17   ASK THE COURT TO TAKE INTO CONSIDERATION WHERE PACIFIC LAW

18   CENTER IS CONCERNED, THERE'S A STRONG LIKELIHOOD THAT LOCAL

19   COUNSEL WILL TAKE OVER FROM ME.  I'M FROM PHOENIX.

20        THE COURT:  I KNOW.

21        MR. CLARKE:  AND SO I WOULD ONLY ASK THE COURT START

22   THE OPENING BRIEF TO MAYBE LATER IN JULY RATHER THAN EARLIER

23   IN JULY, AND IF THERE IS A CHANGE IT WOULD GIVE NEW COUNSEL A

24   CHANCE TO GET UP TO SPEED ON THIS.

25        THE COURT:  OKAY, THE COURT WILL CONSIDER THAT.

1          MR. CLARKE:  THANK YOU, YOUR HONOR.

2          THE COURT:  THANK YOU.

3          MR. SAADAT-NEJAD:  THIS WHOLE THING SEEMS LIKE A FRAUD

4     TO ME.  I'VE GOT EIGHT OF MY WEBSITES SHUT DOWN ON ME.  THE

5     COURT IS REFUSING TO ACKNOWLEDGE THAT THEY'VE BEEN SHUT DOWN

6     BECAUSE OF THEIR CONDUCT.

7          THE COURT:  BECAUSE I DON'T KNOW, SIR, AND IT'S NOT

8     BEFORE ME IN THIS CASE.  I'M SORRY.  I UNDERSTAND HOW YOU

9     FEEL.  MR. MCINTYRE AND MR. CLARKE MAY BE WILLING TO TALK TO

10    YOU ABOUT THAT.  I MEAN, TO THE EXTENT TO WHICH WE CAN

11    RESOLVE --

12         MR. SAADAT-NEJAD:  THEY'RE NOT LAW ENFORCEMENT.

13         THE COURT:  PARDON?

14         MR. SAADAT-NEJAD:  I'M SORRY.  THEY'RE NOT LAW

15    ENFORCEMENT TO GO AROUND DOING WHATEVER IT IS THAT THEY'RE

16    DOING.

17         THE COURT:  THEY'RE NOT IN ANY WAY INDICATING THAT

18    THEY ARE, SIR, BUT THINGS DO HAPPEN AS A CONSEQUENCE OF OUR

19    ACTIONS.  SO IF AS A CONSEQUENCE OF JUDGE BURNS' ORDER

20    GODADDY'S TAKING NOTE AND IS CONCERNED ABOUT WEBSITES THAT YOU

21    HAVE, I DON'T KNOW, SIR.  YOU'RE BROADENING THIS.

22         I APPRECIATE THE TIME THIS AFTERNOON.  I THINK WE MADE

23    SOME PROGRESS.  WE WILL BE IN RECESS.  YOU WILL RECEIVE THE

24    COURT'S ORDER.

25         DO I HAVE, ALEX, A GOOD MAILING ADDRESS?  AM I GOING

1    TO E-MAIL OR AM I GOING TO MAIL THE ORDER THAT I HAVE TO GET

2    OUT?

3            THE CLERK:  IT'S MAILED OUT.

4            THE COURT:  OKAY, DO WE HAVE A GOOD ADDRESS?  CHECK

5    WITH MY CLERK -- WE'RE GOING TO BE IN RECESS -- AND MAKE SURE

6    THAT WE HAVE A GOOD ADDRESS BECAUSE THE COURT'S GOING TO HAVE

7    TO COMMUNICATE WITH YOU.  I'M GOING TO MAIL YOU THE ORDER,

8    SIR.

9            MR. SAADAT-NEJAD:  FOR THE SAKE OF ARGUMENT, IF THE

10   PLAINTIFF AGREES, THAT IN ADDITION TO THE E-MAIL, THAT THEY

11   ALSO GO AHEAD AND FEDEX.  IT'S EASY TO GET OTHER PEOPLE'S

12   PASSWORDS THESE DAYS.  I DON'T TRUST THE PLAINTIFFS.

13           MR. MCINTYRE:  THAT'S FINE, YOUR HONOR, WE'VE BEEN

14   FEDEXING UP UNTIL NOW TO AN ADDRESS THAT WE UNDERSTAND IS MR.

15   SAADAT-NEJAD'S FATHER'S ADDRESS, AND AT HIS REQUEST WE SEND

16   TWO FEDEXES SEPARATELY AND WE'RE A HAPPY TO DO THAT, BUT I'LL

17   ALSO BE HAPPY TO E-MAIL HIM BY PDF SO THAT HE HAS THINGS

18   CONTEMPORANEOUSLY.

19           THE COURT:  AND I THINK THAT'S THE ADDRESS THAT THE

20   COURT'S GOING TO BE USING TO SEND YOU THE ORDER, SIR.  SO

21   THEY'RE WILLING TO DO THAT.  THAT'S NOT A PROBLEM.  OKAY,

22   THANK YOU.

23           MR. CLARKE:  THANK YOU, YOUR HONOR.

24           MR. MCINTYRE:  THANK YOU, VERY MUCH, YOUR HONOR.

25   (THE HEARING CONCLUDED.)

