**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PACIFIC LAW CENTER, A Professional Corporation and SOLOMON WARD SEIDENWURM & SMITH, LLP., <br><br> Plaintiffs, <br> vs. <br><br> SHAHROKH SAADAT-NEJAD, <br><br> Defendant. | CASE NO. 07-CV-00460 JLS (POR) <br><br> **ORDER: (1) GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT AND (2) DISMISSING ALL OF PLAINTIFFS' CLAIMS** |

On June 16, 2008, this Court issued an order directing Solomon Ward Seidenwurm & Smith, LLP ("Solomon Ward") and Pacific Law Center (collectively, "Plaintiffs") to show cause as to why summary judgment should not be entered. [Doc. No. 78, ("OSC").] Presently before the Court are Solomon Ward's response to the Court's OSC, Defendant's opposition, and Solomon Ward's reply. [Docs. Nos. 80, 86, 87.] Pacific Law Center failed to respond to the Court's OSC. Defendant filed a timely response to Solomon Ward's brief, but also moved for an extension of time to respond. Solomon Ward filed a response to that motion. [Docs. Nos. 84, 85.] For the following reasons, the Court **GRANTS** summary judgment in favor of Shahrokh Saadat-Nejad ("Defendant"), **DISMISSES** all of Plaintiffs' claims, and **DENIES** Defendant's motion for an extension of time to respond as moot.

**BACKGROUND**

On August 31, 2006, Defendant retained Pacific Law Center to defend him against criminal charges pending in San Diego. [Pl.'s Resp. at 2.] Shortly thereafter, Defendant terminated his relationship with Pacific Law Center after becoming dissatisfied with its representation. [Id.]¹ Defendant then began posting disparaging comments about Pacific Law Center on the internet. [Id.]

On September 20, 2006, Defendant registered and obtained ownership of the internet domain name "pacificlawcenters.com." Plaintiffs argue that this domain name is confusingly similar to the internet domain name registered to Pacific Law Center, "pacificlawcenter.com." [Id. at 3.] Plaintiffs state that Defendant used this domain name to: (1) intercept actual and potential Pacific Law Center clients that conducted "key word" searches for "Pacific Law Center" on internet search engines; (2) intercept such clients that added the letter "s" to Pacific Law Center's true internet site name; and (3) to attempt to dissuade such clients from doing business with Pacific Law Center by enticing them to communicate with him and to visit another website owned by Defendant, "ushostage.com." [Id.] Plaintiffs state that it lost clients as a result of Defendant's misappropriation. On January 12, 2007, Pacific Law Center filed an action in San Diego Superior Court against Defendant. On February 23, 2007, Pacific Law Center retained Solomon Ward to represent it in that lawsuit. On February 27, 2007, Solomon Ward successfully obtained a restraining order against Defendant on behalf of Pacific Law Center. [Id. at 3-4.] Pacific Law Center subsequently dropped its state lawsuit.

On or about March 10, 2007, Defendant obtained a domain name titled "solomonwardlawfirm.com" and "solomonwardsandiego.com." [Id. at 4.] Plaintiffs allege that Defendant used this domain name to disparage Solomon Ward in the same way he had disparaged Pacific Law Center. [Id.]

---

¹ Apparently, Defendant believes that his constitutional rights were violated when Pacific Law Center allegedly represented him in state court after it was fired, waived his right to be present in the courtroom, and waived his right to a speedy trial without his permission. [Doc. No. 58, Exhs. 1 and 2.]

| | |
|---|---|
| 1 | On March 13, 2007, Pacific Law Center and Solomon Ward filed a complaint in federal |
| 2 | court against Defendant alleging, in part, trademark infringement, cybersquatting, and unfair |
| 3 | competition. [Doc. No. 1.] On March 29, 2007, Judge Burns granted Plaintiffs' request for a |
| 4 | temporary restraining order ("TRO"). [Doc. No. 14.] On April 26, 2007, Judge Burns issued a |
| 5 | preliminary injunction that repeated the restrictions set forth in the TRO. [Doc. No. 26.] The |
| 6 | preliminary injunction enjoined Defendant from: |

> 1. Registering, and trafficking in, any internet website or domain name that contains the words Pacific, Law and Center, with or without other words or symbols, in any respect whatsoever;
>
> 2. Registering, and trafficking in, any internet website or domain name that contains the words Solomon and Ward, with or without other words or symbols, in any respect whatsoever;
>
> 3. Registering and trafficking in the service mark or trade name Pacific Law Center in any respect whatsoever; and
>
> 4. Registering and trafficking in the service mark or trade name Solomon Ward or Solomon Ward Seidenwurm & Smith in any respect whatsoever.