1                    C E R T I F I C A T E

2

3            I, GAYLE WAKEFIELD, CERTIFY THAT I AM A DULY
   QUALIFIED AND ACTING OFFICIAL COURT REPORTER FOR THE UNITED
4  STATES DISTRICT COURT, THAT THE FOREGOING IS A TRUE AND
   ACCURATE TRANSCRIPT OF THE PROCEEDINGS AS TAKEN BY ME IN THE
5  ABOVE-ENTITLED MATTER ON JUNE 12, 2008; AND THAT THE FORMAT
   USED COMPLIES WITH THE RULES AND REQUIREMENTS OF THE UNITED
6  STATES JUDICIAL CONFERENCE.

7

8  DATED: 6/28/08         S/GAYLE WAKEFIELD
                          GAYLE WAKEFIELD, RPR, CRR
9                         OFFICIAL COURT REPORTER

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

EXHIBIT 4 - PAGE 40

1  EDWARD J. MCINTYRE [SBN 80402]
   emcintyre@swsslaw.com
2  SOLOMON WARD SEIDENWURM & SMITH, LLP
   401 B Street, Suite 1200
3  San Diego, California 92101
   Telephone: (619) 231-0303
4  Facsimile: (619) 231-4755

5  Attorneys for PACIFIC LAW CENTER

F I L E D
Clerk of the Superior Court
MAY 3 1 2007
By: L. McALISTER, Deputy

6

7

8              **SUPERIOR COURT OF CALIFORNIA**

9              **COUNTY OF SAN DIEGO**

10

| | |
|---|---|
| 11  PACIFIC LAW CENTER, a Professional Law Corporation, | CASE NO. GIC 878352 |
| 12               Plaintiff, | **DECLARATION OF EDWARD J. MCINTYRE IN SUPPORT OF PLAINTIFF'S REQUEST FOR ATTORNEY'S FEES** |
| 13  v. | |
| 14  SHAHROKH SAADAT-NEJAD, individually | Complaint Filed:  January 12, 2007 |
| 15  and doing business as PACIFICLAWCENTERS.COM and DOES 1 | I/C Judge: Hon. Richard E.L. Strauss Dept. 75 |
| 16  through 50, inclusive, | |
| 17               Defendants. | |

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 5    TOTAL OF 8 PAGES

1     I, Edward J. McIntrye, delcare:

2     1.     I am a member of the Bar of this Court. I am a partner at Solomon Ward

3 Seidenwurm & Smith, LLP, counsel of record for Pacific Law Center. I have personal

4 knowledge of the facts set forth.

5     2.     I have been a trial and appellate lawyer since 1974. I was the partner in

6 charge of this case.

7     3.     15 U.S.C. § 1117 allows an award of reasonable attorney fees for violations of

8 15 U.S.C. § 1125 (a), (c) or (d) in "exceptional cases." [1] An "exceptional case" is one where

9 the trademark infringement can be characterized as "malicious, fraudulent, deliberate or

10 willful."[2] "Succinctly put, an exceptional case . . . is one in which the party's behavior went

11 beyond the pale of acceptable conduct." [3]

12     4.     Throughout the case, Pacific Law Center was charged our firm's standard

13 hourly rates. The hourly rates of those who spent the majority of time on this case are

14 $400.00 for my time, and $210-$395 for associate time.

15     5.     A true and correct copy of time spent by Solomon Ward, detailing the time

16 spent by each individual and explaining, without redaction, the purpose for that time is

17 attached as Exhibit 1. I have reviewed the attached Exhibit 1 billing statement and find the

18 billings to be accurate.

19     6.     The reasonable attorney fees in the case are $30,796.00.

20     7.     The costs in the case are $3527.39. Attached as Exhibit 1 is also a breakdown

21 of cost incurred.

22

23     8.     Based upon the facts of this case, I believe Solomon Ward's fees and costs

24 were reasonably necessary and appropriate, and should be awarded to Pacific Law Center.

25

---

26 [1]   Silpada Designs, Inc., v. O'Malley d/b/a Mrshirleys, No. 04-2302-CM, 2006 U.S. Dist. LEXIS 76301,*8 (D.Kan. Oct.2006).

27 [2]   United Phosphorus, Ltd. v. Midland Fumigant, Inc., 205 F.3d 1219, 1232 (10th Cir. 2000).
[3]   Aromatique, Inc. v. Gold Seal, Inc., 28 F.3d 863, 877 (8th Cir. 1994).