[Id.; Pl.'s Resp. at 6.] Judge Burns found that Plaintiffs' declarations "substantiate[d] that Mr. Saadat-Nejad intentionally obtained and used confusing websites to disparage the two law firms." [Id.]

On July 16, 2007, Judge Burns found Defendant in contempt of court for violating the preliminary injunction by registering the domain name "pacificlawyerscenter.com." [Doc. No. 41.] As a result, Judge Burns jailed Defendant for nearly two weeks. [Doc. No. 43.] On July 23, 2007, the ACLU filed an <u>amicus curiae</u> brief, arguing in part that Judge Burns may have deprived Defendant of his constitutional right to counsel by incarcerating him for civil contempt without advising him of his right to counsel. [Doc. No. 46.]

On October 2, 2007, this case was reassigned to this Court. [Doc. No. 54.] On November 15, 2007, Plaintiffs moved to convert Judge Burns' preliminary injunction into a permanent injunction. [Doc. No. 55.] On March 24, 2008, the Court denied Plaintiffs' motion for a permanent injunction in part because they had not yet succeeded on the merits. [Doc. No. 61.]

On June 12, 2008 the Court held a pre-trial conference in this matter. At the conference, Defendant confirmed his prior written request to dismiss this action. [See Doc. No. 71 at 6

(requesting a "motion for dismissal hearing").] On June 16, 2008, the Court issued an order to show cause as to why summary judgment should not be entered. [Doc. No. 78.] On July 25, 2008, Plaintiff Solomon Ward filed a brief to address the issues raised in the Court's OSC. [Doc. No. 79.]

## LEGAL STANDARD

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997). A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 248.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to establish an essential element of the nonmoving party's case on which the nonmoving party bears the burden of proving at trial. Id. at 322-23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

Once the moving party establishes the absence of genuine issues of material fact, the burden shifts to the nonmoving party to set forth facts showing that a genuine issue of disputed fact remains. Celotex, 477 U.S. at 321. The nonmoving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." Anderson, 477 U.S. at 256. When ruling on a summary judgment motion, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

"Sua sponte summary judgment is only appropriate if the losing party has reasonable notice that the sufficiency of his or her claim will be in issue. Reasonable notice implies adequate time to develop the facts on which the litigant will depend to oppose summary judgment." Oluwa v. Gomez, 133 F.3d 1237, 1239 (9th Cir. 1998) (internal citation and quotation omitted); see also Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986) (discussing summary judgment standard and stating "Our conclusion is bolstered by the fact that district courts are widely acknowledged to possess the power to enter summary judgments sua sponte, so long as the losing party was on notice that she had to come forward with all of her evidence.") [2]

## ANALYSIS

### I. Pacific Law Center Has Failed to Show that Defendant Misappropriated its Mark

Pacific Law Center has failed to respond to the Court's OSC. The Ninth Circuit has stated that "[i]t is not our task, or that of the district court, to scour the record in search of a genuine issue of triable fact. We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996). However, "it is error to grant a motion for summary judgment simply because the opponent failed to oppose." In re Rogstad, 126 F.3d 1224, 1227, (9th Cir. 1997). Therefore, the Court will still address Pacific Law Center's claims on the merits.

#### A. Anti-Cybersquatting Protection Act

The Anti-Cybersquatting Protection Act ("ACPA") is violated if a person registers, traffics in, or uses a domain name that is identical or confusingly similar to a distinctive mark, with a bad faith intent to profit from that mark. 15 U.S.C. § 1125(d)(1)(A). To prevail on an ACPA claim, a plaintiff must show: (1) that its trademark was distinctive at the time the domain name was

---

[2] In the OSC, the Court stated that it "will treat the requested briefs as cross-motions for summary judgment." [Doc. No. 78 at 5.] Both parties received over one month to respond to the OSC and they were made aware that the Court's ruling "could end this litigation in favor of Plaintiffs or in favor of Defendant without proceeding to trial." [Id.] The Court also instructed the parties to "attach with their briefs any evidence that: (1) pertains to this 'bad faith intent to profit' issue, or (2) that supports any of the arguments they wish to present." [Id.]

registered; (2) that the domain names the defendant registered are identical or confusingly similar to the trademark; and (3) that the defendant used or registered the domain names with a bad faith intent to profit. See id. The Court finds that both Pacific Law Center and Solomon Ward fail to establish that Defendant possessed a bad faith intent to profit from the domain names. Therefore, the Court need not address whether the first two elements are satisfied.[3]

The ACPA lists nine nonexclusive factors to assist courts in determining whether the use of a trademark involves a bad faith intent to profit. See 15 U.S.C. § 1125(d)(1)(B)(I). The courts may consider:

> (I) the trademark or other intellectual property rights of the person, if any, in the domain name;
>
> (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
>
> (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
>
> (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
>
> (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;
>
> (VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

---

[3] In response to the OSC, both Pacific Law Center and Solomon Ward failed to put forth any evidence of websites that actually use their marks in the domain name. Solomon Ward states that it is "aware" of at least two such websites, "solomonwardlawfirm.com" and solomonwardsandiego.com." [Pl.'s Resp. at 16.] This is notable because Solomon Ward asks this Court to enjoin the Defendant "from registering and maintaining websites with 'Solomon Ward' in the domain name." [Id. at 8.; Plaintiff's Reply at 1.] Instead, Solomon Ward provided evidence of Defendant's websites such as ushostage.com and uscourtjudges.com that, in part, criticize Plaintiffs. The ACPA does not prohibit the creation of such websites and it appears Solomon Ward has not even objected to this type of site in its response.

Nonetheless, the Court is aware that Defendant did previously create sites that incorporated Plaintiffs' marks in the domain names and that those sites have been shut down. [Doc. No. 26 at 2.] Therefore, for the purposes of this order, the Court will assume that Defendant's sites that actually used Plaintiffs' marks as domain names resemble those sites in Plaintiffs' exhibits.

(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c) of this section.

Id. Courts weighing these factors have often balanced them in favor of allowing websites for comment and criticism.

For example, various courts have found that "gripe sites" using nearly identical or confusingly similar marks in the domain names do not violate the ACPA. In TMI v. Maxwell, 368 F.3d 433, 434-35 (5th Cir. 2004), a customer of homebuilder TMI registered the domain name "www.trendmaker.com." This domain name differed by only one word from TMI's mark, TrendMaker Homes, and its domain name, "www.trendmakerhomes.com." The Fifth Circuit reversed the district court's finding that defendant violated the ACPA and reasoned that the site was noncommercial and designed only "to inform potential customers about a negative experience with the company." Id. at 438-39.

In Lucas Nursery & Landscaping, Inc. v. Grosse, 359 F.3d 806, 810 (6th Cir. 2004), the defendant registered the domain name "www.lucasnursery.com" to express her dissatisfaction with the company's landscaping services. The Sixth Circuit found that her site did not constitute what Congress intended to proscribe and explained:

> One of the ACPA's main objectives is the protection of consumers from slick internet peddlers who trade on the names and reputations of established brands. The practice of informing fellow consumers of one's experience with a particular service provider is surely not inconsistent with this ideal.

Id. at 811.

Further, in Lamparello v. Falwell, 420 F.3d 309 (4th Cir. 2005), the Fourth Circuit cited to TMI and Lucas Nursery, in finding for the defendant who maintained a website, "www.fallwell.com," nearly identical to Reverend Falwell's mark. In rejecting the ACPA claim,

the Court concluded:

> After close examination of the undisputed facts involved in this case, we can only conclude that Reverend Falwell cannot demonstrate that Lamparello 'had a bad faith intent to profit from using the [www.fallwell.com] domain name.' [Citation.] Lamparello clearly employed www.fallwell.com simply to criticize Reverend Falwell's views. Factor IV of the ACPA, 15 U.S.C. § 1125(d)(1)(B)(i)(IV), counsels against finding a bad faith intent to profit in such circumstances because 'use of a domain name for purposes of . . . comment, [and] criticism,' H.R. Rep. No. 106-412, 1999 WL 970519, at *11, constitutes a 'bona fide noncommercial or fair use' under the statute, 15 U.S.C. § 1125(d)(1)(B)(i)(IV) . . . We agree with the Fifth and Sixth Circuits that, given these circumstances, the use of a mark in a domain name for a gripe site criticizing the markholder does not constitute cybersquatting.

Id. at 320-22.[4]

However, courts have found that creating gripe sites to extort money from the markholder can violate the ACPA. For example, in Bosley Med. Inst., Inc. v. Kremer, 403 F.3d 672 (9th Cir. 2005), defendant created a website "bosleymedical.com" to discuss his dissatisfaction with hair restoration services that he received from Bosley Medical Institute. Id. at 674. After the district court dismissed the ACPA claim on summary judgment, the Ninth Circuit remanded the claim to the district court noting that there was an issue as to whether the defendant made an extortionate offer to sell the bosleymedical.com site to Bosley. See also Christensen Firm v. Chameleon Data Corp., 2006 U.S. Dist. LEXIS 79710, *9-10 (W.D. Wash. Nov. 1, 2006) (citing Bosley and stating "Many reference an extortionate offer to sell as the hallmark of a bad faith intent to profit."); Lucas Nursery & Landscaping, 359 F.3d at 810 ("The paradigmatic harm that the ACPA was enacted to eradicate–the practice of cybersquatters registering several hundred domain names in an effort to sell them to the legitimate owners of the mark–is simply not present in any of [defendant's] actions.").