28

DECLARATION OF EDWARD J. MCINTYRE IN SUPPORT OF PLAINTIFF'S REQUEST FOR ATTORNEY'S FEES

1    I declare under the laws of the State of California that the facts in this declaration are

2    true and correct and that I executed this declaration on May 30, 2007 in San Diego,

3    California.

4

5    DATED: May 30, 2007                     SOLOMON WARD SEIDENWURM & SMITH, LLP

6

7                                             By: _____
                                                  EDWARD J. MCINTYRE
8                                                  Attorneys for Plaintiff PACIFIC LAW CENTER

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF EDWARD J. MCINTYRE IN SUPPORT OF PLAINTIFF'S REQUEST FOR ATTORNEY'S FEES

Pacific Law Center                              MAY 30, 2007
4225 Executive Square, Suite 1550               INVOICE NO:******
La Jolla, CA 92037


File Number:  57122.002

RE: Saadatnejad, Shahrokh


LEGAL SERVICES RENDERED

| DATE | | DESCRIPTION | HOURS | FEES |
|------|---|-------------|-------|------|
| 02/23/07 | EJM | Prepare for and meet with clients to discuss facts and preliminary strategy | 1.30 | NO CHARGE |
| 02/25/07 | EJM | Research, draft and revise ex parte application for TRO and OSC re preliminary injunction; draft and revise supporting declarations; select exhibits for declaration; finalize papers and deliver to client for review, comment and execution | 8.70 | 3480.00 |
| 02/27/07 | EJM | Prepare for and attend ex parte hearing on TRO; gather additional authority court instructed be included in any supplemental briefing for preliminary injunction; address court's inquiry concerning bond; brief report to client | 2.70 | 1080.00 |
| 02/27/07 | CMM | Legal research re California Rules of Court re existence of requirement to post a bond when requesting a temporary restraining order | .40 | 92.00 |
| 02/27/07 | ECP | Research re first amendment case currently pending in California Supreme Court and report findings to E. McIntyre | 1.50 | 315.00 |
| 03/06/07 | EJM | Research First Amendment issues court specifically asked to be briefed. | 8.70 | 3480.00 |
| 03/06/07 | EJM | Draft portions of supplemental memorandum for preliminary injunction | 2.40 | 960.00 |

03/07/07 EJM  Draft, revise, edit and finalize supplemental    5.70   2280.00
              papers for injunction hearing

03/07/07 ECP  Legal research re statutory schemes permitting   2.60    546.00
              injunctive relief and draft memo to E. McIntyre
              re same; review defendant's declaration and
              office conference with E. McIntyre re same

03/08/07 WNK  Review and analysis of client's options to       1.40    553.00
              eliminate cybersquatting

03/09/07 EJM  Draft, finalize and file supplemental            3.90   1560.00
              declaration for hearing; prepare for and attend
              hearing on motion for preliminary injunction

03/09/07 WNK  Review ICANN rules for commencing arbitration    2.80   1106.00
              re Pacific Law Centers.com; review three
              arbitration forum alternatives; evaluate
              national arbitration forum as most appropriate
              venue; review NAF rules; outline arbitration
              claim

03/09/07 ARR  Legal research re filing a UDRP Complaint (.7);   2.30    402.50
              review client file (.5); begin drafting UDRP
              Complaint (1.1)

03/11/07 ARR  Draft arbitration complaint in accordance with   2.30    402.50
              the policies of the Internet Corporation for
              Assigned Names and Numbers

03/12/07 WNK  Review new filing for solomonwardlawfirm.com;     2.60   1027.00
              review pacific-law-center registration; review
              Go Daddy procedures; prepare take down notices
              to Saadat-Nejad for both Pacific Law Center and
              Solomon Ward Seidenwurn & Smith

03/12/07 ARR  Prepare and finalize arbitration complaint in    4.10    717.50
              accordance with the policies of the Internet
              Corporation for Assigned Names and Numbers
              (3.5); edit demand letter to S. Saadat-Nejad
              (.2); research other alternatives in addition
              to arbitration (.4)

03/12/07 CMM  Legal research re Federal Rules of Civil          .20     46.00
              Procedure and requirement that Complaint be
              served by nonparty to a civil action

03/13/07 EJM  Draft, revise, edit, finalize and file ex parte  4.60   1840.00
              papers for OSC in re contempt and further TRO

| 03/13/07 | WNK | Review Go Daddy application; review ICANN application for Pacific Law Center and Solomon Ward Seidenwurm & Smith; review Go Daddy take down notice; review status of all proceedings | 1.70 | 671.50 |
|---|---|---|---|---|
| 03/13/07 | ARR | Legal research re removing offending materials from craigslist.com, prepare demand letters to craigslist.com, prepare demand letters to godaddy.com | 3.70 | 647.50 |
| 03/14/07 | EJM | Prepare for and attend ex parte hearing re OSC in re contempt and further TRO; brief meeting with T. Slattery after hearing | 2.10 | 840.00 |
| 03/14/07 | WNK | Review and revise take-down notices to Go Daddy; review status of all proceedings | .70 | 276.50 |
| 03/14/07 | ARR | Revise petition to godaddy.com to block S. Saadat-Nejad's access to pacificlawcenters.com and pacific-law-center.com; legal research of 9th Circuit cases on granting injunctions (temporary and permanent) under the ACPA | 4.20 | 735.00 |
| 03/16/07 | EJM | Meet with Saadat-Nejad, Tom Slattery and Matt Spiegel at office to attempt resolution | 4.00 | 1600.00 |
| 03/20/07 | EJM | Opposition to Saadat-Nejad's ex parte application | 3.70 | 1480.00 |
| 03/21/07 | EJM | Draft, revise, edit and file opposition to Saadat-Nejad's ex parte application to dismiss action and for other relief | 5.90 | 2360.00 |
| 03/21/07 | WNK | Review, revise and analyze arbitral forum rules and pleadings | 1.70 | 671.50 |
| 03/22/07 | EJM | Prepare for and attend ex parte hearing that Saadat-Nejad noticed in state court to dismiss action and other relief; serve Saadat-Nejad with federal ex parte papers | 1.70 | 680.00 |
| 04/05/07 | CMM | Legal research re California case law re standards for granting preliminary injunction, to assist in obtaining preliminary injunction in subject matter | 1.60 | 368.00 |
| 04/06/07 | CMM | Review declaration of J. Phillips in support of motion for Preliminary Injunction | .10 | 23.00 |