Here, Pacific Law Center has failed to demonstrate that Defendant possessed a bad faith intent to profit. The evidence shows that Defendant used his websites essentially as a venue to gripe about Pacific Law Center's services, criticize both law firms, and offer his own political views. Second, Pacific Law Center has not shown that there is a genuine issue of material fact as to whether Defendant sought to extort money. An attorney, Mary Prevost, sent a "pre-filing"

---

[4] See also Best Western Int'l, Inc. v. Doe, 2006 U.S. Dist. LEXIS 77942 (D. Ariz. Oct. 24, 2006).

settlement offer to Pacific Law Center on February 1, 2007 that stated Defendant would sign over all domain names in his possession referring to Pacific Law Center, *and* would not file a malpractice claim, if Pacific Law Center paid Defendant $500,000. The letter reflects that she demanded $500,000, at least in part, to compensate Defendant for alleged "damages" caused by Pacific Law Center's malpractice.[5] Defendant alleges that he never saw the contents of this demand letter until after she sent it and that he has never sought to sell Plaintiffs his domain names.[6] In support, Defendant previously provided the Court with a series of emails between him and Ms. Prevost that reveal *she* was the driving force behind the demand for money. The emails show that Defendant even tried to terminate his relationship with Ms. Prevost shortly before she sent the letter, but that she persuaded him not to. [See Doc. No. 58, Defendant's Opposition to Plaintiffs' Motion for a Permanent Injunction, 20-29, Ex 1 and 2; Doc. No. 64, Defendant's Motion for a Writ of Mandamus, 5-6.] Finally, these weaknesses in Plaintiff's extortion allegation were previously raised in this Court's OSC, and Plaintiffs did not adequately respond. Thus, the Court finds that Pacific Law Center has failed to establish a "bad faith intent to profit" and therefore its ACPA claim fails.

### B. Lanham Act and Unfair Competition Claims

Pacific Law Center argues that Defendant's use of pacificlawcenters.com and pacific/law/centers.com violates Section 43 of the Lanham Act and California's unfair competition statute. The Court disagrees.

The Ninth Circuit has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are "substantially

---

[5] Solomon Ward also alleges that Defendant later demanded "millions" in a subsequent telephone conversation with one of its attorneys. However, Solomon Ward states that he made this demand because he sought to be compensated for the "'harms' Solomon Ward had allegedly caused him stemming from his incarceration and the firm's alleged filing of 'falsified documents.'" [Pl.'s Resp. at 13.] As with the demand letter, this actually supports the argument that Defendant did not seek to "extort" money, but instead, created the websites and sought relief to address the "harm" he believes Plaintiffs have caused him.

[6] See Interstellar Starship Servs. v. Epix, Inc., 304 F.3d 936, 947 (9th Cir. 2002) (finding no "bad faith" under the ACPA, in part, because the attorney offered to sell the domain name in the context of settlement negotiations when defendant was not present).

congruent" to claims made under the Lanham Act. Cleary v. News Corp., 30 F.3d 1255, 1262-63 (9th Cir. 1994); Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1178 (9th Cir. 1988) (holding that the "ultimate test" for unfair competition and trademark infringement claims is "whether the public is likely to be deceived or confused by the similarity of the marks") (internal quotations omitted)). To prevail on these claims, the plaintiff must show: (1) the mark is protectable; (2) the defendant used the mark "in connection with any goods or services" (commonly referred to as the "commercial use requirement"); and (3) the defendant's use "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125 (a)(1)(A).

In Bosley, the Ninth Circuit found that the district court properly dismissed the Lanham Act claim and reasoned: "noncommercial use of a trademark as the domain name of a website–the subject of which is consumer commentary about the products and services represented by the mark–does not constitute infringement under the Lanham Act." Bosley, 403 F.3d at 674.