04/09/07 WNK Review present status of arbitrations and          .70    276.50
             protests to ISPs.

04/20/07 EJM Attend state court hearing                         .50    200.00

04/23/07 WNK Review recent correspondence from arbitration      .20     79.00
             forum

                                                            ----------
                    TOTAL              89.40 HRS.           30,796.00

COSTS INCURRED

            Telecopier Expense                         12.20
            Photocopy Charges                         312.60
            Word Processing Charges                    20.00
            Long Distance Telephone Charges              .44
            Lexis/Nexis                               121.43
            Federal Express                           249.42
            Postage Charges                             6.42
            Secretarial Overtime Charges              420.00
02/26/07 Filing Fees - VENDOR: Superior Court          40.00
03/13/07 Ex parte Filing Fees - VENDOR: Superior Court 40.00
03/22/07 UDRP Complaint Filing Fees - VENDOR: National 1300.00
            Arbitration Forum
02/28/07 Attorney Services                             64.75
            - VENDOR: Knox Services
02/28/07 Attorney Services                             67.25
            - VENDOR: Knox Services
03/28/07 Fees Advanced $399.50 and Attorney Services - 555.88
            VENDOR: Knox Services
03/28/07 Attorney Services - VENDOR: Knox Services    144.75
03/31/07 Attorney Services                             15.25
            - VENDOR: Knox Services
04/30/07 Attorney Services                             73.00
            - VENDOR: Knox Services
03/14/07 Court Reporter's Transcript Charges - VENDOR:  84.00
            James Partridge

                    TOTAL                                       3,527.39

                    TOTAL CHARGES FOR PERIOD                   34,323.39

SUMMARY OF CURRENT FEES

| PERSON | | | | FEES |
|--------|--|--|--|------|
| Edward J. McIntyre | 1.30 hours at $ 0.00 = | | | 00 |
| Edward J. McIntyre | 54.60 hours at $ 400.00 = | | | 2 2848400 |
| William N. Kammer | 11.80 hours at $ 395.00 = | | | 666600 |
| Adam R. Rosenthal | 16.60 hours at $ 175.00 = | | | 909000 |
| Christina M. Milligan | 2.30 hours at $ 230.00 = | | | 525200 |
| Elizabeth C. Pietanza | 4.10 hours at $ 210.00 = | | | 868600 |
| TOTAL | 89.40 | | | 30,796.00 |

EXHIBIT 5 - PAGE 8

1  EDWARD J. MCINTYRE [SBN 80402]
   emcintyre@swsslaw.com
2  SOLOMON WARD SEIDENWURM & SMITH, LLP
   401 B Street, Suite 1200
3  San Diego, California 92101
   Telephone: (619) 231-0303
4  Facsimile: (619) 231-4755

5  Attorneys for PACIFIC LAW CENTER

F I L E D
Clerk of the Superior Court

OCT 0 5 2007

By: J. JOHNSON, Deputy

6

7

8              **SUPERIOR COURT OF CALIFORNIA**

9                **COUNTY OF SAN DIEGO**

10

11  PACIFIC LAW CENTER, a Professional Law      CASE NO. GIC 878352
    Corporation,
12                                              **SUPPLEMENTAL DECLARATION OF**
                    Plaintiff,                  **EDWARD J. MCINTYRE IN SUPPORT OF**
13                                              **PLAINTIFF'S REQUEST FOR ATTORNEY'S**
        v.                                      **FEES**
14
    SHAHROKH SAADAT-NEJAD, individually        Date:      October 5, 2007
15  and doing business as                      Time:      11:00 a.m.
    PACIFICLAWCENTERS.COM and DOES 1           Dept.      75
16  through 50, inclusive,
                                               Complaint Filed:  January 12, 2007
17                  Defendants.
                                               I/C Judge: Hon. Richard E.L. Strauss
18

19

20

21

22

23

24

25

26

27

28
                                    *EXHIBIT 6*  TOTAL OF 12 PAGES
P:315480.1:57122.002                                              GIC 878352
SUPPLEMENTAL DECLARATION OF EDWARD J. MCINTYRE IN SUPPORT OF PLAINTIFF'S REQUEST FOR
ATTORNEY'S FEES

1    I, Edward J. McIntyre, declare:

2        1.    I am a member of the Bar of this Court. I am a partner at Solomon Ward

3    Seidenwurm & Smith, LLP, counsel of record for Pacific Law Center. I have personal

4    knowledge of the facts set forth.