Further, in Lamparello v. Falwell, 420 F.3d 309 (4th Cir. 2005), the Fourth Circuit followed this principle when it rejected plaintiff's Lanham Act claim. In rejecting the Lanham Act claim, the Court reasoned, in part:

> Reverend Falwell's mark is distinctive, and the domain name of Lamparello's website, www.fallwell.com, closely resembles it. But, although Lamparello and Reverend Falwell employ similar marks online, Lamparello's website looks nothing like Reverend Falwell's; indeed, Lamparello has made no attempt to imitate Reverend Falwell's website. Moreover, Reverend Falwell does not even argue that Lamparello's website constitutes advertising or a facility for business, let alone a facility or advertising similar to that of Reverend Falwell. Furthermore, Lamparello clearly created his website intending only to provide a forum to criticize ideas, not to steal customers.
>
> Most importantly, Reverend Falwell and Lamparello do not offer similar goods or services. Rather they offer opposing ideas and commentary. Reverend Falwell's mark identifies his spiritual and political views; the website at www.fallwell.com criticizes those very views. After even a quick glance at the content of the website at www.fallwell.com, no one seeking Reverend Falwell's guidance would be misled by the domain name–www.fallwell.com–into believing Reverend Falwell authorized the content of that website. No one would believe that Reverend Falwell sponsored a site criticizing himself, his positions, and his interpretations of the Bible.

Id. at 315.

- 10 -

07-cv-00460

The same is true here. Pacific Law Center has not provided any evidence establishing that Defendant's websites use their domain names to offer <u>any</u> goods or services. Defendant neither operates a competing law firm nor diverts potential Pacific Law Center customers to a competing law firm. Further, Pacific Law Center has failed to establish a likelihood of confusion. Defendant's websites merely criticize the Plaintiffs' businesses, personnel, and practices, and offer his own political views. Thus, Pacific Law Center has not shown that Defendant's actions violate the Lanham Act or California's unfair competition laws.

## II. Solomon Ward Has Failed to Show that Defendant Misappropriated its Mark

### A. Anti-Cybersquatting Protection Act

Plaintiff Solomon Ward brings the same claims as Pacific Law Center. However, it alleges that its case is different because Defendant never actually used Solomon Ward's legal services. As a result, Solomon Ward argues that Defendant is not "griping" about any product or service , and therefore, his websites are not protected. The Court disagrees.

Solomon Ward has not shown that Defendant is prohibited from creating a "gripe site" about it merely because he did not use its services. In fact, case law weighs against such a proposition. In <u>Lamporello v. Falwell</u>, the defendant "clearly employed www.fallwell.com simply to criticize Reverend Falwell's views," and the court concluded that defendant's website constituted a "bona fide noncommercial or fair use" under the ACPA. <u>Lamporello</u>, 420 F.3d at 320-22. In another related case, <u>Ut. Lighthouse Ministry v. Found. for Apologetic Info. and Research</u>, 527 F.3d 1045 (10th Cir. 2008), the plaintiff had a website that provided an online bookstore offering materials critical of the Church of Jesus Christ of Latter-day Saints. The defendants created a website that used plaintiff's mark in its domain name and criticized the plaintiff's online bookstore and its views. The defendants were not customers complaining about their direct experience with plaintiffs' online bookstore. Nonetheless, the Tenth Circuit found the case was similar to <u>TMI</u> and <u>Lucas Nursery</u>, and concluded that defendants did not have a bad faith intent to profit because their use was entirely noncommercial and constituted a fair use parody. <u>Id.</u> at 1058-59.

Thus, in sum, the foregoing cases focused on the defendants' bad faith intent to profit. The defendants did not use the plaintiff's services or buy the plaintiff's product, yet each court still found that the defendants were able to comment, criticize, and "gripe" without violating the ACPA. Therefore, similar to Pacific Law Center, Solomon Ward has also not established a bad faith intent to profit and its ACPA claim also fails.

### B. Lanham Act and Unfair Competition Claims

Solomon Ward argues that Defendant's use of solomonwardlawfirm.com and solomonwardsandiego.com violate the Lanham Act and constitute unfair competition under California law. The Court disagrees. As with Pacific Law Center, Solomon Ward's claims fail because it has also not provided any evidence establishing that: (1) Defendant's websites satisfy the commercial use requirement, or (2) that there is a likelihood of confusion. Defendant's sites merely offer ideas and commentary, and criticize both law firms.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** summary judgment in favor of the Defendant and **DISMISSES** all of Plaintiffs' claims. This order effectively ends this litigation. Accordingly, the Clerk is directed to close the case.[7]

DATED: September 2, 2008

*Janis L. Sammartino*
Honorable Janis L. Sammartino
United States District Judge

---

[7] In the Court's OSC, the Court stated that Defendant had until August 15, 2008 to file an opposition to Plaintiffs' response to the OSC. [Doc. No. 78.] On August 7, 2008, Defendant filed a request for an extension of time to oppose Solomon Ward's brief. However, Defendant did file a timely response on August 15, 2008. Therefore, Defendant's request is **DENIED** as moot.