5        2.    I have been a trial and appellate lawyer since 1974. I was the partner in

6    charge of this case.

7        3.    15 U.S.C. § 1117 allows an award of reasonable attorney fees for violations of

8    15 U.S.C. § 1125 (a), (c) or (d) in "exceptional cases."[1] An "exceptional case" is one where

9    the trademark infringement can be characterized as "malicious, fraudulent, deliberate or

10   willful."[2] "Succinctly put, an exceptional case . . . is one in which the party's behavior went

11   beyond the pale of acceptable conduct."[3]

12       4.    Throughout the case, Pacific Law Center was charged our firm's standard

13   hourly rates. The hourly rates of those who spent the majority of time on this case are

14   $400.00 for my time, and $210-$395 for associate time.

15       5.    In addition to the attorneys fees and costs in my May 30, 2007 declaration,

16   Pacific Law Center has incurred an additional $7,844.49 in attorneys fees and costs for a

17   total of $42,167.88. I attach true and correct copies of our May through September, 2007

18   statements, which I have personally reviewed for content and accuracy.

19       I declare under penalty of perjury under the laws of the State of California that the

20   facts in this declaration are true and correct and that I executed this declaration on

21   October 5, 2007 in San Diego, California.

22

23                                                        EDWARD J. MCINTYRE

24

25

26   [1] *Silpada Designs, Inc., v. O'Malley d/b/a Mrshirleys*, No. 04-2302-CM, 2006 U.S. Dist. LEXIS 76301, *8
     (D.Kan. Oct. 2006).

27   [2] *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1232 (10th Cir. 2000).
     [3] *Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 877 (8th Cir. 1994).

28

SUPPLEMENTAL DECLARATION OF EDWARD J. MCINTYRE IN SUPPORT OF PLAINTIFF'S REQUEST FOR
ATTORNEYS FEES

**SOLOMON WARD SEIDENWURM & SMITH, LLP**
401 "B" Street, Suite 1200
San Diego, CA 92101
(619) 231-0303
Tax I.D. Number 95-2978900

Pacific Law Center
4225 Executive Square, Suite 1550
La Jolla, CA 92037

MAY 31, 2007
INVOICE NO:110589

File Number: 57122.002

RE: *Saadatnejad, Shahrokh*

**LEGAL SERVICES RENDERED THROUGH MAY 31, 2007**

| DATE | | DESCRIPTION | HOURS | FEES |
|------|------|-------------|-------|------|
| 05/23/07 | JMK | Conduct legal research re default judgment by court | 1.20 | 150.00 |
| 05/24/07 | CMM | Legal research re Ninth Circuit case law re recovery of damages following default | .60 | 138.00 |
| 05/24/07 | JMK | Review extensive file materials including all pleadings in state and federal action; conduct legal research re all causes of action plead; analyze and apply case law and outline legal issues and evidence in preparartion for request for default judgment by court | 8.90 | 1112.50 |
| 05/25/07 | WNK | Review craigslist.com, google search results, and betterwhois information for evidence of contempt | 1.30 | 513.50 |
| 05/25/07 | JMK | Conduct extensive legal research on Lahamn causes of actions and remedies including statutory allowable damages and possible atty fees and cost allowed | 7.80 | 975.00 |
| 05/29/07 | JMK | Conduct research on cypersquatting, Trade Mark violations; draft memorandum of point and authorities, notice of lodgment and declaration, prepare prove-up notebook | 8.60 | 1075.00 |

Pacific Law Center                          May 31, 2007
File Number: 57122.002                  Page    2
Invoice No.: 110589

| Date | Init | Description | Hrs | Amount |
|------|------|-------------|-----|--------|
| 05/30/07 | EJM | Revise, edit and finalize pleadings for entry of default including request for entry of default by court, memorandum in support, permanent injunction and money judgment, declaration and notice of lodgment | 3.20 | 1280.00 |
| 05/30/07 | WNK | Review many recent postings and new websites that violate J. Burns' injunction; conference with E. McIntyre re enforcement | 1.20 | 474.00 |
| 05/30/07 | JMK | Conclude additional legal research re damages including statutory, attorneys fee and supportive case law; finalize memorandum of points and authorities; prepare multiple revisions for atty request; conduct additional research on multiple citations and case quotations | 7.60 | 950.00 |
| 05/30/07 | MAO | Check citations and style edit memorandum of points and authorities in support of request for entry of default judgment by court | 1.10 | 99.00 |

FEE SUBTOTAL        41.50 HRS.      6,767.00

## SUMMARY OF CURRENT FEES

| PERSON | | | | | FEES |
|--------|------|-----|-----|---|------|
| Edward J. McIntyre | 3.20 | hours at $ | 400.00 | = | 1,280.00 |
| William N. Kammer | 2.50 | hours at $ | 395.00 | = | 987.50 |
| Christina M. Milligan | .60 | hours at $ | 230.00 | = | 138.00 |
| Jacqueline M. Kavanaugh | 34.10 | hours at $ | 125.00 | = | 4,262.50 |
| Mark A. Olson | 1.10 | hours at $ | 90.00 | = | 99.00 |
| TOTAL | 41.50 | | | | 6,767.00 |

EXHIBIT 6 - PAGE 4

Pacific Law Center                                    May 31, 2007
File Number: 57122.002                                Page    3
Invoice No.: 110589

**COSTS INCURRED THROUGH MAY 31, 2007**

        Photocopy Charges                           79.50
        Lexis/Nexis                                 67.22
                                               ----------

                  COST SUBTOTAL                       146.72

## SOLOMON WARD SEIDENWURM & SMITH, LLP

Pacific Law Center
File Number: 57122.002
Invoice No.: 110589

May 31, 2007
Page   4

### ACCOUNT SUMMARY

|                                       |                |
|---------------------------------------|----------------|
| BALANCE PAST DUE (See Below)          | $   1,658.87   |
| TOTAL CHARGES FOR THIS INVOICE        |     6,913.72   |
|                                       | -------------- |
| **PLEASE PAY THIS AMOUNT**            | $   8,572.59   |
|                                       | ============== |

-----------------------------------------------------------------------

### INVOICE DETAIL OF BALANCE PAST DUE

| DATE      | INV#   | FEES<br>& COSTS | LATE<br>CHARGES | CREDITS<br>APPLIED | AMOUNT<br>DUE |
|-----------|--------|-----------------|-----------------|--------------------|---------------|
| 04/30/07  | 110073 | $1658.87        | $.00            | $.00               | $1658.87      |
|           |        | TOTAL PAST DUE  |                 |                    | $1,658.87     |

LAST INVOICE / STATEMENT DATE: APRIL 30, 2007
PAYMENTS RECEIVED SINCE LAST INVOICE:    $32,664.52

**SOLOMON WARD SEIDENWURM & SMITH, LLP**
401 "B" Street, Suite 1200
San Diego, CA 92101
(619) 231-0303
Tax I.D. Number 95-2978900

Pacific Law Center                                JUNE 30, 2007
4225 Executive Square, Suite 1550                 INVOICE NO:111408
La Jolla, CA 92037

File Number: 57122.002

RE: *Saadatnejad, Shahrokh*

**COSTS INCURRED THROUGH JUNE 30, 2007**

| | |
|---|---:|
| Photocopy Charges | 1.05 |
| Lexis/Nexis | 66.36 |
| Postage Charges | 1.16 |
| | ---------- |
| COST SUBTOTAL | 68.57 |

## ACCOUNT SUMMARY

| | |
|---|---|
| BALANCE PAST DUE (See Below) | $  8,572.59 |
| LATE CHARGES | 13.82 |
| TOTAL CHARGES FOR THIS INVOICE | 68.57 |
| **PLEASE PAY THIS AMOUNT** | $  8,654.98 |

-----------------------------------------------------------------------------

## INVOICE DETAIL OF BALANCE PAST DUE

| DATE | INV# | FEES & COSTS | LATE CHARGES | CREDITS APPLIED | AMOUNT DUE |
|------|------|--------------|--------------|-----------------|------------|
| 04/30/07 | 110073 | $1658.87 | $.00 | $.00 | $1658.87 |
| 05/31/07 | 110589 | $6913.72 | $.00 | $.00 | $6913.72 |
| | | TOTAL PAST DUE | | | $8,572.59 |

LAST INVOICE / STATEMENT DATE: MAY 31, 2007
PAYMENTS RECEIVED SINCE LAST INVOICE:      $      .00

**SOLOMON WARD SEIDENWURM & SMITH, LLP**
401 "B" Street, Suite 1200
San Diego, CA 92101
(619) 231-0303
Tax I.D. Number 95-2978900

Pacific Law Center                          AUGUST 31, 2007
4225 Executive Square, Suite 1550          INVOICE NO:113003
La Jolla, CA 92037


File Number:  57122.002

RE: Saadatnejad, Shahrokh

**LEGAL SERVICES RENDERED THROUGH AUGUST 31, 2007**

| DATE | DESCRIPTION | HOURS | FEES |
|------|-------------|-------|------|
| 08/08/07 WNK | Review emails from Go Daddy re take-down orders; review sites owned by Saadat to verify effect of orders; review additional search results | 1.20 | 474.00 |
| 08/10/07 WNK | Review emails from Saadat to Go Daddy | .40 | 158.00 |
| | FEE SUBTOTAL           1.60 HRS. | | 632.00 |

**SUMMARY OF CURRENT FEES**

| PERSON | | | | FEES |
|--------|---|---|---|------|
| William N. Kammer | 1.60 | hours at $  395.00 | = | 632.00 |
| TOTAL | 1.60 | | | 632.00 |

*EXHIBIT 6 - PAGE 9*

Pacific Law Center
File Number: 57122.002
Invoice No.: 113003

August 31, 2007
Page    2

## ACCOUNT SUMMARY

BALANCE PAST DUE                              $           .00

TOTAL CHARGES FOR THIS INVOICE                       632.00
                                               --------------

PLEASE PAY THIS AMOUNT           $      632.00
                                 ==============

--------------------------------------------------------------------

LAST INVOICE / STATEMENT DATE: JUNE 30, 2007
PAYMENTS RECEIVED SINCE LAST INVOICE:      $8,654.98

**SOLOMON WARD SEIDENWURM & SMITH, LLP**
401 "B" Street, Suite 1200
San Diego, CA 92101
(619) 231-0303
Tax I.D. Number 95-2978900

Pacific Law Center                          SEPTEMBER 30, 2007
4225 Executive Square, Suite 1550           INVOICE NO:113332
La Jolla, CA 92037

File Number:  57122.002

RE: Saadatnejad, Shahrokh

**LEGAL SERVICES RENDERED THROUGH SEPTEMBER 30, 2007**

| DATE | DESCRIPTION | HOURS | FEES |
|------|-------------|-------|------|
| 09/12/07 JMK | Prepare Prove-up hearing notebook including specific pleadings and draft documents per court's request | 1.40 | 175.00 |

|  | FEE SUBTOTAL | 1.40 HRS. | 175.00 |

**SUMMARY OF CURRENT FEES**

| PERSON |  |  |  | FEES |
|--------|--|--|--|------|
| Jacqueline M. Kavanaugh | 1.40 | hours at $ 125.00 | = | 175.00 |
| TOTAL | 1.40 |  |  | 175.00 |

**COSTS INCURRED THROUGH SEPTEMBER 30, 2007**

| | |
|--|--|
| Photocopy Charges | 40.80 |
| Postage Charges | .58 |
| COST SUBTOTAL | 41.38 |

**SOLOMON WARD SEIDENWURM & SMITH, LLP**

### ACCOUNT SUMMARY

| | |
|---|---|
| BALANCE PAST DUE (See Below) | $    632.00 |
| TOTAL CHARGES FOR THIS INVOICE | 216.38 |
| **PLEASE PAY THIS AMOUNT** | $    848.38 |

---

### INVOICE DETAIL OF BALANCE PAST DUE

| DATE | INV# | FEES & COSTS | LATE CHARGES | CREDITS APPLIED | AMOUNT DUE |
|---|---|---|---|---|---|
| 08/31/07 | 113003 | $632.00 | $.00 | $.00 | $632.00 |
| | | | TOTAL PAST DUE | | $632.00 |

LAST INVOICE / STATEMENT DATE: AUGUST 31, 2007
PAYMENTS RECEIVED SINCE LAST INVOICE:        $    .00

*EXHIBIT 6 - PAGE 12*

**Go Daddy Software Administrative Fee**
"sales@godaddy.com" sales@godaddy.com
To: c9729972@yahoo.com
Wed 8/8/07 3:48 PM

Dear Shahrokh Saadat-Nejad,

We recently received an inquiry related to your domain name, USHOSTAGE.COM, SOCOMMIL.COM, USGOVERNMENTCOURT.COM, CIVILCASENUMBERS.COM, USGOVERNMENTCOURTS.COM, DUISANDIEGODUI.COM, USGOVERNMENTJUDGES.COM, 100FREELAWYERS.COM. The specific inquiry related to your domain name can be described as follows:

A filed Legal Complaint has been received concerning the domain(s). Please contact domaindisputes@godaddy.com with any questions.

In accordance with our registration agreement, https://www.godaddy.com/gdshop/legal_agreements/domain_registration_GD.asp?prog_id=GoDaddy&isc=&se=&from_app=&app_hdr=, we have charged your credit card in the amount of $$29.00for our processing of this inquiry.

If you have any questions concerning the above, please contact our customer service center.

Thank you for your continued business,
GoDaddy.com

- - - - - - - - - - - - - - - - - - - - - - - -
Copyright 2007 GoDaddy.com. All rights reserved.

EXHIBIT 7 TOTAL OF 6 PAGES

-------- Original Message --------
Subject: Domain Disputes
From: Shahrokh Saadat-Nejad <c9729972@yahoo.com>
Date: Thu, August 09, 2007 5:51 pm
To: domaindisputes@godaddy.com, c9729972@yahoo.com

Hi,

I got this email from your department.

    Dear Shahrokh Saadat-Nejad,    We recently received an inquiry related to
your domain name,    USHOSTAGE.COM, SOCOMMIL.COM, USGOVERNMENTCOURT.COM,
CIVILCASENUMBERS.COM,    USGOVERNMENTCOURTS.COM, DUISANDIEGODUI.COM,
USGOVERNMENTJUDGES.COM,    100FREELAWYERS.COM. The specific inquiry related to
your domain name can be    described as follows:    A filed Legal Complaint
has been received concerning the domain(s).    Please contact
domaindisputes@godaddy.com with any questions.    In accordance with our
registration agreement,
https://www.godaddy.com/gdshop/legal_agreements/domain_registration_GD.asp?pr
og_id=GoDaddy&isc=&se=&from_app=&app_hdr=,    we have charged your credit card
in the amount of $$29.00for our    processing of this inquiry.    If you
have any questions concerning the above, please contact our    customer
service center.    Thank you for your continued business,  GoDaddy.com    - -
- - - - - - - - - - - - - - - - - - - - - Copyright 2007 GoDaddy.com. All
rights reserved.

**Could you please explain and send any and all paper work
regarding your actions. I am not aware of any court order or
actions by ICANN.**

Shahrokh Saadat-Nejad
Mail:
3713 Mount Ashmun Place
San Diego, California 9211
Telephone: (646)225-8213
email: c9729972@yahoo.com

---

Need a vacation? Get great deals to amazing places on Yahoo! Travel.

---

Be a better Globetrotter. Get better travel answers from someone who knows.
Yahoo! Answers - Check it out.

*domaindisputes@godaddy.com* wrote:

Dear Shahrokh Saadat-Nejad,

Thank you for contacting us. The domains have been named in a legal dispute filed by plaintiffs Pacific Law Center and Solomon Ward Seidenwurm & Smith, LLP. As a result, the domains have been placed on registrar-lock and will remain locked until we are directed otherwise by the court. We have also charged a $29 fee for processing the legal dispute. You may review the Registration Agreement for more information regarding administrative fees at

http://www.godaddy.com/gdshop/legal_agreements/show_doc.asp?se=%2B&pageid=REG%5FSA

You should receive notice of the Preliminary Injunction from the Plaintiff's attorney, William Kammer, wkammer@swsslaw.com. Please forward your attorney's name, contact information, and email address so we may communicate directly with them.

Regards,

Domain Services
GoDaddy.com

-------- Original Message --------
Subject: RE: Domain Disputes
From: Shahrokh Saadat-Nejad <c9729972@yahoo.com>
Date: Fri, August 10, 2007 10:56 am
To: domaindisputes@godaddy.com, c9729972@yahoo.com,
san.diego@ic.fbi.gov, inspector.general@usdoj.gov, referrals@usccr.gov

**Hi,**

**I am representing myself for United States District Court civil case number 3:07-CV-00460 in which I am the defendant.**

**Your office needs to provide me with all documents in your possession now and all documents in your possession in the future regarding your actions of shutting down my websites and blogs.**

**Your office needs to call me, mail me and to email me with explaination of why I do not have access to any of my pictures and all of my contents regarding my website tonight accounts.**

**A preliminary Injunction is not a court order for godaddy.com to shut down any of my websites or any of my blogs.**

**There is NO COURT ORDER to shut down any of my websites and blogs.**

**There is NO COURT ORDER to lock away any of my domain names.**

**Please give me back my domains and services.**

**Thank you in advance.**


**Shahrokh Saadat-Nejad**

**Mail: 3713 Mount Ashmun Place
San Diego, California 92111**

**Telephone: (646)225-8213**

**email: c9729972@yahoo.com**

Dear Shahrokh Saadat-Nejad,

Thank you for advising you are representing yourself, I will make note of it. I must disagree with your statement below pertaining GoDaddy shutting down the websites. Per the Preliminary Injunction, you and anyone acting in concert with you are enjoined from ' registering and trafficking in any Internet website or domain name that contains the words Pacific, Law, and Center and Solomon and Ward, in any respect whatsoever'. As such, the domains will remain locked and the websites will remain suspended until we are ordered otherwise by the court. We ask that you please copy all parties on all correspondence on this matter. As you can see, I have copied Plaintiff's counsel, William Kammer, on this message and request that he, too copy all parties on his communication to us.

We have received a hard copy of the Preliminary Injunction. I'll fax it to you if you wish to provide me with a fax number. Otherwise, you may contact the plaintiff's counsel for court documentation.

Feel free to contact me if I can answer any questions.

Regards,

Lisa Villeneuve
Domain Services Manager
GoDaddy.com, Inc.

**Pacific Law Center, et al v. Shahrokh Saadat-Nejad**
**Edward J. McIntyre** EMcIntyre@swsslaw.com
**Tue 5/27/08 4:18 PM**

Mr. Saadat-Nejad:

   You may pick up your set of our exhibits at our office on Thursday, May 29, 2008.  Please call my partner, William Kammer (619) 2384809 before you come to make sure that they are ready; please ask for him when you arrive.  Thank you.  Ed McIntyre



Solomon
Ward
Seidenwurm &
Smith LLP

Edward J. McIntyre
Partner
(t) 619.238.4823
(f) 619.615.7923
emcintyre@swsslaw.com

401 B Street Suite 1200 | San Diego CA 92101 | www.swsslaw.com

EXHIBIT 7 – PAGE 6

# PROOF OF SERVICE

I Shahrokh Saadat-Nejad declare that I have served a copy of the declaration to the plaintiffs Pacific Law Center and Solomon Ward Seidenwurm & Smith by email.


Date: 7-25-08

_Shahrokh_
SHAHROKH SAADAT-NEJAD